

RECEIVED

2024 JAN 14 PM 1:16

OFFICE U.S. DIST. COURT,
WESTERN DIST. MO
KANSAS CITY, MO

# EXHIBIT D

# COMMERCIAL LEASE

## PULSE DEVELOPMENT, LLC
### (LANDLORD)

## AND

## THE SOURZE, LLC
### (TENANT)

TABLE OF CONTENTS

**ARTICLE 1 – Leased Premises, Term and Use** ................................................................................... 4

**ARTICLE 2 – CONSTRUCTION OF PREMISES** ............................................................................. 5

**ARTICLE 3 - Rental Commencement Date** ........................................................................................ 5

**ARTICLE 4 - Rental** ............................................................................................................................ 5

**ARTICLE 5 - Records and Audits** ...................................................................................................... 6

**ARTICLE 6 - Taxes** ............................................................................................................................. 7

**ARTICLE 7 - Subordination and Attornment** .................................................................................... 8

**ARTICLE 8 - Condition of Premises** .................................................................................................. 8

**ARTICLE 9 - Repairs and Maintenance** ............................................................................................. 9

**ARTICLE 10 - Alterations** .................................................................................................................. 9

**ARTICLE 11 - Fixtures and Personal Property** ................................................................................ 10

**ARTICLE 12 - Liens** .......................................................................................................................... 10

**ARTICLE 13 - Laws and Ordinances** ............................................................................................... 11

**ARTICLE 14 – Utilities and Services** ............................................................................................... 13

**ARTICLE 15 - Common Areas and Operating Expenses** ................................................................. 13

**ARTICLE 16 - Damage to Premises** ................................................................................................. 15

**ARTICLE 17 - Insurance** ................................................................................................................... 15

**ARTICLE 18 - Indemnification** ........................................................................................................ 17

**ARTICLE 19 - Assignment, Subletting and Ownership** ................................................................... 17

All of the other obligations, covenants and conditions shall remain unamended. ..................................... 18

**ARTICLE 20 - Access to Premises** ................................................................................................... 19

**ARTICLE 21 - Default by Tenant** ..................................................................................................... 19

**ARTICLE 22 - Surrender of Premises** .............................................................................................. 21

**ARTICLE 23 - Tenant's Conduct of Business** .................................................................................. 22

**ARTICLE 24 - Rules and Regulations** .............................................................................................. 22

**ARTICLE 25 - Eminent Domain** ....................................................................................................... 25

**ARTICLE 26 - Attorneys' Fees** ........................................................................................................ 26

**ARTICLE 27 - Sale of Premises by Landlord** .................................................................................. 26

**ARTICLE 28 - Notices** ...................................................................................................................... 26

**ARTICLE 29 - Remedies** .................................................................................................................. 26

**ARTICLE 30 - Successors and Assigns** ............................................................................................ 26

**ARTICLE 31 - Representations** ......................................................................................................... 27

Case 4:25-cv-00023-RK    Document 1-5    Filed 01/14/25    Page 3 of 50

**ARTICLE 32 - Waiver** ........................................................................................................27

**ARTICLE 33 - Holding Over**.............................................................................................27

**ARTICLE 34 - Interpretation**............................................................................................27

**ARTICLE 35 - Quiet Enjoyment**.......................................................................................28

**ARTICLE 36 - Waiver of Redemption** ............................................................................28

**ARTICLE 37 - Fees** ............................................................................................................28

**ARTICLE 38 - Tenant's Property**.....................................................................................28

**ARTICLE 39 - Lease Status**..............................................................................................28

**ARTICLE 40 - Recording** ..................................................................................................29

**ARTICLE 41 - Force Majeure**...........................................................................................29

**ARTICLE 42 - Construction of Lease**..............................................................................29

**ARTICLE 43 - Security Deposit** .......................................................................................29

**ARTICLE 44 - Captions**.....................................................................................................29

**ARTICLE 45 - Severability**................................................................................................29

**ARTICLE 46 - Objection to Statements** ..........................................................................29

**ARTICLE 47 - Liability of Landlord**................................................................................30

**ARTICLE 48 - No Option** ...................................................................................................30

**ARTICLE 49 - Corporate Tenant** .....................................................................................30

**ARTICLE 50 - Printed Provisions** ....................................................................................30

**ARTICLE 51 - Entire Agreement** ......................................................................................30

**ARTICLE 52 - Third-Party Rights** ...................................................................................30

**ARTICLE 53 - Financial Statements** ................................................................................30

**ARTICLE 54 - Tenant's Failure**........................................................................................31

**ARTICLE 55 - Ownership** ..................................................................................................31

**ARTICLE 56 – Governing Documents** ..............................................................................32

# TRIPLE NET LEASE

**THIS TRIPLE NET LEASE** ("Lease") is entered into as of the ~~25~~ day of ~~September~~ *November*, 2020, by and between PULSE DEVELOPMENT, LLC a Missouri limited liability company ("Landlord") (and management company for the Owner) and THE SOURZE, LLC. a Missouri limited liability company ("Tenant"). The Leased Premises are located within the Westport Square ("Project") in Kansas City, Jackson County, Missouri.

## REFERENCE PROVISIONS

The following references define terms used in the specified Articles and elsewhere in this Lease and shall be construed in accordance with the provisions and conditions in this Lease:

1.01 Leased Premises: Approximately 3594 square feet of interior space located at 427 Westport Road, Kansas City, Missouri 64111. [ARTICLE 1(a)]

1.02 Commencement Date: Shall be ~~October 28~~ *January 28*, 2020 (the date of Execution).

Expiration Date: Three (3) years after the Commencement Date.

Option to Extend: One (1) One-Year Options [ARTICLE 1(b)]

1.03 Permitted Use: [_____] [ARTICLE 1(c)]

1.04 Hours of Operation: To Be Decided by Tenant [ARTICLE 1(d)]

1.05 Tenant's Beginning Work Date: N/A [ARTICLE 2(b)]

1.06 Opening Date: November 1, 2020 [ARTICLE 3]

1.07 Minimum Annual Rental: [ARTICLE 4(a)]

| | | | | |
|---|---|---|---|---|
| Lease Years | 1 | $16.69/sq. ft. | $60,000.00/yr | $5000.00/mo |
| Lease Year | 2 | $17.19/sq. ft | $61,780.00/yr | $5148.33/mo |
| Lease Year | 3 | $17.69/sq. ft | $63,600.00/yr | $5,300.00/mo |

At each Option or Renewal rent shall be adjusted to the then market rate at time of effective date of the Option or Renewal but in no event lower than the rate at the time of renewal. On the anniversary date of each year during the option, the rent shall automatically increase by .50 cents per square foot annually.

1.08 N/A [ARTICLE 4(b)]

1

1.09 Annual Sales Base: N/A

Monthly Sales Base: N/A.

1.10 Address of Landlord: [ARTICLES 4 and 28]

Landlord's Notice Address
Pulse Management, LLC
Attention: Wesley J. Carrillo, Esq.
1100 Main Street, Suite 2121
Kansas City, Missouri 64105

Landlord's Payment Address:
Attention: CAD Management, LLC
4050 Pennsylvania Avenue, Suite 400
Kansas City, Missouri 64111

1.11 Tenant's Notice Address: THE SOURZE, LLC [ARTICLE 28]
427 Westport Road
Kansas City, Missouri 64111

1.12 Trade Name: THE SOURZE [ARTICLE 23]

1.13 Intentionally Deleted

1.14 Construction Allowance: $0.00

1.15 Security Deposit: $5,000.00 [ARTICLE 2]

1.16 Operating Expenses Payment: Estimated $6.05 per square foot per year for the [ARTICLE 15] Calendar year 2020, but in all cases Operating Expenses shall not exceed $6.05 per square foot per year for the calendar year 2020. All Operating Expenses shall be born on a pro rata basis. Common Area Maintenance shall not increase more than 5 percent year to year.

1.17 Brokerage Fees: Defined in ARTICLE 37.

1.18 Governing Documents: Defined in ARTICLE 56.

1.19 Miscellaneous: Any assignment or transfer of Tenant's interest shall require a guaranty by the assignee or transferee.

2

## ARTICLE 1 – Leased Premises, Term and Use

(a)     Landlord leases to Tenant and Tenant takes from Landlord in consideration of the covenants and agreements in this Lease, the premises ("Leased Premises") being that portion of the building measured to the center of common walls and the outside faces of exterior walls, on the drawings attached to this Lease and made a part of this Lease as EXHIBIT A (Site Plan) and EXHIBIT B (Leased Premises) and containing the floor area shown in Reference Provisions Section 1.01.  The Leased Premises may include corridors and passageways for the exclusive use of the Leased Premises, columns and any construction or equipment located in the Leased Premises, as well as pipes, conduits, electrical wires and drainage lines that directly serve the Leased Premises. The Project includes all buildings, land, improvements, additions, extensions and deletions which may be made from time to time, and may include adjacent parcels of land not owned, leased or controlled by Landlord but which are operated as an integral part of the Project.  The Leased Premises are described further in the Reference Provisions.  The Parties shall execute an amendment to this Lease memorializing the adjustment. Tenant may use "outdoor seating" provided that it complies with all codes and ordinances.  Landlord has the right to approve all outdoor seating furniture.

EXHIBITS A and B are for informational purposes only, and are not a warranty, representation or agreement that the Leased Premises, Project or other areas will be as shown on the EXHIBITS, or that other occupants if shown on the EXHIBITS will be in the Project.  Tenant has not been granted any easements of light, air, or access.  Tenant's rights are limited to the use and occupancy of the Leased Premises and the license to use the Common Areas as they may exist from time to time, all subject to the terms, covenants, conditions and provisions of this Lease.

(b)     The term of this Lease ("Term") shall begin on the Commencement Date and end on the Expiration Date in the Reference Provisions.  The Commencement Date shall be the date of execution of the Lease.

    (i)     Tenant shall have the option to renew so long as there exist no defaults, on the Expiration Date.

(c)     The Leased Premises shall be used and occupied only for the Permitted Use in the Reference Provisions, and for no other use or purpose whatsoever.  Unless specifically noted in the Reference Provisions, Tenant does not have exclusive rights to sell any particular product, food, theme or type of restaurant and nothing in this Lease may be interpreted to restrict Landlord's rights to freely lease other space in the Project or to allow any other tenant provide any particular service in the Project.

(d)     Tenant shall carryon the trade or business herein provided upon the Leased Premises and will not suffer or permit any interruption or suspension thereof during normal business hours as described on EXHIBIT F.

4

EXHIBITS:

A:     Site Plan
B:     Leased Premises
C:     Construction Provisions
D:     Tenant's Plans and Specifications
E:     Personal Guaranty
F:     Prohibited Uses
G:     Tenant's Business Hours

References to Articles are for convenience and designate some of the other provisions where references to the particular Reference Provisions appear. If there is a conflict between a Reference Provision and the other provisions of this Lease, the former shall control.

[Remainder of Page Intentionally Left Blank]

3

## ARTICLE 2 – CONSTRUCTION OF PREMISES

(a)     Landlords Work:  Landlord agrees to deliver the Premises in AS IS condition.  Tenant shall be responsible for all tenant improvements.

(b)     Tenant's Work:   other than Landlord's Work, Tenant shall make all other necessary improvements to the Premises to operate Tenant's Business ("Tenant's Work").  Tenant's Work shall comply with all applicable statues, ordinances, regulations and codes and shall strictly comply with the requirements of this Lease.  Tenant shall be responsible for all licenses, permits or other necessary code, statutory or regulatory compliance and Tenant shall not allow any mechanic's liens, materialmen's liens or other liens or encumbrance to be placed on the Premises.   Landlord agrees to support any license or permit application provided it is not at Landlord's expense.

## ARTICLE 3 - Rental Commencement Date

The rental payments shall begin to accrue  ("Rental Commencement Date"):  two (2) months following the Execution Date.

## ARTICLE 4 - Rental

Tenant shall pay Landlord as rental for the use and occupancy of the Leased Premises, at the times and in the manner provided, the following sums of money per annum without deduction or set-off and without prior demand:

(a)     MINIMUM ANNUAL RENTAL:   The Minimum Annual Rental shall be payable in 12 equal monthly installments in advance, upon the 1st day of each and every month during the periods of time specified in the Reference Provisions.

If under ARTICLE 3 rental begins on a day other than the 1st day of a month, the monthly installment of Minimum Annual Rental for the period from the Rental Commencement Date until the 1st day of the month next following shall be prorated accordingly.  All past due rental, additional rental, and other sums due Landlord under this Lease shall bear interest from the due date until paid by Tenant, at the rate of 4% above the Prime Rate (as defined below), not to exceed the maximum rate of interest allowed by law in the state where the Project is located (the "Interest Rate").  The interest shall be deemed to be additional rental.  All rental provided for in this Lease shall be paid to Landlord at the address in the Reference Provisions or to another payee or address that Landlord designates.

(b)     In addition to Minimum Annual Rental, Tenant shall pay, as additional rental, all sums of money required to be paid pursuant to ARTICLE 7 (Taxes), 15 (Utility Services), 16 (Common Areas and Operating Expenses), all other sums of money or charges required to be paid by Tenant under this Lease (collectively referred to in this Lease as "additional rental").  All amounts shall be paid to Landlord's Payment Address as shown in Reference Provision 1.10.  If the amounts or charges are not paid at the time provided in this Lease, they shall nevertheless be collectible as additional rental with the next installment of Minimum Annual Rental falling due, but nothing in this Lease shall be deemed to suspend or delay the payment of any amount of money or charge at the time it becomes due and payable or to limit any other remedy of Landlord.  All amounts of Minimum Annual Rental and additional rental payable in a given month (also collectively referred to in this Lease as "rent" or "rental") shall be deemed to be a single rental obligation, and shall survive the expiration of the Term or the earlier termination of this Lease.  Any payment by Tenant or acceptance by Landlord of a lesser amount than shall be due from Tenant to Landlord at the time of such payment shall be treated as a payment on

5

Case 4:25-cv-00023-RK     Document 1-5     Filed 01/14/25     Page 9 of 50

account. The acceptance by Landlord of a check for a lesser amount with an endorsement or statement thereon, or any letter accompanying such check stating that such lesser amount is payment in full shall be given no effect, and Landlord may accept such check on account without prejudice to any other rights or remedies which Landlord may have against Tenant. Tenant's obligation to pay additional rental shall commence on the Commencement Date.

