# LEASE AGREEMENT

1. PARTIES. This Lease Agreement "Lease" is entered into this ___ day of October, 2024 ("Effective Date"), by and between, 4128 Broadway, LLC, a Missouri limited liability company, or assigns, as landlord "Landlord", and EUPHORIC LLC d.b.a. Euphoric Bar & Lounge, a Missouri limited liability company, as tenant "Tenant", doing business as "Euphoric Bar and Lounge".

2. PREMISES. Landlord rents, demises and lets to Tenant, and Tenant takes and rents from Landlord, the premises commonly known as 4128 Broadway, Kansas City, Missouri 64111 "Premises", which consists of approximately 10,000 square feet of building basement, building first floor, building rooftop and surrounding grounds and consists of the following described lots, tracts or parcels of land together with improvements thereon, excepting the alley, lying, being and situate in Jackson County, Missouri to wit:

> Tract 1: All of Lot 10, except that part thereof now in Broadway, in CAMPBELL'S ADDITION TO WESTPORT, a subdivision now in Kansas City, Jackson County, according to the recorded plat thereof

> Tract 2: Lot 20, HUNTER'S HEIGHTS, and the West 50 feet of LOT B, together with the EAST ½ of the vacated alley lying West and adjoining said LOT B, SUBDIVISION OF LOT ONE OF BOGG'S ADDITION TO THE TOWN OF WESTPORT, a subdivision in Kansas City, Jackson County, according to the recorded plat thereof,

3. TERM. The term "Term" of this Lease is ten (10) years and such Term shall commence at 12:01 a.m. on the ___ day of October, 2024 "Commencement Date" and shall end at midnight on the 31st day of October, 2034.

4. POSSESSION AT BEGINNING OF TERM. Landlord shall use due diligence to give possession of the Premises to Tenant as nearly as possible on or before the Commencement Date of the Term. Rent shall abate pro rata for the period of any delay in giving Tenant possession, but the Term shall not be extended as a result of such delay. Tenant shall make no other claim against Landlord for delay in obtaining possession.

5. RENT OBLIGATION, MANNER AND PLACE OF PAYMENT. Tenant shall pay to Landlord Base Rent, Percentage Rent (as defined in Paragraphs 6. And 7.) and Additional Rent as described in Paragraph 9. (collectively "Rent") when due for Tenant's use and occupancy of the Premises on the 1st day of each month during the Term. Rent shall be prorated for any partial month. Rent shall be paid by Tenant's electronic deposit of funds to the bank or other financial institution account designated by Landlord or as Landlord otherwise directs. If Tenant fails to pay any item of Rent or any other charge payable under this Lease within five (5) days after the date it is due, Tenant shall pay a late charge equal to five percent (5%) of the amount due and interest at the rate of one and one-half percent (1.5%) per month on the amount not paid.

6. BASE RENT. A monthly and minimum base rent of $10,000.00 ("Base Rent"), increased three percent (3%) and adjusted annually as the first day of January beginning the calendar year of 2025, shall be payable by Tenant in advance on the first day of each and every calendar month during the

Term. To fund repairs, maintenance and improvements which Tenant is obligated perform and as a concession to Tenant, Landlord gives Tenant a rent credit against Base Rent of $10,000,00 per month for the months of October, November and December of 2024 as the Tenant Allowance more particularly defined in Paragraph 14.

7. PERCENTAGE RENT. Except for credits against rent for the first three (3) whole or partial months of the Term, for each and every month or portion of a month during the Term in which Tenant's Gross Sales, as defined in sub-paragraph 7.C., at, in, from or upon the Premises exceed $182,000.00, Tenant shall pay to Landlord on or before the first 1st day of the next succeeding month, in addition to the specified Base Rent for such month, "Percentage Rent" calculated and in accordance with the following terms and conditions:

    A. <u>Percentage Rent, Calculation & Credit</u>. Monthly Percentage Rent is equal to that sum of money determined by deducting $10,000.00 from a sum equal to five and one-half percent (5.5%) of Tenant's Gross Sales at, in, from or upon the Premises for the calendar month. The rent paid by Tenant to Landlord as Percentage Rent shall not reduce the Base Rent.

    B. <u>Statement of Gross Sales.</u> Not later than the 15th day of each calendar month, Tenant shall provide to Landlord a written statement of the Gross Sales in a format approved by Landlord, showing the receipts by food and beverage categories and other revenue sources, received by or accrued to the benefit of Tenant or any other person, firm or corporation operating in, on, about or from the Premises during the preceding calendar month. This compilation shall be signed and certified as complete and accurate by Tenant's accountant and delivered to Landlord with a copy of Tenant's state sales tax report for such month.

    C. <u>Definition of Gross Sales.</u> The term "Gross Sales" means the entire amount of revenue or income from any source, and shall include the actual sales price, whether for cash or otherwise, of all business conducted at, in, from or upon the Premises including revenues derived for sales of food, beverage, service, merchandise, cover/door charges; government grants and debt forgiveness and all other receipts whatsoever of or relating to or based upon all business and business operations conducted at, in, upon or from the Premises, including all gift certificates and sales by Tenant, sub-lessee, concessionaire or licensee or otherwise from the Premises. No deduction is allowed for uncollected or uncollectable credit amounts. Gross Sales does not include any sums collected and paid out for any sales, use or other excise tax imposed by any duly constituted governmental authority upon a sale.