## ARTICLE 5 - Records and Audits

(a)     Tenant agrees to accurately record all sales in accordance with generally accepted accounting practices (showing all of its sales separately from its other stores), and to maintain sufficient original records which accurately summarize all transactions relating to the Leased Premises (including the sales of any subtenant, licensee or concessionaire). Original records shall include but not be limited to: sales documents, sequentially numbered tapes and readout totals of cash registers or point of sale devices, sales returns and allowance detail, cash receipts, payroll journals, accounts receivable, disbursement journals, bank statements, deposit slips, inventory records, purchase orders, receiving records, sales journals or daily sales reports, orders accepted by means of electronic, telephonic, video, computer or another electronic or other technology based system, state sales and use tax returns (and all documentation used to prepare the returns), and a complete general ledger. Documentation and itemization of specific sales exclusions shall also be maintained. Records shall be preserved (properly totaled) by Tenant either (a) at the Leased Premises or (b) at the home or regional offices of Tenant (provided Landlord shall be notified in writing of the address at which the records are maintained) and made available to Landlord at the Leased Premises or the offices, upon demand, for a period of at least 3 years after the year in which the sales occurred (however, if any audit is begun by Landlord or if there is a dispute regarding Tenant's Net Sales, Tenant's records shall be retained by Tenant until a final resolution of the audit or dispute). The receipt by Landlord of a statement of Net Sales or Percentage Rental shall not constitute an admission of its correctness. Tenant agrees to deliver to Landlord a statement of each yearly sales on or before February 28th following the prior Lease Year of the Term an annual statement certified by a Certified Public Accountant or by a financial officer, owner or partner of Tenant. If the Term expires or is terminated on a date other than January 31, then a like statement for the partial Lease Year in which expiration or termination occurs shall be delivered within 30 days after expiration or termination. Tenant shall also provide to Landlord copies of all reports made to any governing body, including but not limited to the Missouri Department of Revenue along with evidence of payment made to those entities.

(b)     (i) Tenant acknowledges that the Leased Premises and the Project are or will be in a Community Improvement District ("CID"), formed in accordance with Missouri law, and that, therefore, in addition to the reporting requirements set forth in subsection (a) above, Tenant shall comply with all reporting requirements of and to the CID and will pay all sales tax required to the CID. Failure to do so will be a default under this Lease. Tenant will provide to Landlord copies of reports and receipts regarding Tenant's reporting and payment to CID upon request of Landlord.

(ii)     Community District: Tenant acknowledges and consents that the (Leased) Premises are a part of the Westport Community Improvement District I and the Westport Community Improvement District II, each created by City of Kansas City, Missouri (the "City"). Tenant shall forward to the City copies of Tenant's State sales tax returns for the Leased Premises when and as they are filed with the Missouri Department of Revenue. Tenant hereby acknowledges and agrees that the City is a third party beneficiary of the obligations in this paragraph and shall have a separate and independent right to enforce these reporting requirements.

6

Case 4:25-cv-00023-RK     Document 1-5     Filed 01/14/25     Page 10 of 50

## ARTICLE 6 - Taxes

(a)     (i) Effective upon the Rental Commencement Date, Tenant shall pay, without deduction or set-off of any kind, its proportionate share of all real property taxes and assessments that may be levied or assessed as provided in (ii) below during the Term by any lawful authority for each calendar year, including, without limitation, all Impositions as defined below in this subpart (a) and Tenant's pro rata share of any costs associated with the contest of any assessment by Landlord, but only to the extent that the reduction in assessments is greater than Tenant's pro rata share as described in (c) below (collectively "Property Taxes"). Notwithstanding anything to the contrary contained in this Lease, Property Taxes shall include any form of tax or assessment, license fee, license tax, or any other levy, charge, or similar imposition ("Impositions") imposed by any governmental authority or political subdivision having jurisdiction, or any school, agricultural, lighting, drainage, management, roadway, water, levee, utility or other improvement or special assessment district, on any interest of Landlord or Tenant within the property covered by the respective tax bill or assessment, including the Leased Premises ("Applicable Tax Parcel"). The Impositions shall include but not be limited to: (aa) any partial or total substitute impositions for real property taxes; (bb) any impositions imposed upon owners of real estate (including any water and sewer tax assessment and any governmental taxes including, but not limited to taxes associated with the Community Improvement District) rather than upon persons generally, as well as any tax which may become a lien on the land, buildings or other improvements in the Applicable Tax Parcel, or with respect to the possession, leasing, operation, management, maintenance, alteration, repair, use or occupancy by Tenant of the Leased Premises; (cc) any Impositions upon this Lease or any document to which Tenant is a party creating or transferring an interest or an estate in the Leased Premises; (dd) any Property Taxes levied against the Common Area, including any parking garages; (ee) Property Taxes borne by Landlord as a result of a tenant that pays an amount of Property Taxes which is less than its proportionate share and (ff) any impositions for offsite property or facilities that provide an easement required to be maintained for the benefit of or that serves the Applicable Tax Parcel.

(ii) Tenant's proportionate share shall be the product that results by multiplying the Property Taxes by a fraction, the numerator of which shall be the number of square feet of floor area in the Leased Premises and the denominator of which shall be total number of square feet of gross leasable floor area within the Applicable Tax Parcel, as determined by Landlord from time-to-time, in its discretion, occupied or producing rent, including the Leased Premises.

(b)     From time to time, Landlord shall notify Tenant or cause Tenant to be notified in writing of Landlord's estimate of Tenant's monthly installments due with respect to Property Taxes. Such monthly installments shall be paid on or before the 1st day of each calendar month, in advance. If Landlord is required however under a mortgage to escrow Property Taxes, Landlord may, but shall not be obligated to, use the amount required to be escrowed as a basis for the estimate of the monthly installments. Upon confirmation of all Property Tax bills attributed to any calendar year during the Term, Landlord shall furnish Tenant (or cause Tenant to be furnished) with a written statement of the actual amount of Tenant's proportionate share of the Property Taxes for that year. If the total amount paid by Tenant for any calendar year during the Term is less than the actual amount due from Tenant for that year, as shown on the statement, Tenant shall pay Landlord the deficiency within 10 days after demand by Landlord. If the total amount paid by Tenant for any calendar year exceeds the amount due from Tenant for that calendar year, Landlord shall credit the excess against payments due. Tenant's liability for its proportionate share of Property Taxes for the calendar years in which this Lease begins and ends shall be subject to a prorata adjustment based on the number of days in those years. Landlord's and Tenant's obligations under this ARTICLE 6 shall survive the expiration of the Term. An official tax bill (or copy), if available, shall be submitted by Landlord to Tenant, upon request by Tenant, and shall be conclusive evidence of the amount of the tax assessed or levied, the items taxed and the installments.

7

Case 4:25-cv-00023-RK     Document 1-5     Filed 01/14/25     Page 11 of 50

(c)      If Landlord contests, reviews or negotiates any tax or assessment that includes the Leased Premises, and is successful, Tenant agrees to pay its proportionate share of Landlord's expenses, whether third party or internal, including but not limited to legal, tax consultant and appraisal fees but only to the extent that the reduction in tax or assessment is greater than Tenant's pro rata share of Landlord's expenses. Tenant's proportionate share of such expenses shall be calculated and paid in the manner set forth in ARTICLE 7(a). Tenant shall not have the right to withhold any payments to Landlord notwithstanding anything to the contrary contained in this Lease, nor shall Landlord be obligated to withhold the payment of Property Taxes levied or assessed against the Leased Premises. If Tenant pays an amount in excess of its proportionate share of Property Taxes for any year as the result of a subsequent reduction in total Property Taxes for that year, the excess shall be refunded to Tenant (the "Net Refund") when all refunds to which Landlord is entitled from the taxing authority for that year are received by Landlord. The term "Net Refund" means the refund plus interest, if any thereon less appraisal, engineering, expert testimony, attorneys', printing and filing fees and all other costs and expenses of the contest, review or negotiation to the extent that such fees, costs and expenses have not been previously included in taxes under this ARTICLE 6.

(d)      Notwithstanding anything to the contrary in this ARTICLE 6 or elsewhere in this Lease, any excise, transaction, sales or privilege tax (except income, transfer, estate or inheritance tax) imposed upon Landlord on account of, attributed to, or measured by rental or other charges payable by Tenant shall be paid by Tenant to Landlord concurrently with the amount to which the tax applies.

## ARTICLE 7 - Subordination and Attornment

(a)      Tenant's rights shall be subordinate to the lien of any mortgage or deed of trust in force or later placed against the Project or portion of the Project and to all advances made upon the security thereof. No mortgagee or beneficiary named in the mortgage or trust deed shall disturb Tenant's peaceable possession of the Leased Premises if Tenant is not in default under this Lease. Any mortgagee or beneficiary of Landlord may, at its option, subordinate its mortgage or trust deed to this Lease. This ARTICLE 7(a) is self-operative, and no further documentation of Tenant's subordination and attornment is required; however, Tenant shall execute any subordination agreement requested by Landlord, any mortgagor or beneficiary of Landlord upon written request. Tenant shall accept performance of any of Landlord's obligations hereunder by any mortgagee or beneficiary of Landlord.

(b)      If any proceedings are brought for foreclosure, or if the power of sale under any mortgage, deed of trust or deed to secure debt made by Landlord covering the Leased Premises is exercised, Tenant shall attorn to the purchaser upon the foreclosure or sale and recognize the purchaser as the Landlord under this Lease.

(c)      Tenant agrees to make such reasonable modifications to this Lease as may be reasonably required in connection with the obtaining of financing or refinancing of the Project or portion of the Project, so long as such modifications do not change the economic terms hereof or materially affect Tenant's rights, increase Tenant's obligations, or reduce Landlord's obligations hereunder.

## ARTICLE 8 - Condition of Premises

Except as described in Landlord's work, Tenant's taking possession of the Leased Premises shall be conclusive evidence of Tenant's acceptance of the Leased Premises in good order and satisfactory condition and "as-is", including patent and latent defects. Tenant agrees that no representations about the condition of the Leased Premises, nor promises to decorate, alter, repair or improve the Leased Premises have been made by Landlord or its agents to Tenant except as may be specifically set forth in this Lease. Tenant also agrees that no representations have been made to Tenant that any other tenants will lease space in the Project nor have any

8

promises been made that Tenant has the exclusive right to sell any merchandise, goods or services. Tenant hereby waives any implied warranties, including but not limited to fitness, suitability and habitability.

## ARTICLE 9 - Repairs and Maintenance

(a)    Landlord shall be responsible for all structural repairs to the Leased Premises. Landlord shall not be responsible for damage or personal injury caused by any defects or other conditions, or the consequences thereof, except in the case of Landlord's willful misconduct. Landlord shall not be liable to Tenant for any damage attributable to Tenant or Tenant's patrons to merchandise, trade fixture or personal property of tenant. Beginning on the Commencement Date, Tenant shall be liable for the repairs, replacements and maintenance of the Leased Premises, including all equipment and fixtures owned by Landlord, except those items for which Landlord is responsible under this ARTICLE 9. Tenant shall keep the Leased Premises in good order and repair, clean, sanitary and safe and shall notify Landlord, in writing, prior to beginning any repair. The notice shall specify the repair work to be performed. Tenant's repairs, replacements and maintenance obligations shall include, but not be limited to,; fixtures; improvements; floor covering; the exterior and interior portions of all doors, door locks, security gates, and windows; plumbing and sewage facilities that are not Landlord's obligation; walls; ceilings; and plate glass. Tenant shall be solely responsible for maintenance and repair costs related to the Leased Premises. Tenant agrees to keep the interior of the Leased Premises in a clean and sightly appearance. If Tenant refuses or neglects to make repairs or maintain the Leased Premises, in a manner reasonably satisfactory to Landlord, Landlord shall have the right, upon giving Tenant reasonable written notice, to make the repairs or perform the maintenance on behalf of Tenant. Tenant shall reimburse Landlord promptly upon receipt of a bill. Landlord has no obligation to do work which Landlord is not expressly required to perform under this Lease or which, under this Lease, Tenant is required to perform. The performance of that work by Landlord shall not constitute a waiver of Tenant's default. Tenant shall complete annual inspection of HVAC for premise and maintenance of the HVAC system (the "Maintenance"). Tenant's financial responsibility for Maintenance shall not exceed $1,000.00 in any Lease Year Tenant is responsible for the repair or replacement of any major components of HVAC system (the compressor, heat exchanger, evaporator and condesor coils) or repair complete replacement of the HVAC system ("Repairs"). Tenant's responsibility for Repairs shall not exceed $1,000.00 in any Lease Year for Lease Years 1 - 3. After Lease Year 3, Tenant shall be responsible for all Repairs.

(b)    Landlord shall keep in good order and repair and shall maintain the exterior walls (except for the exterior trim and paint which shall be tenant's responsibility), roof, guttering, plumbing and electrical service.

(c)    Tenant shall be responsible to maintain all other parts of the Premises not maintained by Landlord and Landlord, including but not limited to, all apparatus, equipment, alterations, improvements and additions by either party to, in, upon or about the Leased Premises.