    D. <u>Records and Financial Reporting.</u> For the purpose of determining whether Tenant is liable to Landlord for Percentage Rent, Tenant shall keep a permanent. Complete and accurate record of all Gross Sales as defined in sub-paragraph 7.C. generated on each day of the Term. The supporting documentation, including: (i) state sales tax returns; (ii) local, state and federal income tax returns; and, (iii) income statements; and, (iv) balance sheets will be open to the inspection and audit by Landlord and its agents at reasonable times during ordinary business hours. Upon forty-eight (48) hours' advance written notice from Landlord, Tenant shall make available to Landlord all information pertaining to sales and other sources of revenue, cooperate and respond to inquiries by Landlord concerning sales and the financial condition of Tenant. Tenant shall keep, retain and preserve for at

Initials: _[signature]_ _[signature]_ ____

-2-

least six (6) years after the expiration of each calendar year, Tenant's standard sales records and other pertinent records concerning sales and other revenue.

      E. Audit. Landlord may, upon forty-eight (48) hours' advance written notice to Tenant, audit Tenant's records to verify the gross sales covered by any a written statement of monthly gross sales or to determine the general financial condition of Tenant. If the audit discloses a deficiency and liability for Percentage Rent of greater than five percent (5.0%) of the Percentage Rent paid by Tenant for any month of the period audited, Tenant shall promptly pay to Landlord the cost of said audit in addition to the deficiency. Financial information received from Tenant by Landlord is confidential, however, such financial information may be used and disclosed by Landlord in prosecution or defense of a controversy between Landlord and Tenant.

8. SECURITY DEPOSIT. Upon the delivery by Landlord to Tenant of possession of the Premises or the Commencement Date of the Lease, whichever is earlier, Tenant shall deliver to Landlord the sum of $10,000.00 as security for the performance by Tenant of every covenant and condition of this Lease. This deposit may be co-mingled with other funds of Landlord and shall bear no interest. If Tenant defaults, including but not limited to, the payment of Rent, Landlord may apply the whole or any part of such security deposit to the payment of any sum in default or any sum which Landlord determines, in its sole discretion, may be required to spend by reason of Tenant's default. In such even and upon written demand by Landlord, Tenant shall remit funds to Landlord to restore the security deposit to $10,000.00. Should Tenant comply with all of the covenants and conditions of this Lease, the security deposit or any balance thereof shall be returned to Tenant at the expiration of the Term.

9. ADDITIONAL RENT - REAL ESTATE TAXES AND ASSESSMENTS AGAINST PREMISES. Tenant shall pay monthly, concurrently with the payment of the Base Rent, as additional rent ("Additional Rent"), one-twelfth of the annual real estate taxes, assessments (including the Westport CID), water rates and water charges, and other governmental levies and charges, general and special, ordinary and extraordinary, unforeseen as well as foreseen, of any kind (all hereinafter referred to collectively as "Taxes/Assessments") which are assessed or imposed upon the land and structures comprising the Premises. All Taxes/Assessments accruing prior to but payable in whole or in installments after the Effective Date, and all taxes assessed during the Term but payable in whole or in installments after the Term shall be adjusted and pro-rated. Landlord shall pay Landlord's pro-rated share for the period prior to and for the period subsequent to the Term and Tenant shall pay its pro-rated share for the Term. The monthly payment for Taxes/Assessments shall be adjusted to compensate for any increase or decrease in Real Estate Taxes for which Tenant is liable to pay.

9. NEIGHBORHOOD ASSOCIATIONS AND WESTPORT COMMUNITY IMPROVEMENT DISTRICT. Tenant shall faithfully observe and comply with all of the rules, regulations and requirements of any neighborhood associations and the Westport Community Improvement District. Tenant shall timely pay all dues or assessments due from Landlord, as owner, and Tenant, as lessee of the Premises.

10. LANDLORD'S OPTION TO MAKE ADVANCES FOR TENANT. If Tenant fails or refuses: to pay any taxes, assessments or liens; to pay monies as may be due by the Lease (other than the payment of Rent); to promptly perform, commence or complete repairs, maintenance or

Initials: \_\_\_\_\_ \_\_\_\_\_ \_\_\_\_\_

-3-

replacements that Landlord deems necessary in its reasonable discretion; or, to perform any act required by this Lease to be made or performed by Tenant, Landlord, without waiving or releasing Tenant from any obligation or default under this Lease, may (but will be under no obligation to) at any time thereafter make such payment or perform such act for the account of and at the expense of Tenant but only if such failure/refusal remains uncured by Tenant ten (10) days after Tenant's receipt of written notice from Landlord identifying such failure/refusal. All sums so paid by Landlord are additional rent payable by Tenant under the Lease and shall be paid by Tenant to Landlord on written demand.

11. USE, OPERATION AND FINANCIAL REPORTING OF BUSINESS CONDUCTED ON PREMISES. Tenant shall use and occupy the Premises subject to the following terms and conditions:

    A. Sole Use As Restaurant And Bar. Tenant shall operate a restaurant and bar on the Premises and shall use the Premises for no other purpose. At no time shall food sales be less than **$200,000.00 per annum** as required to maintain a liquor license or make up less than ten percent (10%) of total gross sales. Tenant represents to Landlord that the Premises shall be improved to meet the standards of a standard Brewtop Pub & Patio restaurant.