## ARTICLE 10 - Alterations

Tenant shall not make any structural, electrical, storefront, exterior, major interior or mechanical alterations to the Leased Premises without obtaining the written consent of Landlord, which consent will not be unreasonably withheld. Tenant acknowledges that Landlord's right to authorize alterations may be limited by the Master Declaration or applicable law. Tenant shall not interfere with any work in the Project, and shall not cause the closing, interruption or impairment of Tenant's normal conduct of business. All alterations, additions, improvements and Tenant's Work shall become, upon expiration of the Term, or the earlier termination of this Lease, the property of Landlord without any payment by Landlord. All such work by Tenant shall be made under the supervision of a competent architect or competent licensed structural engineer and shall be in accordance with plans and specifications approved in writing by Landlord before the start of the work.

9

Landlord's approval of Tenant's plans and specifications shall not create a responsibility or liability of Landlord for their accuracy, sufficiency or compliance with laws or rules and regulations. The work shall be in accordance with necessary governmental approvals and permits and, as applicable, with the Governing Documents. Tenant shall obtain approvals and permits at its sole expense. The work shall be done in a good and workmanlike manner and diligently prosecuted to completion. The Leased Premises shall at all times be a complete unit except during the performance of work. Work done by Tenant without Landlord's consent shall be returned to its original condition, at Tenant's expense, upon request by Landlord. Tenant intends to construct a sidewalk "café" enclosure the general nature of which is acceptable to Landlord but shall be subject to the provisions set forth herein.

## ARTICLE 11 - Fixtures and Personal Property

Trade fixtures, signs and other personal property of Tenant not permanently affixed to the Leased Premises shall remain the property of Tenant, provided, however, that all trade fixtures and personal property shall be deemed the property of Landlord at the time of installation and remain with the Leased Premises. Tenant shall have the right, provided Tenant is not in default, to remove its trade fixtures, signs and other personal property with consent of Landlord. Tenant shall not however, during the Term, render the Leased Premises unsuitable for conducting the type of business specified in Reference Provision 1.03 by removing personal property unless Tenant immediately replaces it with personal property of comparable or better quality. Tenant, at its expense, shall immediately repair damage to the Leased Premises or to the exterior of the building caused by the removal of such trade fixtures, signs and other personal property. Upon the expiration or earlier termination of this Lease, Tenant shall leave the Leased Premises in a neat and clean condition, free of debris. All trade fixtures, signs, and other personal property installed in or to the Leased Premises by Tenant must be new or like new when installed or attached. Tenant shall pay before delinquency all taxes, assessments, license fees and public charges levied, assessed or imposed upon its business operation in the Leased Premises as well as upon its trade fixtures, leasehold improvements (including but not limited to merchandise and other personal property in, on or upon the Leased Premises). If Tenant's property is assessed with Landlord's property, the assessment shall be equitably divided between Landlord and Tenant. Landlord shall determine the basis of prorating the assessments and that determination shall be binding. No taxes, assessments, fees or charges referred to in this ARTICLE 11 shall be considered taxes under ARTICLE 6. Tenant's obligation to perform the provisions of this ARTICLE 11 shall survive the Expiration Date or the earlier termination of this Lease.

## ARTICLE 12 - Liens

Tenant shall not permit a lien or claim to attach to the Leased Premises or the Project and shall promptly cause the lien or claim to be released. If Tenant contests the lien or claim, Tenant shall indemnify Landlord and, if requested, deposit with Landlord a cash or surety bond in a form and with a company satisfactory to Landlord in an amount equal to twice the amount of the contested lien or claim or otherwise required by law. If Tenant shall fail to cause a lien to be discharged or bonded, within 10 days after being notified of the filing of the lien, in addition to any other right or remedy, Landlord may discharge the lien by paying the amount claimed to be due. The amount paid by Landlord, together with interest at the Interest Rate and all costs and expenses, including reasonable attorneys' fees incurred by Landlord, shall be due and payable by Tenant to Landlord as additional rental on the 1st day of the next following month. Tenant shall immediately give Landlord written notice of the recording of a lien against the Leased Premises or the Project arising out of work done by or at the direction of Tenant.

10

Case 4:25-cv-00023-RK    Document 1-5    Filed 01/14/25    Page 14 of 50

## ARTICLE 13 - Laws and Ordinances

(a)     Tenant shall comply with all laws, ordinances, codes, orders and regulations affecting the construction, use, occupancy, alteration, cleanliness, safety and operation of the Leased Premises, which are in force now or later, and with the Governing Documents, as applicable, including, but not limited to, all permits and licenses required for Tenant to conduct its Permitted Use. Tenant shall comply with the regulations, requirements and recommendations of any insurance underwriter, inspection bureau or similar agency. Tenant shall notify Landlord if Tenant has received notice of, or has knowledge of any condition or occurrence that might result in liability to Landlord. Tenant shall give Landlord, upon Landlord's request, information regarding the environmental condition of the Leased Premises so Landlord can determine if Landlord must comply with any rule, regulation, order, act, law or statute pertaining to the environmental condition of the Leased Premises or the Project, and for Landlord to accurately complete a form or otherwise provide information required under any rule, regulation, order, act, law or statute. Tenant shall permit Landlord to comply with those recommendations and requirements. In addition, Tenant agrees to comply, to the extent that the same may be applicable to the leased premises and as same may be amended from time to time, with the standards and requirements of the Williams-Steiger Act (PL91-596), known as the "Occupational Safety and Health Act of 1970," notwithstanding the fact that Tenant may otherwise be exempted from the provisions of said Act, and the Americans with Disabilities Act of 1990.

(b)     Tenant shall not: (i ) permit an immoral practice in or about the Leased Premises, including without limitation any offense involving moral turpitude, such as by way of example only and not limitation, any violation of federal, state, or local law that is detrimental to the health, safety, and welfare of others; (ii) use or allow the Leased Premises to be used or occupied in a manner that might invalidate or increase the rate of or make inoperative an insurance policy carried on the Leased Premises or on property, buildings or improvements in the Project; (iii) keep, use or permit in the Leased Premises inflammable fluids or explosives without the prior written permission of Landlord, or engage in hazardous activities; (iv) use the Leased Premises for a purpose which might create a nuisance or injure the reputation of the Leased Premises or the Project; (v) deface or injure the Leased Premises or any portion of the Project; (vi) overload the floors; (vii); (viii) install electrical equipment that overloads lines; (ix) conduct any sampling, testing, or drilling to locate any Hazardous Material without Landlord's prior written approval; or (x) violates the Governing Documents or rules established thereunder. Tenant shall, upon demand, reimburse Landlord for extra premiums caused by Tenant's use or occupancy of the Leased Premises, whether or not Landlord has consented to the use and occupancy. A schedule issued by the organization making the insurance rates on the Leased Premises, showing the components of the rates, shall be conclusive evidence of the items and charges which make up the hazard and other insurance rates on the Leased Premises. Tenant shall, at Tenant's expense, make from time to time whatever changes are necessary to comply with the requirements of the insurance inspectors, underwriters and governmental authorities in connection with electrical and fire prevention systems and equipment.

(c)     Tenant shall not have a claim against Landlord, and Landlord shall not be liable for damages, demands, expenses, fees, fines, penalties, suits, proceedings, claims, actions and causes of action arising out of or in any way connected with Tenant's use or occupancy of the Leased Premises, if the use or occupancy is prohibited or substantially impaired by any law, ordinance, regulation or by legal, governmental or other public authority.

(d)     Tenant shall not cause or permit any Hazardous Material (defined below) to be brought upon, transported through, stored, kept, used, discharged or disposed in or about the Leased Premises, or any portion of the Project (collectively, "Restricted Area") by Tenant, its agents, employees or contractors. Tenant shall notify Landlord immediately of the presence of or disposal of Hazardous Material on or near the Leased Premises, and of any notice by a party alleging the presence of Hazardous Material on or near the Leased Premises. Notwithstanding the foregoing, Hazardous Materials brought upon, transported, used, kept or stored

11

in or about the Leased Premises that are necessary for Tenant to operate its business for its Permitted Use under Reference Provision 1.03 of this Lease may be brought upon, transported, used, kept and stored only in the quantities necessary for the usual and customary operation of Tenant's business and in a manner that complies with: (i) all laws, rules, regulations, ordinances, codes or any other governmental restriction or requirement of all federal, state and local governmental authorities having jurisdiction and regulating the Hazardous Material; (ii) permits (which Tenant shall obtain prior to bringing the Hazardous Material in, on or about the Restricted Area issued for the Hazardous Material; and (iii) all producers' and manufacturers' instructions and recommendations, to the extent they are stricter than laws, rules, regulations, ordinances, codes or permits. If Tenant, its agents, employees or contractors, in any way breaches the obligations in the preceding sentence; or if the presence of Hazardous Material on the Leased Premises or the Project caused or permitted by Tenant results in the release or threatened release of Hazardous Material on, from or under the Restricted Area; or if the presence on, from or under the Restricted Area of Hazardous Material otherwise arises out of the operation of Tenant's business then, without limitation of any other rights or remedies available to Landlord under this Lease or at law or in equity, Tenant shall indemnify, defend, protect and hold harmless Landlord (and Landlord's parents, subsidiaries, affiliates, employees, partners, agents, mortgagees or successors to Landlord's interest in the Leased Premises) (collectively "Indemnity") from any and all claims, sums paid in settlement of claims, judgments, damages, clean-up costs, penalties, fines, costs, liabilities, losses or expenses (including, without limitation, attorneys', consultants' and experts' fees and any fees by Landlord to enforce the Indemnity) which arise during or after the Term as a result of Tenant's breach of the obligations or the release or contamination of the Property, including, without limitation: diminution in value of the Leased Premises or the Project; damages for the loss of, or the restriction on the use of, rentable or usable space or any amenity of the Leased Premises or the Project; damages arising from any adverse impact on the sale or lease of the Leased Premises or the Project; and damage and diminution in value to the Leased Premises or the Project or other properties, whether owned by Landlord or by third parties. This Indemnity includes, without limitation, costs incurred in connection with any investigation of site conditions or any clean-up, remedial, removal or restoration work required by any federal, state or local governmental agency or political subdivision because of Hazardous Material present in the soil or groundwater on, under or originating from the Restricted Area. Without limiting the foregoing, if the presence of Hazardous Material on the Restricted Area caused or permitted by Tenant results in the contamination, release or threatened release of Hazardous Material on, from or under the Restricted Area or other properties, Tenant shall promptly take all actions at its sole cost and expense which are necessary to return the Restricted Area and other properties to the condition existing prior to the introduction of the Hazardous Material; provided that Landlord's written approval of the actions shall be obtained first (which approval shall not be unreasonably withheld) and so long as such actions do not have or would not potentially have any material, adverse long-term or short-term effect on Landlord or on the Property or other properties. This Indemnity shall survive the Expiration Date or earlier termination of this Lease and shall survive any transfer of Landlord's interest in the Leased Premises or the Project. "Hazardous Material" means any hazardous, radioactive or toxic substance, material or waste, including, but not limited to, those substances, materials and wastes (whether or not mixed, commingled or otherwise combined with other substances, materials or wastes) listed in the United States Department of Transportation Hazardous Materials Table (49 CFR 172.101) or by the Environmental Protection Agency as hazardous substances (40 CFR Part 302) and amendments thereto, or substances, materials and wastes which are or become regulated under any applicable local, state or federal law including, without limitation, any material, waste or substance which is (i) a petroleum product, crude oil or any faction thereof, (ii) asbestos, (iii) polychlorinated biphenyls, (iv) designated as a "hazardous substance" pursuant to Section 311 of the Clean Water Act, 33 U.S.C. Section 1251, et seq. (33 U.S.C. Section 1321) or listed pursuant to Section 307 of the Clean Water Act (33 U.S.C. Section 1317), (v) defined as a "hazardous waste" pursuant to Section 1004 of the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq. (42 U.S.C. Section 6903) or (vi) defined as a "hazardous substance" pursuant to Section 101 of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. Section 9601, et seq. (42 U.S.C. Section 9601), as all of the foregoing may be amended from time to time.

12

## ARTICLE 14 – Utilities and Services

(a)     Tenant shall pay for all of its own utilities used in the Leased Premises during the Term and as otherwise billed by the utility supplier or Landlord, as applicable.  Tenant shall, if required by Landlord or applicable code, provide and pay for its own meters for heat, air conditioning, water, gas, electricity and all other utilities, and shall pay all water and sewage charges (and all other charges for utilities used in the Leased Premises), rentals and taxes imposed by governmental authority or otherwise.  Landlord may at its election provide Tenant with or designate a third party provider to provide Tenant with any or all of the utilities used in the Leased Premises.  If Landlord or its designee provides Tenant with the utilities used in the Leased Premises, Tenant shall purchase such utilities from Landlord or its designee and may not purchase such utilities from any other source. Landlord agrees, however, that the charge to Tenant for utilities furnished by Landlord shall not exceed that which Tenant would be required to pay for if Tenant purchased such utilities, with a comparable level and quality of service and equipment, directly from the local public utility company.  Costs of utility services provided by the Landlord may be payable by Tenant as part of Operating Expenses.

(b)   Tenant agrees that garbage and refuse shall be kept in an adequate container so as not to be visible to the public, within the Leased Premises, for collection at reasonable times specified by Landlord or the Governing Documents and at Tenant's cost.  In lieu and instead of the foregoing provisions of this subsection (i), Landlord, or a contractor selected by the Landlord, may purchase or lease a garbage compactor for the use of tenants and occupants of the Project.  If Landlord, or a contractor selected by the Landlord, purchases or leases said garbage compactor for the use of tenants in the Project, then Tenant agrees to use the same for the disposal of its garbage and refuse to the exclusion of all other garbage collection companies.  Tenants shall pay monthly, in advance, the charges therefor, based upon Landlord's, or a contractor selected by Landlord, reasonable estimate of the amount of the refuse and garbage generated and the frequency of use by Tenant.  In the alternative, costs of the refuse removed may be included in the assessments against the Leased Premises, and accordingly, may be payable by Tenant as part of Operating Expenses.  Tenant shall cause its garbage and refuse to be taken to such garbage compactor within the Project; and it is understood and agreed that Tenant's monthly charge as aforementioned will not include pick-up service. The aforementioned monthly charge as estimated by Landlord, or a contractor selected by Landlord, may be adjusted from time to time based upon the garbage generated by Tenant and/or changes in rates for refuse collection.  Tenant shall store soiled or dirty linen in approved fire rating organization metal containers with self-closing fusible link covers.  In addition to the foregoing, Landlord may cause the removal of all debris, rubbish, material and equipment during the construction of Tenant's store and/or during the time preceding the initial opening date of the Project, and charge the cost thereof to Tenant as provided in EXHIBIT C.  Tenant shall pay such charge within 10 days of billing.