    B. Covenant To Operate. Tenant shall open and carry on its restaurant and bar business seven days a week excepting holidays, without interruption during normal business hours that are consistent with restaurant and bar establishments operated in the Westport Community Improvement District.

    C. Compliance With Governmental Regulation. Tenant shall, at Tenant's sole cost and expense, faithfully observe and comply with all of the rules, regulations, laws and requirements of all municipal, county, state, federal and other applicable governmental authorities now in force, or which may hereafter be in force, pertaining to Tenant's use and occupancy of the Premises.

    D. Financial Reporting. In addition to financial reporting required by Paragraph 6.D., Tenant shall promptly deliver to Landlord, upon Landlord's reasonable written request, Tenant's current financial statement, which shall include a balance sheet, a profit and loss statement and a cash flow summary of Tenant's business; provided, however, Tenant shall not be obligated to provide such information more than twice in any lease year.

    E. Advertising: Tenant agrees to spend not less than one percent (1%) of the annual gross sales of its business on advertising and promotion of the business operated upon the Premises.

    F. Signs, Advertisements And Change Of Name. Tenant may place the maximum amount of signage on the exterior of the Premises that is allowed by the City of Kansas City, Missouri, the Westport Community Improvement District or other regulatory authorities. The suitability of all actual signage is subject to Landlord's approval which may not be unreasonably withheld. If Tenant intends to advertise, publicly display or do business under any name other than as set forth above in Paragraph 1, then Tenant shall first submit in writing to Landlord and obtain Landlord's approval, which approval may not be unreasonably withheld, for such proposed advertised and publicly displayed name under which Tenant desires to do business.

Initials: _[signature]_ _[signature]_ _____

-4-

G. Prohibited Uses. Tenant shall not warehouse, store and/or stock inventory in the Premises except in quantities as are reasonably necessary. Tenant shall not use the Premises for office, clerical and/or other non-restaurant-related purposes except areas in the non-kitchen portion of the basement area as is reasonably necessary to administratively operate its business. Tenant shall not use or allow the Premises to be used in a manner that interferes with or disturbs (whether by noise, vibration, waste disposal or otherwise) the neighboring commercial establishments in the Westport entertainment district. Specifically, Tenant shall not permit noise levels of amplified music upon any outside deck and patio areas except as permitted by ordinance of the City of Kansas City, Missouri and/or as regulated by neighborhood associations including the Westport Community Improvement District. Tenant shall comply with such other reasonable limitations and directions of Landlord concerning the occupancy and use of outside deck and patio areas as Landlord deems appropriate to prevent noise levels from interfering or disturbing neighboring commercial establishments and the surrounding neighborhood in general. Tenant shall not permit unlawful acts to occur on the Premises which does not mean that Tenant may be responsible for the unlawful acts of third parties that occur on the Premises.

12. INSURANCE BY TENANT.

A. Tenant shall, during the entire Term of this Lease, keep in full force and effect a policy or policies of commercial general liability and property and casualty damage insurance covering the Premises against loss, including personal injury, bodily injury, broad form property damage, operations hazard indemnifying Landlord against and from loss to the full replacement cost of the improvements to the Premises in the event of a casualty loss and next to the full replacement cost of the trade fixtures, equipment and other personal property of Tenant and including such other coverage, terms and conditions as Landlord may require, owner's protective coverage, contractual liability, with a cross liability clause and a severability of interests clause to cover Tenant's indemnities set forth herein, and products and completed operations liability, with respect to the Premises and the business operated by Tenant and permitted subtenants of Tenant in the Premises in which the limits of coverage shall not be less than $3,000,000 per occurrence/$5,000,000 in the aggregate for bodily injuries and/or property damage. The policy shall name Landlord, and Landlord's agents and mortgagees upon Landlord's request, as additional insureds. The policy shall insure Tenant's performance of the indemnity provisions of Paragraph 19.

B. Tenant shall require any contractor of Tenant performing work on or at the Premises to carry and maintain, at no expense to Landlord, a non-deductible: (i) commercial (comprehensive) liability insurance policy, including (but not limited to) contractor's liability coverage, contractual liability coverage, completed operations coverage, broad form property damage endorsement and contractors protective liability coverage, to afford protection, with respect to personal injury, death or property damage of not less than Three Million Dollars ($3,000,000) per occurrence combined single limit/Five Million Dollars ($5,000,000) general aggregate (but not less than $3,000,000 per location aggregate); (ii) comprehensive automobile liability insurance policy with limits for each occurrence of not less than One Million Dollars ($1,000,000) with respect to personal injury or death and Five Hundred Thousand Dollars ($500,000) with respect to property damage; and (iii) worker's compensation insurance policy or similar insurance in form and amounts required by law.

Initials: _____ _____ _____

-5-

Case 4:25-cv-00023-RK    Document 16-1    Filed 02/07/25    Page 5 of 15

13. IMPROVEMENTS & REPAIRS BY TENANT.

   A. <u>Improvements and Repairs by Tenant</u>. Except for the Tenant Allowance provided by Paragraph 14, Tenant shall, at Tenant's sole expense, maintain and make improvements to the Premises, including specifically any necessary repairs to the existing roof, gutter, HVAC, electrical and plumbing systems in compliance with applicable building codes to restore such systems to acceptable building standards and to otherwise lawfully operate a restaurant and bar within the building upon the Premises with a finish that is consistent with other similar establishments in Westport Community Improvement District.