## ARTICLE 15 - Common Areas and Operating Expenses

(a)     The "Common Areas" shall consist of all parking areas, parking facilities, approaches, streets, sidewalks, malls, driveways, loading platforms, canopies, elevators, escalators, ramps, storm drainage facilities, exits, entrances, sprinkler mains, landscaped areas, comfort stations, light facilities, computer facilities, cable facilities, telecommunications facilities, washrooms, lounges and shelters, utility lines, roadways and other facilities available for joint use or benefit designated by Landlord as they may from time to time exist and be available to the tenants in the Westport Square, their employees, officers, agents, customers, licensees and invitees. Landlord may reserve a reasonable number of parking spaces within the Common Areas, so long as such reserved parking spaces are not directly in front of the Leased Premises.  Without limitation, Landlord specifically reserves the right to establish such rules and regulation concerning the use of parking facilities as it shall deem necessary.

13

(b)     The Administrative Agent (PULSE Management, LLC) shall, subject to events beyond its reasonable control, maintain or cause to be maintained the Common Areas in good order and repair. The Common Areas and other facilities in and about the Project shall at all times be subject to the control and management of the Administrative Agent and other parties that the Administrative Agent may designate. The Common Areas may be restricted, expanded, reduced and changed in accordance with the Governing Documents. The Condominium Association or the Administrative Agent shall also have the right to permit entertainment events, the placement of kiosks, carts, advertising and other displays in the Common Areas, and to convert the Common Areas into retail areas. The activities and uses may be temporary or permanent.

(c)     "Operating Expenses" shall consist of all expenditures relating to operating (including, but not limited to utilities) managing, equipping, policing, protecting, lighting, repairing, cleaning, replacing and maintaining the Common Areas ("Common Area Maintenance" or "CAM"), the Leased Premises, and other parts of the Project that benefit the Leased Premises (collectively, the "Benefited Areas") and that are incurred under and defined by the Master Declaration or any other Governing Documents, including any rental or lease payments paid for machinery and equipment used in the maintenance of the Benefited Areas and the personnel costs to implement those services, compliance with statutes, laws, codes, rules and regulations applicable from time to time; sweeping, re-striping, resurfacing, or other maintenance of Common Areas parking areas or driveways; music; maintenance of the roof; removal of snow, ice, rubbish, dirt and debris; garbage collection service; planting, replanting and replacing flowers and landscaping; costs of decorating the Common Areas for holidays, costs and expenses of utilities including, but not limited to, maintaining lighting facilities and storm drainage and detention systems (whether on or off the Project); heating and cooling any enclosed portion of the Project; pest extermination; the alarm service charge if a supervised fire sprinkler alarm system is installed; premiums for liability, property, damage, fire and rental interruption insurance; management fees for the Project, including the cost of the personnel reasonably required to implement all of the foregoing, including the policing of the Benefited Areas and the directing of traffic and parking of automobiles on the parking area; insurance aggregate allocations and losses borne by Landlord as a result of deductibles or self-insured retention limits carried by Landlord under an insurance policy or self insurance by Landlord; costs of adjusting an insured casualty; wages; unemployment, social security and personal property taxes; Operating Expenses borne by Landlord as a result of a tenant that pays an amount of Operating Expenses which is less than its share as determined in sub-paragraph (d), all other expenditures made for the use or benefit of the Benefited Areas; direct or indirect costs of advertising, marketing and promotion of the Project as set forth in ARTICLE 36, including the cost of marketing and customer service personnel; and maintenance of the sprinkler grid in tenant spaces of the Project. Tenant acknowledges that the Governing Documents, among other thing, provide for the maintenance, repair and operation of parking, landscaping and other parts of the Project by the Administrative Agent and the allocation of and the levying of assessments for payment of costs incurred by the Administrative Agent in the performance of its obligations. Operating Expenses shall include any charges, fees or assessments allocated to or assessed against the Leased Premises under the Governing Documents, unless specifically excluded elsewhere in this Lease.

(d)     Tenant shall pay its share of all Operating Expenses on the first day of each calendar month, an amount estimated by Landlord to be the monthly amount of Tenant's share of the Operating Expenses. Tenant's share shall be equal to the percentage of total premises rented by Tenant. Tenant's share under the terms of this Lease is 3.70 percent. The estimated monthly charge may be adjusted periodically by Landlord on the basis of Landlord's reasonably anticipated costs. Following the end of each calendar year or, at Landlord's option, its fiscal quarter, Landlord shall furnish to Tenant a statement covering the calendar or fiscal quarter (as the case may be) just expired, the actual Operating Expenses for that year, the amount of Tenant's share of the Operating Expenses for that year, and the total payments made by Tenant during that year for the Operating Expenses. If Tenant's share of the Operating Expenses exceeds Tenant's prior payments, Tenant shall pay to Landlord the deficiency within ten days after receipt of such statement. If Tenant's payments for the calendar year exceed

14

Case 4:25-cv-00023-RK     Document 1-5     Filed 01/14/25     Page 18 of 50

Tenant's actual share of the Operating Expenses, Tenant may offset the excess against payments of Operating Expenses next due Landlord. Upon termination of this Lease, if Tenant is not in default hereunder, Landlord shall refund to Tenant the amount of any excess, promptly upon Landlord's receipt of Tenant's request therefor. Tenant's share shall be in an amount equal to the product obtained by multiplying all Operating Expenses by a fraction, the numerator of which shall be the number of square feet of floor area in the Leased Premises and the denominator of which shall be the total number of square feet of gross leasable retail floor area in the Project, as determined by Landlord from time-to-time, in its discretion, occupied or producing rent, including the Leased Premises.

## ARTICLE 16 - Damage to Premises

If the Leased Premises are damaged, destroyed or rendered partially untenantable by fire or other insured casualty, the Landlord shall promptly cause to be repaired and restored the structural elements of the building in accordance Landlord's maintenance obligations under ARTICLE 10, and Tenant shall promptly cause to be repaired and restored the interior of the Leased Premises. From the date of the fire or casualty until the Leased Premises are repaired and restored, Minimum Annual Rental and additional rental, except for Tenant's share of taxes due under ARTICLE 7 and any additional rental due under ARTICLE 16, shall abate in the proportion that the part of the Leased Premises destroyed or rendered untenantable bears to the total Leased Premises. If the damage or destruction occurs during the last 2 years of the Lease Term (or extension, as applicable), and the time to repair or restore is more than half of the remainder of such Term, then either Landlord or Tenant may terminate this Lease upon written notice to the other, such termination to be effective 30 days from the date of notice. Except as expressly provided to the contrary, this Lease shall not terminate nor shall there be an abatement of Minimum Annual Rental or additional rental as the result of a fire or other casualty. In the event of a conflict between this ARTICLE 16 and the Governing Documents, the latter shall govern.

## ARTICLE 17 - Insurance

(a)     Landlord agrees to carry, or cause to be carried, the liability and property damage insurance in an amount reasonably determined by Landlord and in accordance with the Governing Documents, if applicable:

(b)     Tenant agrees to carry the following insurance coverages and types:

   (i)     Workers' Compensation Insurance in statutory amounts;

   (ii)     Employer's Liability Insurance in the amount of $1,000,000 per person for each accident, or disease;

   (iii)     Commercial General Liability Insurance including products and completed operations coverages of not less than $2,000,000 per occurrence, with a $2,000,000 per location aggregate. The fire legal liability limit shall be not less than 2,000,000. This policy shall contain a Contractual Liability Endorsement. This policy shall also include an Additional Insured Endorsement containing the names of the Additional Insureds identified below. Any deductible/self-insured retention in excess of $5,000 per occurrence requires the Condominium Association's written consent.

   (iv)     Commercial Property Insurance including special form perils endorsement insuring Tenant's property in the Leased Premises, including all interior improvements, and plate glass, for the full replacement value, without deduction for depreciation. This policy shall have an Agreed Value Endorsement. This insurance must include all of Tenant's Work, improvements and betterments,

15

deemed by Landlord to be abandoned by Tenant and may be retained by Landlord or may be removed and stored for Tenant, at Tenant's sole cost. Tenant shall surrender the Leased Premises to Landlord free of Hazardous Material and free of any violation of any environmental rule or regulation. Upon surrender of the Leased Premises, Tenant shall provide Landlord with a report by experts acceptable to Landlord showing the Leased Premises free of Hazardous Material. Tenant's obligation to observe and perform the provisions of this ARTICLE 22 shall survive the expiration of the Term or earlier termination of this Lease.

### ARTICLE 23 - Tenant's Conduct of Business

(a)     Tenant covenants to continuously and uninterruptedly operate within the entire Leased Premises the business during its normal operating hours, except any portion of the Leased Premises while that portion is untenantable because of fire or other casualty. Tenant agrees to conduct its business at all times in a manner consistent with reputable business standards and practices, and to maintain within the Leased Premises a stock of merchandise, trade fixtures and staff adequate to service and supply the usual demands of its customers. Tenant shall keep the Leased Premises in a neat, safe, clean and orderly condition. Tenant also agrees to conduct Tenant's business under the Trade Name set forth in the Reference Provisions, which Tenant represents that it has a right to use. Tenant reserves the right to change its Trade Name in the future and will provide Landlord notice if any changes are made. A vacation or abandonment of other premises by any other tenant or occupant in the Project shall not release Tenant from its obligations under this Lease, notwithstanding anything to the contrary contained in this Lease.

If Tenant shall request Landlord's approval to open the Leased Premises for business for periods other than as set forth above and Landlord shall approve such request (which approval shall be in Landlord's sole and absolute discretion), Tenant shall pay for any additional costs incurred by Landlord in connection with such extended hours, including but not limited to the cost of security, heating, ventilating and air-conditioning the Leased Premises and the Common Areas required in order to access the Leased Premises, and any extra maintenance and/or repair to the Common Areas required as a result of such extended operating period. Additionally, Tenant shall be responsible for any such extraordinary additional maintenance, security or other costs which are incurred by Landlord as a result of Tenant's use of the Leased Premises during normal operating hours.

(b)     The parties agree that because of the difficulty or impossibility of determining Landlord's damages, if Tenant fails to keep open the Leased Premises and operate its business during Tenant's normal and advertised business hours. Tenant agrees that its use shall not be operated in a manner that disturbs or disrupts the business of other tenants and that Tenant shall not, except for special events, private parties, be open past 1:30 a.m.. .

### ARTICLE 24 - Rules and Regulations

Tenant shall require its employees, agents and contractors to comply with the rules and regulations made by Landlord or Administrative Agent, or any governing body from time to time regarding the operation of the Project, or the Leased Premises including, but not limited to, the following:

(a)     Tenant shall not put on the glass and supports of the windows (nor within 24 inches of any window), doors or exterior walls of the Leased Premises any signs, advertising placards, names, insignias, trademarks or descriptive material. No signs or other items shall be placed within the Leased Premises if they materially obstruct a view of the Leased Premises. Tenant shall not place vents, structures, improvements or obstructions on the exterior of the Leased Premises without Landlord's written consent. Landlord, at no cost to Landlord, will assist Tenant in obtain on the permits necessary to place a sign on the façade of the Premises. Landlord

22

Tenant's inventory, merchandise, signs, goods, trade fixtures, furnishings, equipment, furniture, wall coverings, floor coverings, and other personal property). Tenant shall insure for loss from flood, including coverage for water damage from all causes including but not limited to sprinkler damage, sewer discharge or backup, water line breakage, and overflow from other Tenant's spaces or from the Common Areas. Where available, Tenant shall insure for earthquake. Landlord shall be named as a loss payee with respect to the coverage for Tenant's betterments and improvements. The policy must have a Waiver of Subrogation endorsement in favor of all Additional Insureds. The deductible/self-insured retention shall not exceed $5,000 per occurrence without Landlord's written consent.

(v)     Loss of Business Income Insurance, including Extra Expense and Contingent Business income coverage. The insurance limits for this insurance shall be based upon a minimum of 12 months business income with a 60-day extended period of indemnity endorsement.

(vi)    Boiler and Machinery insurance, including mechanical breakdown, if applicable to any covering HVAC units and any separate heating units or boilers which serve only the Leased Premises and are not covered by the Landlord's insurance. Such coverage shall be for the full replacement value of the units without deduction for depreciation.

(vii)   If in Landlord's reasonable judgment (or the judgment of the Condominium Association) there is a need for additional or different types of insurance, Tenant shall obtain upon Landlord's request the insurance at Tenant's sole expense.

(viii)  Automobile liability coverage, including owned, non-owned and hired automobiles, with limits of not less than $1,000,000 combined single limit for bodily injury and property damage.

(c)    All policies of insurance (including policies of Tenant's contractors and subcontractors) covering property damage shall contain a Waiver of Subrogation Endorsement in favor of all Additional Insureds. If Tenant is permitted to self-insure for any of the insurance coverages required to be provided, Tenant hereby waives against Landlord, its parents, partners, joint venturers, subsidiaries and affiliates, against the property manager, and against the Declarant, Administrative Agent, and other Additional Insureds if not listed above, all claims, including any and all rights of subrogation which may exist, for all losses and damages no matter how caused, which were or could have been insured for under any policy of insurance required to be obtained by Tenant. This waiver of liability and waiver of subrogation expressly includes any cause of loss due to the sole or concurrent negligence of any Additional Insured. If Tenant shall, for any reason, fail to obtain from its insurance carrier(s) the required Waiver of Subrogation Endorsement, the Tenant shall fully and completely defend and indemnify the Landlord and all Additional Insureds from any claims and demands, including lawsuits, brought against Landlord and/or the Additional Insureds by any insurance company which insured Tenant for a paid loss and which seeks to recover amounts paid under Tenant's policy.