   B. <u>Construction of Improvements and Repairs at Tenant's Expense</u>. Except for the Tenant Allowance provided by Paragraph 14, Tenant shall be solely responsible and liable for the costs of any renovations or alterations and installing, and/or repairing and/or removing and/or replacing all fixtures, appliances, equipment, and other items which are ordinarily required by practice or by law, or otherwise necessary or desirable to place the Premises in a condition suitable for the operation of Tenant's business. Tenant may install at the time of the initial readying of the Premises and/or any subsequent alteration or changes during the Term, at Tenant's expense, such fixtures, partitions, signs, awnings or projections as Tenant may determine to be reasonable and necessary for the operation of its business. Before commencing such work, Tenant shall submit to Landlord complete plans and specifications prepared and certified by licensed professionals of the proposed renovations, alterations and improvements to the Premises. Within ten (10) days after receipt, Landlord may approve or disapprove, in whole or in part, such plans and specifications; provided, however, such plans and specifications shall be deemed approved by Landlord if Landlord does not approve or disapprove of such plans and specifications within ten (10) days of its receipt of such plans and specifications. No approval by Landlord shall be effective unless in writing. To the extent improvements undertaken by Tenant cost above $100,000.00, any approval by Landlord of such improvements may be conditioned upon Tenant furnishing Landlord with a bond or financial equivalent acceptable to Landlord covering the cost of the work to be done and indemnifying Landlord from any liability. Any such bond or financial equivalent will be in a form and amount and by a surety reasonably satisfactory to Landlord. Landlord may condition approval upon Tenant providing the opinion of either or both a structural engineer and architect of the design of any alteration or improvement that affects the structural integrity of the building. Tenant's failure to submit plans and specifications that are satisfactory to Landlord shall not postpone the Commencement Date or date for increase in Base Rent and due date of any other payment obligation under the Lease. All installations and work undertaken by Tenant shall fully abide by and be completed in conformance with all applicable laws and ordinances and the terms of this Lease.

   C. <u>No Contractor Right to Liens.</u> Tenant shall not give cause for the filing of any lien, including a mechanic's lien, against the Premises. Landlord does not consent, and the terms of this Lease shall not be construed as authorization by Landlord to the creation of any lien, directly or indirectly, derived through or under Tenant, or through or under any act or omission of Tenant, upon the Premises, or any improvement now or hereafter situated on the Premises by Tenant. In the event a lien is filed against the Premises, Tenant shall cause such lien to be released within thirty (30) days after receiving written notice of the filing of such lien from Landlord, or, within thirty (30) days after

Initials: _____ _____ _____

Tenant's receipt of written notice from Landlord, Tenant shall certify to Landlord that Tenant has a valid defense to such claim and lien accompanied by a bond or financial equivalent, with sureties acceptable to Landlord, indemnifying Landlord from the lien. If Tenant fails to obtain its release or to furnish a bond or financial equivalent acceptable to Landlord indemnifying Landlord from the lien, Landlord may pay and discharge the lien without investigation of its validity and Tenant shall reimburse Landlord, as additional rent due on the next rent due date, the expense paid or incurred by Landlord in the discharge of the lien. Landlord's election to discharge a lien is not a waiver or cure of Tenant's default with respect to the lien.

    D. <u>Ownership and Security Interests in Improvements and Trade Fixtures</u>. All buildings, repairs, alterations, additions, improvements, installations, equipment and fixtures, by whomsoever made (excepting such business trade fixtures that are not affixed to the Premises) will belong to Landlord and remain on and be surrendered with the Premises in the event of a Tenant default or at the expiration of the Term or any renewal term. In no event will Tenant remove: (i) light fixtures, fans, wiring, conduit, controls and other components of the electrical systems; (ii) plumbing fixtures, water lines, pipes, drains, ventilation pipes, and other components of the plumbing systems; and, (iii) heating and cooling equipment, ducts, ventilation pipes and other components of the HVAC system that will remain as part of the Premises and are the property of Landlord.

14. TENANT ALLOWANCE. To fund cleaning, repairs, maintenance, removal of fixtures, signage and personal property from and to make improvements, including replacements of systems upon the Premises which Tenant is obligated perform by the terms of this Lease and as a concession to Tenant, Landlord shall credit Tenant for the Base Rent of $10,000,00 per month due per the Lease for the months of October, November and December of 2024 for a total of $_____000.00 plus any Rent that may accrue should Tenant be delivered possession of the Premises by the Landlord prior to the Commencement Date of this Lease

15. ACCEPTANCE OF CONDITION OF PREMISES, FIXTURES AND EQUIPMENT BY TENANT. Tenant accepts in "AS IS" condition and "WITH ALL FAULTS" the Premises and all fixtures, furniture and equipment, including audio visual systems, bars and bar equipment, and other personal property that is situated or located within the Premises together with any such furniture, fixtures and equipment remaining on the Premises that has been abandoned by former tenant Westport Ale House, LLC which remain on the Premises when possession is delivered to Tenant by Landlord. Tenant shall have the exclusive right to the use and quiet enjoyment of the Premises and property during the Term. Except as otherwise provided by the terms of this Lease, Tenant acknowledges and agrees that Landlord has no obligation to maintain or to make any repairs or replacements to the exterior or interior of the Premises prior to the commencement or during the continuation of the Term.