(d)    Tenant shall provide a Certificate of Insurance to Landlord evidencing all of the required coverages and Endorsements prior to taking possession of the Premises. The Certificate of Insurance must remain current (or be replaced with a current Certificate) at all times during the period of Tenant's tenancy. All policies of insurance must be written by insurance carriers licensed to do business in the state in which the Project is located and have an A.M. Best's rating of not less that A:VIII. All Tenant's liability policies shall be endorsed to be primary and non-contributory to policies of the Landlord and the Additional Insureds, and shall contain either contain a cross-liability endorsement or separation of insureds provision which permits the limits of liability under Tenant's policies to apply separately to each Additional Insured. Each policy shall contain a

16

provision that the insurance company shall give all Additional Insureds 30 days written notice in advance of any cancellation, lapse, reduction in amount of coverage or any other adverse change to the policy or insurer.

(e) The Additional Insureds who shall be named on Tenant's policies shall include the Landlord, (and if Landlord elects, its parent, subsidiaries, and affiliates), Declarant (if other than Landlord), Administrative Agent, any joint venturer or partner of Landlord, and any mortgagee or beneficiary of any part of the Project, and any property manager of Landlord or Administrative Agent.

## ARTICLE 18 - Indemnification

Excluding the willful misconduct of the indemnitee, Tenant shall indemnify, defend and save harmless Landlord, Declarant, Administrative Agent, and their parents, partners, subsidiaries, affiliates, agents, officers, directors, and employees from and against liability, claims, demands, expenses, fees, fines, penalties, suits, proceedings, actions, and causes of action arising out of or connected with Tenant's use, occupancy, management or control of the Leased Premises or Tenant's operations or activities in the Project (whether or not occurring or resulting in damage or injury within the Leased Premises or the Common Areas). This obligation to indemnify shall include reasonable legal and investigation costs and all other reasonable costs, expense and liabilities from the 1st notice that any claim or demand is or may be made. Tenant's obligation shall become effective beginning on the date Tenant is delivered the Leased Premises. Tenant's indemnification obligation shall survive the expiration of the Term or the earlier termination of this Lease.

## ARTICLE 19 - Assignment, Subletting and Ownership

(a) Tenant acknowledges that its agreement to operate in the Leased Premises for the use permitted in the Reference Provisions for the Term was a primary inducement and precondition to Landlord's agreement to lease the Leased Premises to Tenant. Additionally, the parties agree that the successful commercial profitability of the Project is based on the appropriate mix of retail and nonretail activity and that Landlord has leased the Leased Premises to Tenant because, in Landlord's opinion, Tenant's presence and commercial activity during the Term will significantly contribute to the profitability, viability and success of the Project. Accordingly, Tenant shall not transfer, assign, sublet, enter into license or concession agreements, change ownership or hypothecate this Lease or Tenant's interest in and to the Leased Premises in whole or in part, or otherwise permit occupancy of all or any part of the Leased Premises by anyone with, through or under it without the written permission of Landlord, which such permission shall not be unreasonably withheld. Any of these acts shall be considered a "transfer" for the purposes of ARTICLE 20. Any attempt at a transfer shall be null and void and confer no rights upon a 3rd person. These prohibitions shall be construed to refer to events occurring by operation of law, legal process, receivership, bankruptcy or otherwise. Notwithstanding any permitted transfer, the Leased Premises shall be used and operated as a single store.

Notwithstanding the foregoing, and without conferring any rights upon Tenant, Tenant shall submit the request for a transfer, in writing, with sufficient time and information for Landlord to make an informed decision regarding the qualifications of the proposed transferee.

(b) Landlord's consent to a transfer shall not constitute a waiver of Landlord's right not to consent to a subsequent transfer. The receipt of rental or additional rental from any party other than Tenant shall not be deemed to be a consent to a transfer, nor shall that receipt relieve Tenant of its obligation to pay rental or additional rental for the Term. Tenant shall not have a claim and waives the right to any claim against Landlord for damages because of the refusal, withholding or delaying by Landlord of consent. Tenant's only remedies shall be an action for specific performance or an injunction to enforce a consent requirement.

17

(c)     Each transfer to which Landlord has consented shall be in writing, in a form satisfactory to Landlord and executed by the transferor and transferee.  The transferee shall agree, in writing, to assume, be bound by and perform the covenants and conditions of this Lease.  Tenant shall deliver to Landlord a statement within 30 days after the end of each Lease Year, and within 30 days after the expiration or earlier termination of the Term, specifying each transfer in effect during the period covered by the statement, as well as: (a) the date of the transfer document's execution and delivery; (b) the square footage of the rentable area demised and the term; and (c) a computation in reasonable detail showing the amounts, if any, paid and payable by Tenant to Landlord for the transfer pursuant to this subsection.  Tenant shall not be released from liability or relieved of its obligations, unless Landlord expressly agrees otherwise in writing.

(d)     If Tenant (or a Guarantor of the Lease) is a nonpublic corporation and the control of the corporation changes, Tenant shall notify Landlord.  If the control changes (whether or not Tenant has notified Landlord), Landlord may declare the change to be a default, effective 60 days from the date of the notice from Tenant, or the date on which Landlord first has knowledge of the change, whichever occurs first.  The provisions of the preceding sentence shall not be applicable if control of the corporation changes as the result of a public offering which occurs on a major security exchange.  If Tenant (or a Guarantor of the Lease) is a partnership or entity other than a corporation (including, but not limited to, a sole proprietorship) and if the control changes (if Tenant is a partnership, a change shall include, but not be limited to, the withdrawal of a partner or partners from the partnership or the dissolution of the partnership), Tenant shall notify Landlord.  If the control changes (whether or not Tenant has notified Landlord), Landlord may declare the change a default, effective 60 days from the date of the notice from Tenant, or the date on which Landlord first has knowledge of the change, whichever occurs first.  The receipt by Landlord of rental from a party other than Tenant shall not be deemed notice of change in control or ownership of Tenant.

(e)     Tenant agrees to pay Landlord for attorneys' fees and administrative expense for the review, processing or preparation of any document in connection with a transfer, whether or not Landlord's consent to the transfer is required or obtained. Tenant agrees to pay up Two Thousand Five Hundred Dollars ($2,500.00) for actual fees incurred.

(f)     If Landlord is not permitted to terminate this Lease because of the provisions of Title 11 of the United States Code relating to Bankruptcy, as amended ("Bankruptcy Code"), Tenant agrees, as a debtor in possession or any trustee for Tenant, within 15 days after Landlord's request to the Bankruptcy Court, to assume or reject this Lease.  Tenant, on behalf of itself and any trustee, agrees not to seek or request an extension or adjournment of the application to assume or reject this Lease.  In no event after the assumption of this Lease shall an existing default remain uncured for a period more than the earlier of 10 days or the time period specified in this Lease.  If a filing of a petition under the Bankruptcy Code occurs, Landlord shall not have an obligation to provide Tenant with services or utilities unless Tenant has paid and is current in all payments of rental and additional rental.

(g)     If Tenant receives Landlord's consent to a transfer under ARTICLE 20(a), and if Landlord does not terminate the Lease under ARTICLE 20(d), the Minimum Annual Rental payable to Landlord shall not be less than the highest annual combined Minimum Annual Rental and Percentage Rental payable by Tenant during any previous year.

All of the other obligations, covenants and conditions shall remain unamended.

18

## ARTICLE 20 - Access to Premises

Tenant agrees that Landlord or its agents, employees, contractors or any person authorized by Landlord, may enter the Leased Premises to: (a) inspect its condition; (b) make repairs, additions or improvements to any part of the Leased Premises; (c) exhibit the Leased Premises to prospective purchasers of all or a portion of the Project; (d) place notices during the last 60 days of the Term in the Leased Premises in the offices of the Tenant ; (e) perform construction on or near the Leased Premises; (f) post notices of non-responsibility (g) enter into the Premises for any purpose; (h) Tenant agrees to provide Landlord with a key to enter the main entrance of the Premises; and (i) Landlord, its agents employees or personnel authorized by Landlord shall have unfettered, uninterrupted, continuous 24-hour access to the area marked in Blue Highlights on Exhibit B for all purposes. In the event that Tenant breaches the provisions of this Subsection (i) Tenant shall be liable to Landlord for all damages, costs, expenses (including attorney fees) of any kind nature or sort suffered by Landlord in addition to any consequential damages suffered by Landlord.

## ARTICLE 21 - Default by Tenant

(a)     The following shall be a default by Tenant:

(i)     The failure to pay when due an installment of rental, or any other payment required to be made in whole or in part, if the failure shall continue for more than five (5) days after written notice that same is past due, provided that any such notice given by Landlord shall be in lieu of, and not in addition to, any notice required by state law; and/or

(ii)     The abandonment or vacation of the Leased Premises or any part of it; and/or

(iii)     The failure to observe or perform any other provision of this Lease, if the failure continues for 10 days after written notice to Tenant; if the default cannot reasonably be cured within 10 days, Tenant shall not be in default if Tenant begins to cure the default within five (5) days and diligently cures the default within a reasonable period of time not exceeding thirty (30) days; and/or

(iv)     The making by Tenant of a general assignment for the benefit of creditors; the filing by or against Tenant of a petition to have Tenant adjudged a bankrupt, or of a petition for reorganization or arrangement under any law relating to bankruptcy (unless a petition filed against Tenant is dismissed within 60 days); the appointment of a trustee or receiver to take possession of substantially all of Tenant's assets located at the Leased Premises or of Tenant's interest in this Lease if possession is not restored to Tenant within 30 days; or the attachment, execution or other judicial seizure of substantially all of Tenant's assets located at the Leased Premises, or of Tenant's interest in this Lease, if the seizure is not discharged within 30 days; and/or

(v)     The failure more than twice within a 12 month period to make any payment of rental, provided Landlord has given Tenant the required written notices in each case. The 3rd failure shall be a non-curable default.

(b)     In addition to any other remedies available to Landlord at law or in equity for default, Landlord shall have the immediate option to terminate this Lease and the rights of Tenant by written notice to Tenant and eject Tenant. If Landlord elects to terminate, Landlord shall have the right to recover from Tenant as damages:

(i)     The worth at the time of the award of any unpaid rental which has been earned at the time of termination; and

19

(ii)     The worth at the time of the award of the amount by which the unpaid rental which would have been earned after termination until the time of award exceeds the amount of rental loss Tenant proves could have been reasonably avoided; and

(iii)     The worth at the time of award of the amount by which the unpaid rental for the balance of the Term after the time of award exceeds the amount of rental loss Tenant proves could be reasonably avoided; and

(iv)     Any other amount necessary to compensate Landlord for the detriment proximately caused by Tenant's failure to perform its obligations (including the costs and expenses of recovering the Leased Premises and reasonable attorneys' fees) or which would be likely to result from Tenant's failure; and

(v)     At Landlord's election, other amounts permitted by applicable law.

(c)     The word "rental" shall mean the Minimum Annual Rental and all other sums required to be paid by Tenant under this Lease. The word "award" means a judgment issued or rendered in favor of Landlord in a proceeding or action to recover damages from Tenant. The phrase "at the time of the award" means the date of entry of such a judgment. All sums, other than Minimum Annual Rental, shall be computed based on the average monthly amount accruing during the 24 month period preceding the default. However, if it becomes necessary to compute the rental before the 24 month period has occurred, the rental shall be computed on the basis of the average monthly amount accruing during that shorter period. As used in paragraphs (i) and (ii) above, the "worth at the time of the award" is computed by allowing interest at the Interest Rate. As used in paragraph (iii) above, the "worth at the time of the award" is computed by discounting that amount at the discount rate of the Federal Reserve Bank of Chicago, at the time of award, plus 1%. In order to determine the amounts payable under ARTICLE 22, Percentage Rental shall be included as additional rental and determined based on the average annual Net Sales for the 36 months (or, if Tenant has been operating in the Leased Premises less than 36 months, on the average Net Sales for the 12 month period) preceding the termination of Tenant's right to possession of the Leased Premises.

(d)     Landlord shall also have the right if Tenant defaults under this Lease to terminate Tenant's right to possession of the Leased Premises (without terminating this Lease) and reenter the Leased Premises and remove all persons and property from the Leased Premises. The property may be stored at Tenant's cost. Landlord shall not be liable to Tenant for loss or damage resulting from an entry by Landlord. Tenant shall pay as additional rental, upon demand, expenses incurred or paid by Landlord because of Landlord's entry. If 2 or more or any combination of individuals, corporations, partnerships or other business associations ("Individuals") sign this Lease as Tenant or guarantee this Lease as Guarantors, the liability of each individual group to pay rental and perform the obligations under this Lease shall be joint and several. The failure or refusal by Landlord to proceed against all the (or any combination of the) Individuals comprising Tenant or against Tenant or against 1 or more of the Guarantors shall not be a release or waiver of rights which Landlord may possess against the others, nor shall the granting by Landlord of a release of or execution of a covenant not to sue any 1 or more of the (or any combination of the) Individuals comprising the Tenant or the Guarantors be a release or waiver in whole or in part of rights which Landlord may possess against the others. If either party institutes legal suit or action for enforcement of an obligation, Landlord may determine the venue. To the extent permitted by applicable law, Tenant waives notice of reentry (or institution of legal proceedings), including the right to receive notice pursuant to any statute or judicial decision of law. Notwithstanding anything to the contrary contained in ARTICLE 22, any written notice, other than as specifically set forth in this ARTICLE 21, required by a statute or law enacted now or later is waived by Tenant, to the extent permitted under that statute or law.