16. UTILITIES. Landlord shall provide, and Tenant accepts in their "AS IS" and "WITH ALL FAULTS" and existing condition all means of distribution (exterior and interior) of utility services to the Premises. Tenant shall maintain, repair, replace and improve for Tenant's intended use the necessary means of distribution in order to bring water, gas, electricity, steam, trash removal/recycle services and telephone service to the Premises. Tenant shall pay all charges for steam, gas, electricity, water, light, heat, and other public utility services used in or about or supplied to the Premises.

Initials: _____ _____ _____

-7-

Case 4:25-cv-00023-RK  Document 16-1  Filed 02/07/25  Page 7 of 15

17. MAINTENANCE, REPAIR AND REPLACEMENT BY TENANT. Tenant shall, at Tenant's expense, take good care of, maintain in good working order, promptly repair or replace and continuously keep clean and free from pest infestation or obstructions (including ice and snow) or other unsafe conditions the grounds, building (including interior and exterior glass, walls, guttering/downspouts), equipment and systems (including interior and exterior HVAC), plumbing, plumbing pipeline and electrical systems) and fixtures upon the Premises and in conformity with applicable governmental rules and regulations, building and property maintenance codes, municipal ordinances and other laws (including specifically environmental law). And regardless of if, caused, in whole or in part, by Tenant, its employees, servants, agents or invitees, vandals or other persons. At Tenant's expense and at intervals as may be reasonably necessary and not less than twice annually, Tenant shall engage a reputable service company to inspect, clean, service and/or replace the furnace equipment, air conditioning equipment and other components of the Premise's HVAC system. Tenant shall, at its sole cost and expense, engage a reputable pest control company to implement on a routine basis, and not less often than weekly, a pest and rodent infestation prevention, control and extermination program of the Premises, which program shall begin on or before the Commencement Date. Except as provided in Paragraph 14.Tenant Allowance, Landlord shall have no obligation to clean, remove or perform any maintenance, repair or replacement of the Premises or any part including but not limited to any HVAC, plumbing and electrical systems or any furniture, equipment, and other personal property either abandoned by the former tenant Westport Ale House, LLC or otherwise remaining on the Premises or other disrepair or damage to Premises existing on the date possession of the Premises is delivered to Tenant by Landlord.

18. ENVIRONMENTAL LAWS. Tenant shall comply with all environmental laws and regulations applicable to the operation of the business conducted and other use of the Premises. Tenant shall not cause or permit other persons to generate, use, treat, transport to or from, store, handle, release or dispose of on or about the Premises any hazardous materials or other substances except as permitted by applicable laws, rules, codes, orders or regulations of any federal, state or local governmental authority and only in quantities used or stored as is necessary in routine operation and ordinary course of business. Tenant shall immediately notify Landlord in writing of any of the following: (A) any claim asserted against Tenant by a governmental authority concerning hazardous materials or other substances that relate to the Premises; (B) any legally not permitted condition or occurrence involving hazardous materials or other substances that occurs on the Premises; (C) the actual or anticipated taking of any remedial action taken in response to the actual or alleged presence of any hazardous materials or other substances on the Premises. Such notice shall describe in reasonable detail the nature of the claim, investigation, condition, occurrence or remedial action including the response by Tenant and will include copies of all complaints, reports and other communications between Tenant and any governmental authority or third persons regarding the matter.

19. TENANT TO INDEMNIFY AND DEFEND LANDLORD.

    A. <u>Indemnification of Landlord</u>. Tenant will indemnify and hold harmless the Landlord and Landlord's employees, servants, agents and representatives: from and against any claim, action or proceeding (including but not limited to a mechanic or other lien claim, slip and fall/other tort claim and regulatory action) and regardless if an action or proceeding is instituted, that is asserted

Initials: _____ _____ _____

-8-

by any person or entity (including governmental authorities) for personal injury or death, injury to property (tangible and intangible), injury to business or regulatory violation; and, from and against any loss or liability for damages (including but not limited to actual, direct or indirect and consequential damages [whether economic or non-economic], regulatory fines/penalties and punitive damages) arising out of or from, in whole or in part and regardless of fault unless the sole fault of Landlord, the: (A) occupancy of the Premises by Tenant; (B) acts or conduct (including misfeasance or nonfeasance) of Tenant, its employees, servants, contractors, licensees, agents or invitees that relates to or concerns the use or possession of the Premises and/or any work or thing done in or about the Premises; and/or (C) breach or default by Tenant in performing any covenant or obligation of Tenant under this Lease.

B. <u>Defense of Landlord</u>. Tenant shall defend, at Tenant's expense, Landlord and indemnify and hold Landlord harmless against and from Landlord's cost of defense, including bond premiums, court costs and other expenses of litigation incurred by Landlord as a result of any such claim, action or proceeding and damages for which Tenant agrees to indemnify and hold Landlord harmless, and regardless if an action or proceeding is first filed or the claim, action or proceeding is frivolous or without merit.