20

(e)    If all or any part of the Leased Premises are vacated or abandoned by Tenant, or if Landlord elects to reenter or take possession of the Leased Premises pursuant to legal proceedings or notice, and if Landlord does not elect to terminate this Lease, then Landlord may from time to time, without terminating this Lease, either recover rental as it becomes due or relet the Leased Premises or any part of it for any length of time, rental and conditions that Landlord in its sole discretion deems advisable.  Landlord shall have the right to make alterations and repairs to the Leased Premises.  If Tenant has left all or any of its trade fixtures, furniture, furnishings, signs, stock or other personal property in the Leased Premises, that shall not preclude a determination that a vacation or abandonment has occurred.

(f)    If Landlord elects to relet, rental received by Landlord from reletting shall be applied: first, to the payment of indebtedness other than rental due Landlord from Tenant; second, to the payment of the cost of reletting; third, to the payment of the cost of alterations and repairs to the Leased Premises; fourth, to the payment of rental due and unpaid; and the remainder, if any, shall be applied to the payment of future rental that may become due.  If the rental received from reletting during any month which is applied to the payment of rental is less than the rental payment during that month by Tenant, Tenant shall pay the deficiency to Landlord. The deficiency shall be calculated and paid monthly.  Tenant shall also pay Landlord, as soon as ascertained, the costs and expenses incurred by Landlord to relet or make alterations and repairs not covered by the rental received from the reletting of the Leased Premises.

(g)    A reentry or taking possession of the Leased Premises by Landlord shall not be construed to be an election to terminate this Lease, nor shall it cause a forfeiture of rental remaining to be paid during the balance of the Term, unless a written notice of that intention is given to Tenant or the termination is decreed by a court of competent jurisdiction.  Notwithstanding a reletting without termination by Landlord because of default by Tenant, Landlord may at any time after reletting elect to terminate this Lease for any default.

(h)    Tenant expressly waives any right or defense it may have to claim a merger, and neither the commencement of an action or proceeding nor the settlement of, or entering of judgment for any action or proceeding shall bar Landlord from bringing subsequent actions or proceedings, based upon other or subsequently accruing claims, or based upon claims or events which have previously accrued and not been resolved in any prior action, proceeding or settlement. **THE PARTIES WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER OF THE PARTIES AGAINST THE OTHER, REGARDLESS OF WHETHER SUCH ACTION, PROCEEDING OR COUNTERCLAIM IS RELATED TO A DEFAULT UNDER THIS LEASE.**

### ARTICLE 22 - Surrender of Premises

Tenant shall, upon expiration of the Term, or the earlier termination of this Lease, surrender the Leased Premises to Landlord in a broom-clean condition, without damage, except as caused by ordinary wear and tear, and shall leave in the Leased Premises all apparatus, equipment, alterations, improvements and additions by either party to, in, upon or about the Leased Premises, except for Tenant's trade fixtures, signs and other personal property, which, so long as Tenant is not in default, may be removed by Tenant.  If Tenant shall be in default, Tenant shall not have the right to remove trade fixtures, signs and other personal property, and those items shall remain or become, as the case may be, the property of Landlord, unless otherwise directed by Landlord.  Tenant, at its sole expense, shall immediately repair damage to the Leased Premises or Project caused by Tenant vacating the Leased Premises or by Tenant's removal of trade fixtures, signs and other personal property.  Tenant shall comply with all laws and governmental regulations applicable to the removal and repair of the property.  Tenant shall not create a disturbance or health problem for customers, agents, invitees or other parties in the Project as result of the removal or repair.  Any property not removed may be

21

shall have the right, without giving notice to Tenant and without liability, to restore the Leased Premises and remove property from the Leased Premises unless the size, type, color, location, copy, nature and display qualities of the property were approved by Landlord in writing. The cost of the restoration and removal of property shall be paid for by Tenant promptly upon receipt of a bill. Tenant shall not place a sign on the roof of the Leased Premises notwithstanding anything in this Lease to the contrary. Notwithstanding this ARTICLE 24(a), all signs shall comply with all codes, ordinances and regulations promulgated by any governmental authority and any of the Governing Documents.

(b)     No awning or other projections shall be attached to the outside walls of the Leased Premises without the written consent of Landlord.

(c)     Loading and unloading of goods shall be done only at the times, in the areas and through the entrances designated by Landlord.

(d)     Garbage shall be kept in the kind of container approved by Landlord's fire and casualty consultants and shall be removed and deposited daily in mass disposal containers in the manner prescribed from time to time by Landlord.  Landlord shall provide or designate a service for collection of garbage from designated mass disposal containers.

(e)     Except solely for Tenant's own internal operations use within the Leased Premises, no radio or television aerials or other receivers and/or equipment, infrared transmitters/receivers, cabling, telecommunications systems (including but not limited to switching, relay, hub or booster systems) shall be erected or placed within the Leased Premises or on the roof or walls (interior or exterior) of the Leased Premises without the written consent of Landlord, which may be withheld in Landlord's sole discretion. If Landlord's consent is not received, anything erected or placed on the roof or elsewhere within the Leased Premises may be removed, without notice, and any damage to the walls or roof or elsewhere within the Leased Premises shall be the responsibility of Tenant.  Tenant's access to the roof is limited to the maintenance of equipment installed with Landlord's approval and inspections for damage.  Tenant shall not go on the roof without the written approval of Landlord.

(f)     No loudspeakers, televisions, phonographs, radios, flashing lights, machinery or other devices shall be heard or seen outside of the Leased Premises without the prior written consent of Landlord.  Tenant shall be permitted to so use the outdoor area of the Premises subject to the requirements of the City of Kansas City and reasonable noise regulations of Landlord.

(g)     No auction, fire, bankruptcy or selling-out sales shall be conducted without the written consent of Landlord.

(h)     Intentionally Deleted.

(i)     Areas immediately adjoining the Leased Premises shall be kept clear by Tenant, and Tenant shall not place nor permit obstructions, garbage, refuse, improvements, merchandise or displays in those areas.

(j)     Tenant and its employees shall not park motor vehicles in parts of the parking area which may be designated for customer parking.  Landlord will designate those portions of the parking area in which Tenant employee parking is permitted. Tenant shall furnish Landlord the state automobile license numbers assigned to the vehicles of Tenant's employees within 5 days after request by Landlord.  Tenant shall notify Landlord of changes to the numbers within 5 days after the changes occur. If Tenant or Tenant's employees continue to park in the customer parking areas, after notice is given to Tenant by Landlord, Landlord may, in addition to any

23

other remedies Landlord may have, charge Tenant $25 per day, for each day or partial day, per vehicle parked in the customer parking areas, attach violation stickers or notices to the vehicles and have the vehicles removed at Tenant's expense.

(k)    Intentionally Deleted.

(l)    Tenant shall not carry on any trade or occupation or operate any instrument, apparatus or equipment which emits an odor or causes a noise outside the Leased Premises or which is offensive.

(m)    Tenant shall not put temporary signs or fixtures (including portable trade fixtures, displays and folding tables) for the display of merchandise within 3 feet of either side of any entrance to the Leased Premises.

(n)    Tenant shall store and stock in the Leased Premises only goods, wares, merchandise and other property necessary for the conduct of Tenant's business.

(o)    Tenant shall not use or permit the Leased Premises to be used for living, sleeping, residential or lodging purposes.

(p)    Tenant shall not use the plumbing for a purpose other than that for which it is constructed.  No grease or foreign substance shall be put in the plumbing, and the expense of any resulting breakage, stoppage or damage (whether on or off the Leased Premises) shall be borne by Tenant.

(q)    Tenant shall not in the Common Areas:

    (i)    vend, peddle or solicit orders for sale or distribution of any merchandise, device, service, periodical, book, pamphlet or other matter;

    (ii)    exhibit any sign, placard, banner, notice or other written material;

    (iii)    distribute any circular, booklet, handbill, placard or other material;

    (iv)    solicit membership in any organization, group or association or contribution;

    (v)    parade, patrol, picket, demonstrate or engage in conduct that might interfere with or impede the use of the Common Areas by any customer, invitee or employee, create a disturbance, attract attention or harass, annoy, disparage or be detrimental to the interest of any of the other tenants;

    (vi)    use the Common Areas for any purpose when none of the retail establishments within the Project are open for business;

    (vii)    panhandle, beg or solicit funds; nor

    (viii)    solicit business.

(r)    Tenant shall have the responsibility for protecting the Leased Premises from theft, robbery and pilferage, and shall keep non-customer doors locked.

24

(s)     No symbol, design, name, mark or insignia adopted for or used by Landlord in the Project shall be used by Tenant without a license agreement between Tenant and the Declarant or whoever has the right to grant the license at the time of the grant ("Licensor"), such license to be provided by Declarant or Licensor).

(t)     Intentionally Deleted.

(u)     Intentionally Deleted.

(v)     Tenant agrees that it will use their best efforts not to, , park, load or unload any car, truck or other vehicle on any part of the Westport Square other than that portion thereof specifically designated by Landlord or take deliveries while parking on Pennsylvania Avenue between the hours of 11:00 a.m. and 2:00 p.m.  In the interest of providing maximum customer parking, Landlord may, in its sole discretion, specifically exclude tenant employees from using parking facilities owned by Landlord and Tenant and Tenant's employees shall not park in any areas which are designated for customer use, which shall include Pennsylvania Avenue between 40th Street and 42nd Street, Westport Road between Broadway & Bridge Streets; Broadway Street between 42nd and 40th Streets and any other parking areas designated for customer use.  Any violation of this provision shall be subject to a $50.00 fine per incident.

Landlord shall have all remedies provided in this Lease for the breach of any of the provisions of ARTICLE 25. Landlord shall have the right to grant variances of the rules and regulations, and shall enforce the rules and regulations at its sole discretion.

In the event of a conflict between this ARTICLE 24 and the Governing Documents, the Governing Documents shall control.

### <u>ARTICLE 25 - Eminent Domain</u>

(a)     If the entire Leased Premises is appropriated or taken under eminent domain by any public or quasi-public authority, this Lease shall terminate on the date of the taking.  Landlord and Tenant shall be released from liability accruing after that date.  If more than 25% of the square footage of floor area (including a mezzanine, if any) of the Leased Premises is taken under eminent domain by any public or quasi-public authority, or if because of the appropriation or taking, regardless of the amount taken, the remainder of the Leased Premises is not usable for the purposes specified in Reference Provision 1.03, either Landlord or Tenant shall have the right to terminate this Lease as of the date Tenant is required to vacate a portion of the Leased Premises which has been taken, by giving notice to the other in writing within 60 days after the date of the taking.  Landlord and Tenant shall be released from liability accruing after that date.

(b)     Whether or not this Lease is terminated, Landlord shall be entitled to the entire award or compensation and any portion of any compensation awarded for the diminution in value of the leasehold interest or fee of the Leased Premises, but Tenant's right to receive compensation or damages for Tenant's fixtures and tangible personal property shall not be affected.  If this Lease is terminated, rental, additional rental and other charges for the last month of Tenant's occupancy shall be prorated, and Landlord shall refund to Tenant rental, additional rental or other charges paid in advance.

(c)     If Landlord and Tenant elect not to terminate this Lease, Tenant shall remain in the portion of the Leased Premises which has not been appropriated or taken.  Landlord agrees, at Landlord's cost and expense, to restore the remaining portion of the Leased Premises to the quality and character that existed prior to the appropriation or taking as soon as reasonably possible.  The Minimum Annual Rental shall be adjusted, on an equitable basis, taking into account the relative value of the portion taken compared to the portion remaining.  A

25

Case 4:25-cv-00023-RK     Document 1-5     Filed 01/14/25     Page 29 of 50

voluntary sale or conveyance in lieu of condemnation, but under threat of condemnation, shall be an appropriation or taking under eminent domain. Tenant shall not have a claim against Landlord because of a taking.

(d)     In the event of a conflict between this ARTICLE 25 and the Governing Documents, the Governing Documents shall control.

## ARTICLE 26 - Attorneys' Fees

If, during the Term or afterwards, either party institutes an action, proceeding or counterclaim against the other relating to this Lease, or a default, the unsuccessful party shall reimburse the successful party for the total amount of court costs, expenses, expert fees, consultants' fees and reasonable attorneys' fees actually incurred, the parties waiving any statute, rule of law or public policy to the contrary. The parties agree to confirm this agreement in writing at the start of the action, proceeding or counterclaim. The giving of a notice of default by Landlord shall constitute part of an action or proceeding under this Lease, entitling Landlord to reimbursement of its reasonable expenses of attorneys' fees and disbursements, even if an action or proceeding is not commenced in a court of law and whether or not the default is cured. This ARTICLE 26 shall survive the expiration or termination of this Lease.

## ARTICLE 27 - Sale of Premises by Landlord

In the event of the sale or exchange of the Leased Premises and the assignment of this Lease, Landlord shall be relieved of all liability for the covenants and obligations in or derived from this Lease, or arising out of any act, occurrence or omission relating to the Leased Premises or this Lease. The covenants, representations and obligations of Landlord shall be binding on Landlord only during the period that Landlord has an ownership interest in the Leased Premises.

## ARTICLE 28 - Notices

Notices and demands shall be given in writing by personal delivery or sent by certified mail, return receipt requested, postage pre-paid, or by nationally recognized overnight courier service, addressed to Landlord and to Tenant at the addresses specified in the Reference Provisions or at the addresses which were last specified by notice by Landlord or Tenant. Notices or demands shall be deemed to have been given, made or communicated on the date of personal delivery, 3 days from the date deposited in the United States mail, or the next business day after deposit with an overnight courier.

## ARTICLE 29 - Remedies

All rights and remedies of Landlord and Tenant under this Lease or at law are cumulative, and the exercise of one or more rights or remedies shall not exclude or waive the right to the exercise of any others. All rights and remedies may be exercised and enforced concurrently, whenever and as often as desirable.