20. LIMITATION OF LIABILITY OF LANDLORD. Unless caused by the gross negligence or willful misconduct of Landlord, Landlord's employees, servants, agents and/or representatives, Landlord and Landlord's employees, servants, agents and representatives shall not be liable to Tenant or its invitees relating to any claim, comparative fault or contribution for:

A. interruption or failure of water supply or electric current or service by any utility or for injury to person (including death) or damage to property resulting from steam, gas, electricity, water, rain or snow which may flow or leak from any part of the Premises, or from any pipes, appliances or plumbing works from the street or sub-surface, or from any other place;

B. interruption of business or for injury to person (including death) or damage to property resulting from the "As Is" condition of the Premises or any maintenance, repair or replacement performed by Landlord on any part of the Premises; and,

C. damage to personal property, including motor vehicles, which Tenant acknowledges and agrees is placed on the Premises at Tenant's risk or at the risk of the person owning such property. In no event will Landlord be liable to Tenant or its invitee for indirect, consequential or punitive damages. The foregoing limitations of liability shall not apply to the extent a claim or item of damage is covered by the insurance required by this Lease.

21. CASUALTY.

A. <u>Total Or Partial Destruction Of Premises.</u> If the Premises is partially or totally destroyed by fire or other casualty insurable under full standard fire and extended risk insurance, so as to become partially or totally untenantable, unless Landlord shall elect not to repair or rebuild as provided in Paragraph 21.B, the proceeds of such insurance shall be payable to Landlord and the Premises will be repaired and rebuilt at the cost of Landlord.

Initials: _____ _____ _____

-9-

Case 4:25-cv-00023-RK    Document 16-1    Filed 02/07/25    Page 9 of 15

B. <u>Landlord's Election Not to Repair or Rebuild</u>. If more than 1/2 of the building on the Premises is destroyed or damaged by fire or other casualty, or if the unexpired portion of the term of this Lease shall be one (1) year or less at the date of such casualty, then Landlord may elect not to repair or rebuild by giving written notice within sixty (60) days after such occurrence of Landlord's election to terminate this Lease. If terminated by Landlord, then the Lease shall cease as of the date of such damage or destruction and all Rent or other charges payable by Tenant shall be prorated to the date of such damage or destruction and, to the extent adequate insurance proceeds are received by Landlord, Landlord shall transfer to Tenant an amount equal to the cost of business loss suffered by Tenant, including lost sales and payroll.

22. EMINENT DOMAIN. If the whole of the Premises shall be taken by any public authority under the power of eminent domain, then the Term of this Lease shall cease as of the day possession is taken by such public authority and Rent shall be paid up to that date and Landlord shall refund any Rent paid by Tenant in advance.

23. ASSIGNMENT, SUBLETTING, PLEDGE AND ENCUMBRANCE OF LEASE.

A. <u>No Transfer by Tenant Without Landlord's Consent</u>. Tenant may not assign, pledge as collateral nor may Tenant in any manner transfer any estate or interest in this Lease without the prior written consent of Landlord, which in Landlord's sole discretion, may be withheld by Landlord. Tenant may not sublet the Premises or any part or parts of the Premises thereof or allow any concessionaire to anyone to come in, through or under this Lease without Landlord's written consent. If Tenant is a corporation, partnership, limited partnership or limited liability company or other type of joint venture, then any transfer of this Lease from Tenant by merger, consolidation or liquidation or ownership of, or power to vote, the majority of its outstanding voting stock or interest, shall constitute an assignment for the purpose of this Paragraph 23.A that requires Landlord's written consent.

B. <u>Landlord's Right to Transfer</u>. Landlord may assign this Lease. And if Landlord sells or otherwise conveys Landlord's interest in the Premises, then Landlord is released from all obligations, liabilities and duties of Landlord arising under or related to this Lease. And unless asserted within 90 day of the transfer, Tenant waives and releases Landlord from all claims against Landlord for any obligations, liabilities and duties of Landlord arising under or related to this Lease. Tenant will look solely to the new owner of such interest in the Premises for performance of the obligations and duties of the Landlord under this Lease.

24. SURRENDER, RETURN OF PREMISES AND HOLDING OVER

A. <u>Surrender</u>. The voluntary or other surrender of this lease by Tenant or a mutual cancellation thereof, shall not work a merger, and shall, at the option of Landlord, terminate all or any existing subleases or subtenancies, or may, at the option of Landlord, operate as an assignment to Landlord of any or all such subleases or subtenancies.

Initials: _____

-10-

B. <u>Return of Premises</u>. Upon the termination or earlier expiration of this Lease, Tenant shall peaceably deliver to Landlord possession of the Premises in good order and condition and unencumbered by Tenant. If requested by Landlord in writing, Tenant shall, at Landlord's sole cost and expense, promptly remove from the Premises any alteration or improvement made by Tenant, and Tenant shall, at Landlord's sole cost and expense, promptly repair, to the reasonable satisfaction of Landlord, all damage caused by original installation of such improvement and/or its subsequent removal to restore the Premises to its condition as it existed at the commencement of the Term. Notwithstanding anything to the contrary herein, in no event shall Tenant be responsible for removing equipment located in the basement of the Premises prior to the Commencement Date of this Lease unless there is an adequate means of egress to remove such equipment.