## ARTICLE 30 - Successors and Assigns

All covenants, promises, conditions, representations and agreements shall be binding upon, apply and inure to Landlord and Tenant and their heirs, executors, administrators, successors and assigns. The provisions of ARTICLE 20 hereof shall not be affected by this ARTICLE 30.

26

## ARTICLE 31 - Representations

Tenant agrees that Landlord, its employees and agents have made no representations, inducements or promises about the Leased Premises, the Project, or this Lease, or about the characteristics or conditions regarding or pertaining to the Leased Premises, or the Project, unless the representations, inducements and promises are in this Lease. Tenant has independently investigated the potential for the success of its operations in the Leased Premises and the Project. Therefore, no claim or liability, or cause for termination, shall be asserted by Tenant against Landlord, its employees and agents, for, and they shall not be liable because of, the breach of any representations, inducements or promises not expressly in this Lease.

Any claim, demand, right or defense by Tenant which is based upon or arises in connection with this Lease or the negotiation of this Lease prior to its execution shall be barred unless Tenant commences an action or interposes a legal proceeding or defense within 1 year after the date of the inaction, omission or occurrence of the event, or the action to which the claim, demand, right or defense relates.

## ARTICLE 32 - Waiver

The failure by Landlord or Tenant to insist upon strict performance by the other of any of the covenants, conditions, provisions, rules and regulations and agreements in this Lease, or to exercise a right, shall not be a waiver of any rights or remedies and shall not be a waiver of a subsequent breach or default. A surrender of the Leased Premises shall not occur by Landlord's acceptance of rental or by other means unless Landlord accepts the surrender in writing. A payment by Tenant or receipt by Landlord of an amount less than the monthly rental shall not, nor shall the endorsement, statement, check, letter accompanying a check or payment of rental, be an accord and satisfaction. Landlord may accept a check or payment without prejudice to its right to recover the balance of rental due and pursue any other remedy. A waiver by Landlord for one tenant shall not constitute a waiver for another tenant.

## ARTICLE 33 - Holding Over

If Tenant remains in possession of the Leased Premises after the expiration of the Term without a new lease (even if Tenant has paid and Landlord has accepted rental), Tenant shall be deemed to be occupying the Leased Premises as a tenant from month to month, subject to the covenants, conditions and agreements of this Lease. The monthly rental shall be computed based on 1/6th of the rental payable to Landlord during the last 12 month period of the Term. If Tenant fails to surrender the Leased Premises on the termination of this Lease, Tenant shall, in addition to other liabilities to Landlord, indemnify, defend and hold Landlord harmless from loss and liability resulting from that failure including, but not limited to, claims made by a succeeding tenant. The exercise of Landlord's rights shall not be interpreted to allow Tenant to continue in possession, nor shall it be deemed an election to extend the Term beyond a month-to-month basis. If Landlord, in its sole discretion, determines to permit Tenant to remain in the Leased Premises on a month-to-month basis, the month-to-month tenancy shall be terminable on 30 days prior written notice given by either party to the other party.

## ARTICLE 34 - Interpretation

Only the relationship of Landlord and Tenant is created by this Lease. No provision of this Lease or act of either party shall be construed to create the relationship of principal and agent, partnership, or joint venture or enterprise.

27

## ARTICLE 35 - Quiet Enjoyment

Landlord has the right, power and authority to enter into this Lease. Tenant, or any permitted assignee or sublessee of Tenant, upon the payment of the rental and performance of Tenant's other covenants, shall and may peaceably and quietly have, hold and enjoy the Leased Premises during the Term. This covenant shall be construed as a covenant running with the land. It shall not be construed as a personal covenant of Landlord.

## ARTICLE 36 - Waiver of Redemption

Tenant waives any right of redemption if Tenant is evicted or dispossessed for any cause, or if Landlord obtains possession of the Leased Premises because of the default of Tenant or otherwise. The rights given to Landlord are in addition to rights that may be given to Landlord by statute or otherwise.

## ARTICLE 37 - Fees

LANDLORD : Landlord shall pay CBRE the sum of $10,000.00 as follows:

a. $5,000.00 upon execution and Tenant's payment of the security deposit;
b. An additional $5,000.00 payable as follows:

   i. Beginning on the Rental Commencement Date and continuing for a period of 10 months following the Rental Commencement Date, $500.00 each month in which Tenant pays all rents due under the Lease.

## ARTICLE 38 - Tenant's Property

Except for the willful misconduct of Landlord, its agents or employees, Landlord, its agents and employees shall not be liable, and Tenant waives all claims, for damage to persons, property and Tenant's business sustained by Tenant (or anyone claiming through Tenant) located on the Leased Premises. Property kept or stored on the Leased Premises shall be kept or stored at the sole risk of Tenant, and Tenant shall indemnify, defend and hold Landlord harmless from any claims arising out of damage to the same or damage to Tenant's business, including subrogation claims by Tenant's insurance carrier.

## ARTICLE 39 - Lease Status

Within 10 days of Landlord's written request, Tenant shall without charge execute, acknowledge and deliver to Landlord an instrument required under this Lease or an instrument prepared by Landlord containing the commencement and termination dates of this Lease, the Rental Commencement Date, and if true, that (a) this Lease is a true copy of the Lease between the parties, (b) there are no amendments (or stating the amendments), (c) the Lease is in full force and effect and that, to the best of Tenant's knowledge, there are no offsets, defenses or counterclaims of rental or in the performance of the other covenants and conditions to be performed by Tenant, (d) no default has been declared by either party and that Tenant has no knowledge of any facts or circumstances which it believes would constitute a default by either party and (e) any other matters reasonably requested by Landlord. Tenant shall remain liable to Landlord for damages sustained by Landlord because of the failure by Tenant to execute, acknowledge and deliver the instrument. The failure of Tenant to execute, acknowledge and deliver the instrument shall be an acknowledgment by Tenant that the statements contained in the instrument are correct. Anyone transacting with Landlord shall have the right to rely on the accuracy of the statements contained in the instrument, whether it is signed by Tenant or deemed acknowledged by Tenant pursuant to this ARTICLE 39.

28

## ARTICLE 40 - Recording

Tenant shall not record this Lease, a memorandum, "short form" or other reference to this Lease, without the written consent of Landlord.

## ARTICLE 41 - Force Majeure

If either party is delayed, hindered or prevented from the performance of an obligation because of strikes, lockouts, labor troubles, the inability to procure materials, power failure, restrictive governmental laws or regulations, riots, insurrection, war or another reason not the fault of the party delayed, but not including financial inability, the performance shall be excused for the period of delay. The period for the performance shall also be extended for a period equal to the period of delay. Tenant shall not be excused from the prompt payment of rental, additional rental or other payments. It shall be a condition of Tenant's right to claim an extension that Tenant notify Landlord, in writing, within 10 days after the occurrence of the cause, specifying the nature of the cause and the period of time necessary for performance.

## ARTICLE 42 - Construction of Lease

Tenant has read and understands this Lease. The rule of construction that a document should be construed most strictly against the party which prepared the document shall not be applied, because both parties have participated in the preparation of this Lease.

## ARTICLE 43 - Security Deposit

Five thousand dollars ($5,000) which is to be paid at the time of Tenant's execution of this lease.

## ARTICLE 44 - Captions

Captions are for convenience and reference only. The words contained in the captions shall not be deemed to explain, modify, amplify or aid in the interpretation, construction or meaning of this Lease. The use of masculine or neuter genders shall include the masculine, feminine and neuter genders. The singular form shall include the plural if the context requires. "Landlord" and "Tenant" means "Landlord" and "Tenant" and "their agents and employees", unless the context requires otherwise.

## ARTICLE 45 - Severability

If any provision of this Lease or any paragraph, sentence, clause, phrase or word is judicially or administratively held invalid or unenforceable, that shall not affect, modify or impair any other paragraph, sentence, clause, phrase or word. The parties acknowledge that certain charges, fees and other payments are deemed "additional rental" in order to enforce Landlord's remedies, and shall not be construed to be "rent" if rent controls are imposed.

## ARTICLE 46 - Objection to Statements

Tenant's failure to object to a statement, invoice or billing within one year after receipt shall constitute Tenant's acquiescence. Tenant shall be required to provide Landlord with a specific and detailed list of Tenant's objections at the time Tenant makes its objection to Landlord. The statement, invoice or billing shall be an account stated between Landlord and Tenant.

29

Case 4:25-cv-00023-RK    Document 1-5    Filed 01/14/25    Page 33 of 50

## ARTICLE 47 - Liability of Landlord

Landlord's liability under this Lease or arising out of the relationship of the parties shall be limited to Landlord's interest in the Leased Premises. Judgments rendered against Landlord shall be satisfied solely out of the proceeds of the sale of Landlord's interest in the Leased Premises and no other asset. The provisions of this ARTICLE 47 shall inure to Landlord's successors and assigns. These provisions are not designed to relieve Landlord from the performance of its obligations under this Lease, but to limit the personal liability of Landlord in case of a judgment against Landlord.

## ARTICLE 48 - No Option

The submission of this Lease is not a reservation of or option for the Leased Premises or any other space in the Project, and vests no right in Tenant. This Lease shall become effective only upon proper execution and delivery by the parties.

## ARTICLE 49 - Corporate Tenant

If Tenant is or will be a corporation or partnership or limited liability company of any kind, the persons executing this Lease on behalf of Tenant covenant and represent that Tenant is a duly incorporated or duly qualified (if foreign) corporation or partnership, as the case may be (including without limitation a limited liability corporation and a limited liability partnership) and is authorized to do business in the State where the Project is located (evidence shall be supplied Landlord upon request). Tenant also covenants and represents that the person or persons, partner or member executing this Lease on behalf of Tenant is (if a corporation) an officer of Tenant, and is (if a corporation or partnership of any kind) authorized to sign and execute this Lease.

## ARTICLE 50 - Printed Provisions

The printed provisions of this Lease and written or typed additions shall be given equal weight for the interpretation of this Lease. The deletion of any portion of this Lease shall not create an implication regarding the intent of the parties, and this Lease shall be read and interpreted as if the deleted portion had never been in this Lease.

## ARTICLE 51 - Entire Agreement

This Lease is the only agreement between the parties for the Leased Premises. An amendment, modification or supplement to this Lease shall not be effective unless it is in writing and executed by the parties.

## ARTICLE 52 - Third-Party Rights

This Lease shall not confer rights or benefits, including third-party beneficiary rights or benefits to anyone that is not a named party to this Lease, including any individual, corporation, partnership, trust, unincorporated organization, governmental organization or agency or political subdivision, but excepting the Administrative Agent, who shall be a third party beneficiary.

## ARTICLE 53 - Financial Statements

(a)     Tenant acknowledges that it has provided Landlord with its financial statement or annual report ("Statement") and represents that the Statement is a primary inducement to Landlord's agreement to lease the

30

Leased Premises to Tenant. Landlord has relied on the accuracy of the Statement in order to enter into this Lease. Tenant represents that the information contained in the Statement is true, complete and correct in all material aspects. This representation is a precondition to the Lease.

(b)      At the request of Landlord, unless Tenant is a publicly traded company, Tenant shall, not later than 30 days following such request, furnish to Landlord its most recent balance sheet for at least the most recent fiscal year, a statement of income and expense for that year and an opinion of an independent certified public accountant satisfactory to Landlord (or a certificate of the chief financial officer, owner or partner of Tenant) indicating the financial statement has been prepared in conformity with generally accepted accounting principles consistently applied and fairly present the financial condition and results of the operations of Tenant for that year.

## ARTICLE 54 - Tenant's Failure

This Lease shall be governed by the laws of the State in which the Project is located and shall be deemed made and entered into in the county in which the Project is located. If Tenant fails to comply with and perform any of its covenants, conditions or agreements, Landlord shall have the right after providing Tenant 10 days to cure, but not be obligated, to perform the covenants, conditions or agreements. Tenant shall pay to Landlord on demand as additional rental, a sum equal to the amount spent by Landlord for the performance, plus 5% of such amount to defray supervision and overhead. If Landlord performs any covenants, conditions or agreements, Landlord, its agents or employees may enter the Leased Premises. That entry and performance shall not constitute an eviction of Tenant in whole or in part, nor relieve Tenant from the performance of the covenants, conditions and agreements. Landlord, its agents and employees shall not be liable for claims for loss or damage to Tenant or anyone claiming through or under Tenant.

## ARTICLE 55 - Ownership

(a)      If the owner of the Leased Premises is Trustee of a Real Estate Investment Trust, then Landlord and Tenant  agree that Minimum Annual Rental, Percentage Rental and all additional rental paid to Landlord under this Lease (collectively referred to in this ARTICLE 59 as "Rent") shall qualify as "rents from real property" within the meaning of Section 856(d) of the Internal Revenue Code of 1986, as amended (the "Code") and the U.S. Department of Treasury Regulations (the "Regulations").  Should the Code or the Regulations, or interpretations of them by the Internal Revenue Service contained in Revenue Rulings, be changed so that any Rent no longer qualifies as "rent from real property" for the purposes of Section 856(d) of the Code and the Regulations, other than by reason of the application of Section 856(d)(2)(B) or 856(d)(5) of the Code or the Regulations, then Rent shall  be adjusted so that it will qualify (provided however that any adjustments required pursuant to this Section shall be made so as to produce the equivalent (in economic terms) Rent as payable prior to the adjustment).

(b)      Any services which Landlord is required to furnish pursuant to the provisions of this Lease may, at Landlord's option, be furnished from time to time, in whole or in part, by employees of Landlord or Landlord's affiliates or by one or more third parties hired by Landlord or Landlord's affiliates. Tenant agrees that upon Landlord's written request it will enter into direct agreements with the parties designated by Landlord to provide such services, provided that no such contract shall result in Tenant having to pay, in the aggregate, more money for the occupancy of the Leased Premises under the terms of this Lease, or Tenant's receiving fewer services or services of a lesser quality than it is otherwise entitled to receive under the Lease.