C. <u>Holding Over.</u> If Tenant occupies the Premises after the expiration of the Term with the consent of Landlord, such holding over will, in the absence of written agreement otherwise, create a tenancy from month to month upon the terms and provisions of this Lease terminable on thirty (30) days written notice by either party. Tenant agrees that Tenant shall be responsible, as rent, for any wrongful holding over after the expiration of the Term, without the consent of Landlord, in a sum equal to twice the rents of the final escalation of Base Rent herein specified (prorated on a monthly basis) plus the Percentage Rent averaged over the twelve (12) month period preceding the holding over and additional rent. Tenant shall otherwise be accountable in damages for any other breach of the terms and conditions herein specified, as far as applicable during the period of such holding over.

25. DEFAULT. Tenant shall be in default under this Lease if: (A) Tenant fails to pay any item of Rent when due; (B) Tenant fails to comply with any warranty, covenant, agreement, stipulation, term, condition, or provision of this Lease; (C) Tenant abandons or vacates the Premises; (D) a petition is filed by or against Tenant under any section or chapter of the Federal Bankruptcy Act, as amended, or under any similar law or statute of the United States or any state thereof; (E) Tenant becomes insolvent or makes a transfer in fraud of creditors; (F) Tenant makes an assignment for benefit of creditors; or, (G) a receiver is appointed for Tenant or any of the assets of Tenant. In the event of a default, Landlord may terminate the Lease and/or sue for damages as provided by law if Tenant does not initiate and pursue with diligence the curing of such default within thirty (30) days after Tenant's receipt of written notice from Landlord describing the particular default.

26. MISCELLANEOUS TERMS.

A. <u>Zoning and Licensing</u>. Tenant acknowledges that Tenant has investigated the zoning of the Premises to its satisfaction and, except as otherwise set forth herein to the contrary, that Tenant relies on no representations of Landlord as to the permitted use and purposes that can be conducted upon the Premises. Tenant has investigated and, except as otherwise set forth herein to the contrary, determined to its satisfaction its eligibility and likelihood for its licensing by state and local authorities for sale of liquor by the drink. In the event of the termination of this Lease, Tenant will not relocate its licenses to any premises within a 5 mile radius or the Premises. And Tenant will consent to and cooperate in the application and issuance of licensing for sale of liquor by the drink by any successor tenant of the Premises.

Initials: \_\_\_\_ \_\_\_\_ \_\_\_\_

-11-

Case 4:25-cv-00023-RK    Document 16-1    Filed 02/07/25    Page 11 of 15

B. <u>Personal Property Taxes</u>. Tenant shall pay, before delinquency, all property taxes on the furniture, fixtures, equipment and other property of Tenant at any time situated or installed on the Premises, and on additions or improvements to the Premises made by Tenant. If assessed as part of the real estate upon which the Premises are situated, Tenant shall pay to Landlord upon written demand from Landlord the amount of such additional real estate taxes that are levied.

C. <u>Quiet Enjoyment by Tenant.</u> So long as Tenant is not in default, Tenant shall be entitled to the peaceful, quiet enjoyment of the possession of the Premises during the Term and any extension or renewal of this Lease.

D. <u>Bankruptcy of Tenant</u>. This Lease, nor any interest nor any estate created shall not pass to any trustee or receiver in bankruptcy, or to any other receiver or assignee for the benefit of creditors or otherwise by operation of law.

E. <u>Estoppel Certificate or Offset Statements</u>. Within ten (10) days of Landlord's request, Tenant shall execute, acknowledge, and deliver to Landlord a statement in writing certifying the date of commencement of the Term of this Lease, that the Lease is unmodified and in full force and effect (or if there have been modifications that the same is in full force and effect as modified and stating the date of the modifications) and further stating the dates to which the Base Rent, Percentage Rent, additional rent and other charges have been paid, and setting forth such other matters as may reasonably be requested by Landlord.

F. <u>Landlord's Right of Access to Premises.</u> Upon forty-eight (48) hours' advance written notice to Tenant, Landlord may enter upon the Premises at all reasonable hours for any purpose. Within the 180 day period prior to the expiration of the Term or any renewal term, Landlord and Landlord's agents and designees, including realtors offering the Premises for sale or lease, shall have the right (i) to post signage advertising the Premises; <u>provided</u>, <u>however</u>, the placement of such signage shall be subject to Tenant's approval, which may not be unreasonably withheld, and, (ii) upon forty-eight (48) hours' advance notice to Tenant, to enter upon the Premises at all reasonable times and occasions to show the Premises to potential purchasers/lessees.

G. <u>Broker's Commission</u>. Landlord and Tenant each warrant and represent to the other that neither has dealt with any person or broker in connection with this Lease except Tenant acknowledges that Tenant has, at Tenant's sole expense, retained Zimmer Real Estate Services, L.C. dba Newmark Zimmer as its real estate broker and agent. Each party hereby indemnifies and agrees to hold the other harmless against and from the claims and demands of brokers and others claiming a commission, fee or similar payment and claiming by, through or under the indemnifying parties.