31

Case 4:25-cv-00023-RK      Document 1-5      Filed 01/14/25      Page 35 of 50

## ARTICLE 56 – Governing Documents

This Lease is subject to the Declaration of Deed Restrictions filed May 1, 1998, Document No. 98K21799 in Book K3189 at Page 285, The Terms and Provisions of the Agreement to Maintain Decorative Lights in Public Right of Way dated April 27th, 1990, and recorded as Document No. K-955889, Book K2091 at Page 1851, by and between the City of Kansas City, Missouri and Westport Special Business District of Official Records; the Declaration of Restrictions dated February 13, 2007 and filed on February 14, 2007 as Document No. 2007E0021078; as those documents may be amended from time to time (so long as such amendments do not preclude or prohibit Tenant's Permitted Use of the Leased Premises) and which shall collectively constitute and shall be referred to as the "Governing Documents." The Governing Documents are recorded as of the date of this Lease as the Governing Documents may hereafter be supplemented, modified or amended; however, Tenant acknowledges receipt of copies of the Governing Documents and any proposed supplements, modifications or amendments In the event of a conflict between this Lease and the Governing Documents, the Governing Documents shall govern, unless a specific waiver has been provided by the governing body and/or the Declarant, as required under the Governing Documents. In all cases under this Lease in which the Administrative Agent is responsible for carrying out obligations, including, but not limited to, maintenance of the Project or any part thereof, payment for and procurement of insurance, and payment of Taxes, Landlord will use reasonable efforts to cause such obligations to be performed, and Tenant shall accept performance by such Administrative Agent as performance by Landlord.

[SIGNATURE BLOCKS ON NEXT PAGE]

32

# AFFIDAVIT

The undersigned, The Sourze, LLC a Missouri Limited Liability Company ("Tenant"), has signed a Retail Lease dated _Nov. 25_, 2020 ("Lease"), with **Pulse Management, LLC,** a Missouri limited liability company ("Landlord") for the occupancy of certain "Leased Premises" located at 427 Westport Road in Kansas City, Jackson County, County, Missouri ("Project"). The Lease business terms were negotiated with Andrew J. Hood, as representative of the Landlord. No representative, agent or employee of the Landlord: (a) represented, suggested, promised or implied that the undersigned would be given an exclusive use in the Project for the operation of the business to be conducted in the Leased Premises, or that the Landlord would not lease space in the Project to a competing or other tenant; (b) made any representations, inducements or promises about the Leased Premises or the entry into the Lease, unless expressly set forth in this Lease; (c) made any representations, inducements or promises about the characteristics or conditions regarding or pertaining to the Leased Premises or the Project, unless expressly in the Lease. The undersigned has independently investigated the potential for the success of its operations in the Project and has not relied upon any representations, inducements or promises by Landlord's representatives, agents or employees, other than those expressly contained in the Lease.

TENANT:

The Sourze, LLC., a
Missouri LLC

By: _Robert Thorpe_

Name: _____

Its: _____

Subscribed and sworn to before me this _11_ day of _November_, 2020.

_____
Notary Public

Seal and Expiration: _04/29/2023_

Robert L. Preston Jr
Notary Public-Notary Seal
State of Missouri-Jackson County
Commission #15786075
My Commission Expires Apr 29, 2023

LANDLORD

PULSE MANAGEMENT, LLC,
a Missouri limited liability company


By: _____
Andrew J. Hood, Managing Member


TENANT

THE SOURZE, LLC,
a Missouri limited liability company


By: _____
Name: _____
Title: _____

33

Exhibit A
SITE PLAN

## Exhibit B
## LEASED PREMISES


**NEED THIS EXHIBIT**

# VOLUME 1NE

*427 WESTPORT ROAD*

*1 OF 3*

19.80

33.65

VOLUME 1NE
MAIN FLOOR
1239.7 SQFT

8.00

67.00

10.87

8.00

22.48

19.80

0    10

scale    feet

1" = 10

© COPYRIGHT 2015   R.L. BUFORD & ASSOCIATES, LLC

# R.L. Buford & Associates, LLC

LAND SURVEYING — DEVELOPMENT CONSULTANTS

P.O. BOX 14069, PARKVILLE, MO. 64152   (816) 741-6152

| SEC.-TWP.-RGE. | COUNTY | JOB NO. | DATE | FIELD BOOK | PAGE | DRAWN BY |
|---|---|---|---|---|---|---|
|  | JACKSON | LOOSE LEAF | 10/19/2015 | LOOSE LEAF | J-15135 | ABH |

# *VOLUME 1NE*

### *427 WESTPORT ROAD*

### *2 OF 3*

19.80

*VOLUME 1NE*
*BASEMENT*
*1326.6 SQFT*

67.00      67.00

19.80



0          10

scale       feet

1" = 10

© COPYRIGHT 2015 R.L. BUFORD & ASSOCIATES, LLC

 ## *R.L. Buford & Associates,* LLC

### LAND SURVEYING – DEVELOPMENT CONSULTANTS

P.O. BOX 14069, PARKVILLE, MO. 64152   (816) 741-6152

| SEC.–TWP.–RGE. | COUNTY | JOB NO. | DATE | FIELD BOOK | PAGE | DRAWN BY |
|---|---|---|---|---|---|---|
| | JACKSON | LOOSE LEAF | 10/19/2015 | LOOSE LEAF | J–15135 | ABH |

# VOLUME 1NE

*427 WESTPORT ROAD*

*3 OF 3*



19.80

VOLUME 1NE
2ND FLOOR/LOFT
259.4 SQFT

13.10    13.10

19.80

UP

19.80

38.80    38.80

VOLUME 1NE
2ND FLOOR
768.2 SQFT

19.80



0                    10

scale              feet

1" = 10

© COPYRIGHT 2015   R.L. BUFORD & ASSOCIATES, LLC



# R.L. Buford & Associates, LLC

LAND SURVEYING – DEVELOPMENT CONSULTANTS

P.O. BOX 14069, PARKVILLE, MO. 64152   (816) 741–6152

| SEC.–TWP.–RGE. | COUNTY | JOB NO. | DATE | FIELD BOOK | PAGE | DRAWN BY |
|---|---|---|---|---|---|---|
| | JACKSON | LOOSE LEAF | 10/19/2015 | LOOSE LEAF | J–15135 | ABH |

# EXHIBIT C

## CONSTRUCTION PROVISIONS

**I.** **LANDLORD'S WORK**

# EXHIBIT D

## TENANT'S PLANS AND SPECIFICATIONS


To be Provided by Tenant

**GUARANTY**

This is a guarantee ("Guaranty") of a Retail Lease dated _Nov 25ᵗʰ_ , 202_0_ , ("Lease"), by and between _Pulse Development, LLC_ , a Missouri limited liability company ("Landlord"), and _Robert Thorpe_ ("Guarantor"), concerning the Leased Premises located at the "Project" known as _WestPort Square_ and the Lease by and between Landlord _The Source, LLC_ a Missouri limited liability company("Tenant") of even date herewith.

FOR VALUE RECEIVED, and in consideration for, and as an inducement to Landlord to enter into the foregoing Lease, the undersigned guarantor(s) (whether one or more, "Guarantors") hereby ratify, acknowledge and consent to the Lease as amended and further hereby jointly and severally (if married), but subject to the limitation set forth below as to Guarantors' liability amount, and unconditionally guarantee to Landlord, its successors and assigns, the payment of all rentals of the rental period specified thereunder, all other payments to be made by Tenant for the rental period under said Lease, and for the the rental period performance and observance by Tenant of all the terms, covenants, conditions and agreements therein provided to be performed and observed by Tenant for the first 36 months of the rental period, for which Guarantors shall be jointly and severally liable with Tenant, without requiring any notice of nonpayment, nonperformance or nonobservance, or proof of notice or demand, whereby to charge Guarantors, all of which Guarantors hereby expressly waive. Guarantors expressly agree that the Landlord, its successors and assigns, may proceed against Guarantors separately or jointly, before, after or simultaneously with the proceedings against the Tenant for default for the first 36 months of the rental period, up to the amounts set forth below, and that this Guaranty shall not be terminated, affected or impaired in any way or manner whatsoever by reason of: (i) the assertion by Landlord against Tenant of any of the rights or remedies reserved to Landlord pursuant to the provisions of said Lease; (ii) summary or other proceedings against Tenant; or (iii) the omission of Landlord to enforce any of its rights against Tenant; (iv) any extensions of time or indulgence granted by Landlord to Tenant. The obligations of the Guarantor will terminate after the first 36 months of the rental period.

Guarantors further covenant and agree: (i) that Guarantors will be bound by all of the provisions, terms, conditions, restrictions, and limitations contained in said Lease for the first 36 months of the rental period as though Guarantors were named therein as Tenant; and (ii) that this Guaranty shall be absolute and unconditional and shall remain and continue in full force for the entire rental period and effect as to amendment, addition, assignment, sublease, transfer or other modification of said Lease, whether or not Guarantors shall have any knowledge or have been notified of or agreed or consented to any such renewal, extension, amendment, addition, assignment, sublease, transfer or other modification of said Lease, and Guarantors agree to be bound by any and all modifications to the Lease.

If Landlord is compelled to take any action or proceeding in court or otherwise to enforce compliance with the terms of this Guaranty, Guarantors shall, in addition to any other rights and remedies to which the Landlord may be entitled hereunder, or as a matter of law or in equity, be obligated to pay all costs, including attorneys' fees, incurred or expended by Landlord in connection therewith. The term "action or proceeding" includes appeals from a lower court judgment as well as proceedings in the Federal Bankruptcy Court ("Bankruptcy Court"), whether they are adversary proceedings or contested matters. The "prevailing party": (i) as used in an adversary proceeding or contested matter, or any other actions taken by the non-bankruptcy party which are reasonably necessary to protect its rights under this Guaranty; and, (ii) as used in the context of proceedings in any court other than the Bankruptcy Court means the party that prevails in obtaining a remedy or relief which most nearly reflects the remedy or relief which the party sought.

Guarantors further covenant and agree to assume said Lease for the rental period and to perform all of the terms and conditions thereunder for the balance of the original term should said Lease be disaffirmed by any Trustee in Bankruptcy for Tenant, or at the option of Landlord, Guarantors shall, in the event of Tenant's bankruptcy, make and enter into a new lease which shall be in form and substance identical to said Lease.

Guarantors hereby unconditionally consent and agree that any legal action brought under this Guaranty may be brought in any State Court of the State of Missouri or in a Federal United States Court in Missouri, and Guarantors hereby unconditionally consent to the jurisdiction of such courts in connection with any cause of action brought by or against Tenant and/or Guarantor(s) in any way directly or indirectly related to the aforementioned Lease or this Guaranty. Further, Guarantors hereby irrevocably and unconditionally appoint the Tenant named in the first paragraph of this Guaranty as its duly authorized agents for service of process in connection with any such cause of action. Nothing herein shall prevent Landlord from serving process in any other manner permitted by law.

This Guaranty shall be enforceable against each person signing this Guaranty, even if only one person signs and regardless of any failure of other persons to sign this Guaranty. If there is more than one signer, all agreements and promises herein shall be construed to be, and are hereby declared to be, joint and several as between husband and wife, and, in each and every particular and shall be fully binding upon and enforceable against either, any or all of Guarantors, subject to the limitation set forth below. The singular herein shall include the plural and the plural herein shall include the singular for purposes of interpretation. Further, the liability of each of Guarantors shall not be affected or impaired by any full or partial release of, settlement with, or agreement not to sue, Tenant or any other guarantor or other person liable in respect of said Lease which Landlord is expressly authorized to do, omit or suffer from time to time, without notice to or approval by any of Guarantors. In the event the Guarantors are a corporation, partnership, limited liability company, trust or other entity, Guarantors hereby state, covenant and agree that the execution and delivery of the Lease by Landlord accomplishes a sufficient and valid business purpose of Guarantors and is sufficient consideration for the execution and delivery of the Guaranty by Guarantors.

Guarantors hereby waive the applicability and the benefits of all suretyship defenses generally.

At any time that Tenant is required to furnish a certificate pursuant to the Lease, each of Guarantors, by guarantying the terms and conditions of the Lease, agree that such Guarantors, upon 20 days prior written request to Tenant, shall certify (by written instrument, duly executed, acknowledged and delivered to Landlord and to any third person designated by Landlord in such request) that such persons concur with the statements set forth in said certificate by Tenant and that the guarantee of such persons remain in full force and effect as to all obligations of Tenant under this Lease. Failure to deliver such certificate to Landlord (and any such designated third party) within such 20 day period shall constitute automatic approval of the requested certificate as though such certificate had been fully executed and delivered by such Guarantors to Landlord and such designated third party.

All obligations and liabilities to Guarantors pursuant to this Guaranty shall be binding upon the heirs, legal representatives, successors and assigns of Guarantors, and Guarantors, their heirs, legal representatives, successors and assigns shall remain fully liable under the Lease and this Guaranty regardless of any merger, corporate reorganization or restructuring involving Tenant, regardless of the resulting organization, structure or ownership of Tenant. The obligations of the Guarantor will terminate after the first 36 months of the rental period.

This Guaranty may be executed in counterparts, and all executed counterparts together shall constitute the whole.

This Guaranty shall be governed by and construed in accordance with the laws of the state of Missouri.

**IN WITNESS WHEREOF,** Guarantors have set their hands to be effective as of the ___10th___ day of
___October___, 2020.

**GUARANTOR(S):**

By: _____
Its: _____

EIN: ___85-1545376___

JENNIFER RANGEL
Notary Public - Notary Seal
STATE OF MISSOURI
Jackson County
My Commission Expires: Aug. 18, 2024
Commission # 20964506

## EXHIBIT F – TENANT'S EXCLUSIVE USES

**None.**

# EXHIBIT G – TENANT'S BUSINESS HOURS

_____