H. <u>Notices, Consents And Approvals</u>. All notices and other communications given or made pursuant to this Lease shall be in writing and shall be deemed effectively given: (a) upon personal delivery to the party to be notified, (b) three (3) days after having been sent by certified mail, return receipt requested, postage prepaid, or (c) one (1) day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt, sent to the party at the address specified below, or to such other address as a party may designate by written notice. A party's refusal to accept delivery of a notice shall constitute receipt thereof.

Initials: ___ ___ ___

-12-

If to Landlord, to:

> 4128 Broadway, LLC
> 3654 Old Blackhawk Road
> Danville, California 94506
>
> With a copy to the attorney for Landlord
> (which shall not constitute notice hereunder):
>
> Don Peterson Law, LLC
> Attn: Don A. Peterson/Grant A. Peterson
> 10955 Lowell Avenue, Suite 710
> Overland Park, Kansas 66210

If to Tenant, to:

> EUPHORIC, LLC
> Attn: Christopher Lee
> 522 Locust Lane
> Kansas City, MO 64106

I. <u>General Intent</u>. The submission of the Lease for Tenant's review and examination does not constitute a reservation of or option for the rental of the Premises. It is the intention of the parties that this Lease is an absolute net lease, and that Landlord shall have no obligation to provide any services, perform any act, or pay any expense, charge or cost of any kind whatsoever that concerns the Premises, unless otherwise set forth herein. Tenant shall perform all services and obligation imposed by the Lease, comply with all governmental regulations and requirements relating to the Premises and pay any expense, charge or cost of any kind whatsoever that concerns the Premises to the extent provided under this Lease. This Lease becomes effective as a lease only upon its execution by Tenant and Landlord.

J. <u>Governing Law</u>. This Lease shall be governed by, and construed, interpreted and enforced in accordance with, the laws of the State of Missouri without giving effect to any choice-of-law or conflict-of-law provision or rule (whether of the State of Missouri or of any other jurisdiction) that would result in the application of the laws of any jurisdiction except those of the State of Missouri to the provisions hereof.

K. <u>Attorneys' Fees</u>. Notwithstanding anything herein to the contrary, in the event a party hereto institutes a proceeding against any other party hereto for a claim arising out of or to enforce this Lease, the non-prevailing party shall pay the reasonable attorneys' fees incurred by the prevailing party in connection with such proceeding.

L. <u>Authority</u>. Each person executing this Lease, by his execution thereof, represents and

Initials: _____ _____ _____

-13-

warrants that he is fully authorized to do so, and that no further action or consent on the part of the party or entity for which he is acting is required for this Lease to be fully enforceable against such party following such execution.

    M. No Partnership. This Lease is not intended to create a partnership or joint venture between Landlord and Tenant, or to create a principal and agent relationship between them.

    N. Complete and Binding, Ambiguity, Severability, Waiver, Survival & Modification. This Lease constitutes the complete, integrated and entire agreement between Landlord and Tenant notwithstanding any conflicting or additional prior or contemporaneous written or verbal representations, understandings or agreements, if any, made between Landlord and Tenant. Subject to its terms, the Lease will include and inure to and bind the heirs, executors, administrators, successors and assigns of Landlord and Tenant. The heading of each paragraph or subparagraph of this Lease are descriptive and for convenience only and are not a part of this Lease and do not in any way limit or amplify the terms and provisions of this Lease. This Lease is the joint work product of Landlord and Tenant and in the event of any ambiguity, no inference shall be drawn against a party by reason of document preparation. If any provision of this Lease is determined invalid, the remaining provisions of this Lease will remain effective. The consent or approval by Landlord to or of any act by Tenant requiring Landlord's consent or approval will not waive or render unnecessary Landlord's consent or approval to or of any subsequent similar act by Tenant. Any failure by either party to enforce the other party's strict performance of any provision of this Lease will not constitute a waiver of its right to subsequently enforce such provision or any other provision of this Lease. The party having the right to exercise discretion under the Lease must exercise such discretion reasonably, unless otherwise set forth herein. The provisions of the Lease that by their nature are intended to survive termination of the Lease shall survive its termination. To be effective, any change or amendment to this Lease must be in writing and signed by Landlord and Tenant.

    O. Counterparts. This Lease may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement. Executed counterparts of this Lease delivered by facsimile or email in portable document format (PDF) or utilizing an electronic signing service such as DocuSign or Adobe Sign, shall be deemed an original counterpart.

    **P. WAIVER OF JURY TRIAL. THE PARTIES WAIVE A TRIAL BY JURY OF ANY AND ALL ISSUES ARISING IN ANY ACTION OR PROCEEDING BETWEEN THEM OR THEIR SUCCESSORS RELATING TO THIS LEASE, ANY NEGOTIATIONS CONNECTED WITH THIS LEASE, OR TENANT'S USE OR OCCUPATION OF THE PREMISES.**

REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK

Initials: \_\_\_\_ \_\_\_\_ \_\_\_\_

-14-

IN WITNESS WHEREOF, this Lease, has been executed the day and year last below written.

**LANDLORD**: 4128 Broadway, LLC

By: _____     Date: October ___, 2024.
Print Name of signer: Harold S. Brody
Title: Manager

**TENANT**: EUPHORIC, LLC
d.b.a. Euphoric Bar & Lounge

By: _____     Date: October ___, 2024.
Print Name of signer: Christopher Lee
Title: Managing Member

Initials: _____ _____ _____

-15-