IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| EUPHORIC, LLC, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 4:25-cv-00023-RK |
| | ) |
| WESTPORT COMMUNITY | ) |
| IMPROVEMENT DISTRICT, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court is Plaintiff Euphoric, LLC's motion for temporary restraining order and preliminary injunction against Defendants Harold Brody and 4128 Broadway, LLC. (Doc. 103.) This motion is fully briefed, (Docs. 103, 149, 159), and the Court held a preliminary injunction and evidentiary hearing on October 6, 2025, (Doc. 215). After careful consideration and for the reasons explained below, Euphoric's motion for temporary restraining order and preliminary injunction is **DENIED**.

### Background

This case arises from an alleged conspiracy to commit racial discrimination by the Westport Community Improvement District and various individuals and businesses operating in Westport by excluding African American business owners from opening and operating new businesses in the Westport community. However, as conceded by Euphoric's counsel during the preliminary injunction hearing, the instant motion is more narrowly concerned with Euphoric's breach-of-contract claim against Defendants Harold Brody and 4128 Broadway, LLC ("Defendants"). Euphoric alleges that Defendants violated a lease entered into by the parties pursuant to which Euphoric would lease the premises at 4128 Broadway for ten years for the purpose of operating Euphoric Bar and Lounge. Euphoric alleges that it tendered performance of its obligations under the lease and that Defendants breached the lease agreement by failing to deliver possession of the premises to Euphoric.[1]

---

[1] The Court recently granted Plaintiffs leave to file a second amended complaint. In some situations, "[c]ourts have concluded that where an amended complaint has been filed, an existing motion for preliminary injunction should be dismissed without prejudice." *Woods v. City of St. Louis*, No. 4:23-

The purported lease agreement states that the parties to the lease are 4128 Broadway, LLC, and Euphoric, LLC,[2] for the lease of the premises at 4128 Broadway. (Doc. 103-1 at 1, ¶¶ 1-2.) The following provisions of the lease agreement are most relevant to resolving Euphoric's motion for preliminary injunction:

- "The term 'Term' of this Lease is ten (10) years and such Term shall commence at 12:01 a.m. on the ___ day of October, 2024 'Commencement Date' and shall end at midnight on the 31st day of October 2034."[3] (*Id.* at 1, ¶ 3.)

- "Landlord shall use due diligence to give possession of the Premises to Tenant as nearly as possible on or before the Commencement Date of the Term." (*Id.* at 1, ¶ 4.)

- "If Tenant intends to advertise, publicly display or do business under any name other than as set forth above in Paragraph 1, then Tenant shall first submit in writing to Landlord and obtain Landlord's approval . . . for such proposed advertised and publicly displayed name under which Tenant desires to do business." (*Id.* at 4, ¶ 11(F).)

- "Tenant shall, during the entire Term of this Lease, keep in full force and effect a policy or policies of commercial general liability and property and casualty damage insurance covering the Premises against loss . . . ." (*Id.* at 5, ¶ 12(A).)

- "In the event of a default, Landlord may terminate the Lease and/or sue for damages as provided by law if Tenant does not initiate and pursue with diligence the curing of such default within thirty (30) days after Tenant's receipt of written notice from Landlord describing the particular default." (*Id.* at 11, ¶ 25.)

---

cv-00868-MTS, 2025 WL 263410, at *1 (E.D. Mo. Jan. 22, 2025) (citation omitted). This is because a preliminary injunction seeks relief based on the complaint in the case. *Id.* Therefore, when "many of the injuries" alleged in a motion for preliminary injunction "no longer correspond to the conduct asserted in the operative complaint," the denial of preliminary injunction because of the filing of an amended complaint is proper. *Id.* at *2.

Here, however, the Court finds that Euphoric's breach-of-contract claim against Defendants is substantively the same in both complaints. (*Compare* Doc. 16 at 34-35, *with* Doc. 143-1 at 40-41.) Thus, the injuries asserted in Euphoric's motion for preliminary injunction continue to correspond to the conduct and injuries asserted in the operative complaint—now the Second Amended Complaint. Therefore, the Court proceeds to rule on the merits of the preliminary injunction motion despite granting leave to amend the complaint after the filing and briefing of the motion.

[2] Euphoric, LLC, filed its Articles of Organization with the Missouri Secretary of State on September 3, 2024. (Def. Ex. 168.)

[3] The line in this provision has been left blank in the lease agreement provided to the Court, with neither a typed nor handwritten date appearing in the blank.

2

On the final page of the lease agreement, Harold Brody as the manager of 4128 Broadway, LLC, and Christopher Lee, as the managing member of Euphoric, LLC, signed the lease but did not date their signatures. (*Id.* at 15.)

Additionally, the parties drafted and signed a personal guarantee of lease, (*see* Doc. 103-2), which Defendant Brody testified he signed at the same time he signed the lease agreement. The personal guarantee of lease lists Damion Johnson and Christopher Lee as guarantors of the lease. (*Id.* at 3.) Christopher Lee and Harold Brody signed the personal guaranty of lease on October 21, 2024. (*Id.*) In the copy of the personal guaranty of lease provided to the Court, it appears that Damion Johnson signed the document on October 24, 2024. (*Id.*)[4]

In preparation of Euphoric opening and operating Euphoric Bar and Lounge at the 4128 Broadway premises, Ale House West was created as the hiring and HR entity for Euphoric.[5] A "We're Hiring" advertisement was posted online and on social media and solicited employment applications for Ale House West. (Doc. 149-2.) The hiring event was scheduled for October 28, 2024, at the 4128 Broadway premises. (*Id.*) On October 23, 2024, Defendant Brody informed Christopher Lee that Brody did not approve of Lee using the Ale House West name (similar to the former tenant of 4128 Broadway, Westport Ale House). On October 24, 2024, an Amendment of Articles of Organization was filed which changed "Ale House West LLC" to "House of Broadway LLC." (Doc. 159-2 at 3; Def. Ex. 128.) Nevertheless, the employment applications that were available online as well as distributed to and collected from job candidates on October 28, 2024, indicated that "Ale House West" was the hiring organization. (Def. Ex. 117.) The hiring event was held outside of 4128 Broadway, in the patio area, because Euphoric did not have possession of the premises. Christopher Lee testified that denying Euphoric access to the building harmed Euphoric's reputation[6] in the community because people online were saying that Euphoric was a fraud and did not have permission to open its business on the premises. Additionally, Defendant Brody made statements that appeared in a Kansas City Star article published on April 15, 2025,

---

[4] Defendants argue that this version of the personal guaranty of lease was not provided to them until July 2025, and that Damion Johnson's signature may be backdated. The Court finds that it need not resolve this issue in reaching its decision on Euphoric's motion for preliminary injunction.

[5] Ale House West LLC was created and registered with the Missouri Secretary of State on October 23, 2024. (Def. Ex. 127.)

[6] As previously noted, Euphoric was not a business entity prior to September 3, 2024.

3

including that the lease was incomplete, he never received two personal guarantees of the lease, and other comments related to this lawsuit.[7]

Euphoric has never been given access to the 4128 Broadway premises, and it remained vacant for the following eight months. In July 2025, Defendants entered into a lease agreement with Holy Brunch KC for lease of the 4128 Broadway premises. Holy Brunch has since opened for business and incurred over $182,000 in costs associated with readying its business for operation. (Def. Ex. 130.)

Further facts are set forth as necessary below.

## Legal Standard

The Eighth Circuit considers motions for preliminary injunctions based on the following factors: (1) the threat of irreparable harm to the plaintiff, (2) the state of balance between such harm and the injury that granting the injunction will inflict on other parties, (3) the probability the plaintiff will succeed on the merits, and (4) the public interest. *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981).[8] "In balancing the equities no single factor is determinative." *Id.* at 113. However, "[l]ikelihood of success on the merits is the most important factor . . . ." *Wildhawk Invs., LLC v. Brava I.P., LLC*, 27 F.4th 587, 593 (8th Cir. 2022) (cleaned up). Additionally, "the absence of irreparable harm 'is an independently sufficient ground upon which to deny a preliminary injunction.'" *Morehouse Enters., LLC v. BATFE*, 78 F.4th 1011, 1017 (8th Cir. 2023) (quoting *Grasso Enters., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1040 (8th

---

[7] *See* David Hudnall, *In KC's Westport, a Landlord-Tenant Dispute Has Unraveled into a $70 Million Lawsuit*, KC Star (last updated Apr. 16, 2025), https://www.kansascity.com/news/local/article302472389.html [https://perma.cc/RB82-RUAG]. At the hearing, Euphoric asked the Court to take judicial notice of this news article, which the Court granted. The Court "may properly take judicial notice of newspapers or other publications as evidence of what was in the public realm at the time, but not as evidence that the contents in the publication were accurate." *Klossner v. IADU Table Mound MHP, LLC*, 565 F. Supp. 3d 1118, 1123 (N.D. Iowa 2021). The Court thus takes judicial notice of the April 15, 2025 newspaper article "only to indicate what is in the public realm at this time and not for the truth of the article's contents." *Woods v. City of St. Louis*, No. 4:24-cv-00868-MTS, 2025 WL 40759, at *4 n.5 (E.D. Mo. Jan. 7, 2025) (quotation marks omitted).

[8] Euphoric's motion is titled "application for temporary restraining order and preliminary injunction." Temporary restraining orders permit a court to issue an order without written or oral notice to the adverse party while preliminary injunctions may be issued only on notice to the adverse party. *See* Fed. R. Civ. P. 65. Because Defendants had appeared in the case by the time Euphoric filed its motion, the Court provided Defendants with the opportunity to respond to the motion. Therefore, the Court treats the instant motion as a motion for preliminary injunction. However, the Court notes that "the standard for analyzing a motion for a temporary restraining order is the same as a motion for a preliminary injunction . . . ." *Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th Cir. 2022).

Cir. 2016)). "The movant bears the burden of demonstrating the preliminary injunction is warranted because a preliminary injunction is an 'extraordinary remedy never awarded as of right.'" *Id.* at 1016 (quoting *Progressive Techs., Inc. v. Chaffin Holdings, Inc.*, 33 F.4th 481, 485 (8th Cir. 2022)).

**Discussion**

Plaintiff Euphoric seeks a preliminary injunction against Defendants Brody and 4128 Broadway, LLC, to prevent Defendants from leasing the property at 4128 Broadway to anyone other than Euphoric, and to direct Defendants to immediately deliver possession of the property to Euphoric. (Doc. 103 at 1.) Defendants argue that Euphoric is not entitled to preliminary injunction because (1) Euphoric has not shown a likelihood of success on the merits of its breach-of-contract claim, and (2) Euphoric has not shown a sufficient threat of irreparable harm in the absence of an injunction.

**I.    Likelihood of Success on the Merits**

A movant must show a "fair chance" of succeeding on the merits to support preliminary injunction. The "fair-chance standard does not require the party seeking relief to show a greater than fifty per cent likelihood that he will prevail on the merits." *D.M. v. Minn. High Sch. League*, 917 F.3d 994, 999 (8th Cir. 2019) (cleaned up). Here, Euphoric argues that it is likely to succeed on the merits of its breach-of-contract claim against Defendants.[9] Euphoric conceded that the other claims asserted in this case were not implicated by its motion for preliminary injunction, and it has not provided any evidence or argument to establish a likelihood of success on the merits of those other claims. Therefore, the Court proceeds only to consider Euphoric's likelihood of success on the merits of its breach-of-contract claim against Defendants Brody and 4128 Broadway, LLC.

Euphoric's breach-of-contract claim alleges that Defendants 4128 Broadway, LLC, and Harold Brody breached the lease agreement by refusing to deliver possession of the premises at 4128 Broadway to Euphoric. Defendants argue that Euphoric is unlikely to succeed on the merits because (1) there is not a valid lease because the Lease Agreement does not comply with the

---

[9] Plaintiffs' Amended Complaint improperly numbers claims, resulting in two claims denominated as "Claim 2." The first Claim 2 requests declaratory relief establishing Plaintiff Euphoric's right to immediate possession of the 4128 Broadway premises and damages for lost revenue and profits. (Doc. 16 at 32.) The second Claim 2, which is relevant here, is for breach of contract relating to the lease of 4128 Broadway. (Doc. 16 at 34.)

The breach-of-contract claim at issue herein is denominated as Claim 3 in Plaintiffs' Second Amended Complaint. (Doc. 143-1.)

Missouri statute of frauds, § 432.010, RSMo, and (2) even if the Lease Agreement were valid, Defendants are entitled to recission because Euphoric operated under a different name without permission and did not obtain insurance.

"A lease in Missouri acts as both a conveyance and a contract, and a damaged party has available the usual contract remedies in the event a provision of a lease is breached . . . ." *Arnold Crossroads, LLC v. Gander Mt. Co.*, 471 S.W.3d 721, 723 (Mo. Ct. App. 2015) (quoting *G&J Holdings, LLC v. SM Props., LP*, 391 S.W.3d 895, 900-01 (Mo. Ct. App. 2013)). "A prima facie case for breach requires: establishment of a valid lease, mutual obligations from that lease, lack of performance from the breaching party, and damage to the non-breaching party." *Id.* (citing *GAJ Holdings, LLC*, 471 S.W.3d at 723).

Where, as here, the lease was intended to last longer than a year, Missouri's statute of frauds also applies:

> No action shall be brought . . . upon any contract made for the sale of lands, tenements, hereditaments, or an interest in or concerning them, or any lease thereof, for a longer time than one year, or upon any agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith . . . .

§ 432.010, RSMo. Thus, to satisfy the statute of frauds, a lease for longer than one year must be in a writing signed by the party to be charged therewith. Additionally, the writing must contain the essential terms of the lease agreement, "leaving no essential part to be proved by parol [evidence]." *Gillespie v. Pulsifer*, 655 S.W.2d 123, 125 (Mo. Ct. App. 1983) (citing *Jungkuntz v. Carter*, 254 S.W. 359, 360 (Mo. banc 1923)). "Parol evidence" includes oral evidence or other evidence extrinsic to the writings which make up the purported agreement. *See Norden v. Friedman*, 756 S.W.2d 158, 163 (Mo. 1988) (oral evidence); *Emerick v. Mut. Ben. Life Ins.*, 756 S.W.2d 513, 522 (Mo. 1988) (extrinsic evidence).

"There is a diversity of opinion in the various jurisdictions as to what constitute 'essential terms'" for a lease agreement, and courts in Missouri have noted that "it seems to us that 'essential terms' in an agreement to enter into a lease must of practical necessity be determined upon a consideration of all the facts and circumstances of each case." *Gillespie*, 655 S.W.2d at 125 n.1 (quoting *Frostwood Drugs, Inc. v. Fischer & Frichtel Constr. Co.*, 352 S.W.2d 694, 700 (Mo. 1961)). Courts applying Missouri contract law agree that the term of the lease, including the commencement date, is an essential term. *See Hanes v. Mid-Am. Petrol., Inc.*, 577 F. Supp. 637,

643 (W.D. Mo. 1983) (citing *Midland Realty Co. v. Manzella*, 308 S.W.2d 326, 330 (Mo. App. 1957)) ("In Missouri, a lease must contain: (1) the parties; (2) the subject matter; (3) the promises on both sides; (4) the price; and (5) the consideration. . . . The term of a lease is obviously an essential element and its absence renders the lease invalid."); *Frostwood Drugs, Inc.*, 352 S.W.2d at 698 (noting that the commencement of the term of the lease is an essential provision); *Pfeiffenberger v. Scott's Cleaning Co.*, 144 S.W.2d 183, 188 (Mo. Ct. App. 1940) (finding length and duration of the term and when the term is to begin are essential conditions of a lease, applying Illinois statute of frauds and contract law which are substantively similar to Missouri's). Thus, as an essential term, the commencement date of the lease must be in writing to satisfy the statute of frauds in a lease for longer than a year.

Here, Euphoric provided the Court with a lease agreement which does not include a commencement date. Rather, there is a blank space in the "Term" paragraph which states,

> The term "Term" of this Lease is ten (10) years and such Term shall commence at 12:01 a.m. on the ___ day of October, 2024 "Commencement Date" and shall end at midnight on the 31st day of October 2034.

(Doc. 103-1 at 1, ¶ 3.) Euphoric argues that the lease agreement nevertheless satisfies the statute of frauds because (1) when read together with the personal guarantee of lease, it contains the essential terms; and (2) the lease agreement, while leaving the commencement *date* blank, unambiguously sets October 2024 as the *month* in which the lease is to commence, to run 10 years until October 31, 2034.

Euphoric's argument regarding the personal guaranty of lease is unpersuasive. Under the statute of frauds, a lease "may consist of a number of writings sufficiently connected so as to warrant their being read together, and which, when so read, satisfy all the requirements of the statute as to contents and signature." *Midland Realty Co.*, 308 S.W.2d at 330. However, even reading the lease agreement and personal guarantee of lease together, the Court finds that the commencement date does not appear in writing in either document. The signatures dated October 21, 2024, on the personal guarantee of lease do not suggest that the commencement date was also intended to be October 21, 2024, because the date of the lease and the commencement date are not necessarily the same. *See Pfeiffenberger*, 144 S.W.2d at 188 ("The date of the lease does not necessarily affect the commencement of the term, which may be, and frequently is, intended to begin at some time in the future . . . ."). The Court cannot conclude from the signature dates on the personal guarantee of lease that the commencement date was supposed to be October 21, 2024,

7

without referring to parol evidence. Therefore, even reading the lease agreement and personal guarantee together, it appears that an essential term (the commencement date) is missing.

Euphoric's second argument, that "on the ___ day of October, 2024" is sufficient to satisfy the requirement that the commencement date be in writing, is slightly more persuasive but likely unsuccessful. "[I]t is the general rule and the law in Missouri that '[a] written agreement may be uncertain because of blanks left therein,' . . . and that '[a] writing is incomplete as an agreement where blanks, as to essential matters, are left in it unless they can be supplied from other parts of the writing itself.'" *Hanes*, 577 F. Supp. at 643 (citing Missouri caselaw). To satisfy the statute of frauds, a lease for longer than a year "must either specify the date from which the term shall run, or else, if that is impossible to know at the time of the execution of lease, *make reference to some definite event to happen in the future* which will determine the beginning of the term." *Pfeiffenberger*, 144 S.W.2d at 188 (emphasis added).

It seems Euphoric is arguing that, by stating "on the ___ day of October, 2024," the lease agreement sets forth a definite event to happen in the future—*i.e.*, the end of the month—which determines the commencement date of the term. However, this occurrence does not seem like the type of "definite event to happen in the future" which satisfies the commencement date requirement. *See Hanes*, 577 F. Supp. at 641 (concluding there was no way to determine the commencement date, rendering the lease invalid, where the lease provided that "[t]his Lease shall be in effect for the term beginning on __, 1981, and ending on __, 1982 . . . ."). Applying Euphoric's reasoning to *Hanes*, the court should have concluded that the term provisions indicated that the lease was intended to begin in 1981 (December 31 at the latest) and end in 1982 (December 31 at the latest). Instead, in *Hanes* the court found that providing the years alone was insufficient to establish a commencement date in writing.

Here, the Court concludes that providing the month and year alone is insufficient to satisfy the commencement date or "definite event to happen in the future" requirement. Moreover, the existence of the end date of the term (October 31, 2034) is similarly insufficient to establish the commencement date. If the Court were to work backwards ten years from the termination date, the commencement date would be October 31, 2024. However, Euphoric does not argue that the parties intended the lease to begin on October 31, 2024; rather, Euphoric's contention is that the lease "was at its latest intended to take effect on October 23, 2024," (Doc. 159 at 11), and Euphoric

8

argued at the preliminary injunction hearing that the Court should conclude the commencement date was October 21, 2024, reading the lease agreement and personal guarantee of lease together.

While Euphoric has attempted to present evidence regarding the parties' intent to enter a valid lease, the Court cannot determine the commencement date without reference to parol evidence.  Without a written commencement date in the parties' lease agreement or personal guarantee of lease, the Court concludes that the lease likely does not satisfy the statute of frauds because it is missing an essential term.  Thus, the lease is likely not valid.  Therefore, Euphoric has not shown a likelihood of success on the merits of its breach-of-contract claim against Defendants Brody and 4128 Broadway, LLC.[10]  "While no single [*Dataphase*] factor is determinative, the probability of success factor is the most significant."  *Schmitt v. Rebertus*, 148 F.4th 958, 966 (8th Cir. 2025).  This is "because an injunction cannot issue if there is no chance of success on the merits."  *Short v. Billings Cnty.*, 138 F.4th 1072, 1077 (8th Cir. 2025).  The Court concludes that Euphoric has not shown a likelihood of success on the merits of its breach-of-contract claim.  Thus, this factor weighs against preliminary injunction.

## II. Irreparable Harm

The Court next considers whether Euphoric has shown a threat of irreparable harm in the absence of preliminary injunction.  Ultimately, the "burden [is] on [the movant] to establish the threat of irreparable injury."  *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009).  In doing so, the movant must show it has "no adequate remedy at law because its injuries [could not] be fully compensated through an award of damages."  *Mgmt. Registry, Inc. v. A.W. Cos., Inc.*, 920 F.3d 1181, 1183 (8th Cir. 2018) (citation omitted).  To establish irreparable harm, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief."  *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 425 (8th Cir. 1996).  The Court has already determined that Euphoric has not demonstrated a likelihood of success on the merits of its breach-of-contract claim against Defendants.  *See Romantix-Fargo, Inc. v. City of Fargo*, No. 3:22-cv-00183, 2022 WL 17848931, at *7 (D.N.D. Dec. 22, 2022) (noting the irreparable harm factor is "tied to the likelihood of success" factor).

---

[10] Because the Court concludes that the lease is likely invalid under the statute of frauds because it lacks a commencement date in writing, the Court does not reach the parties' arguments regarding the right of recission, first-to-breach, and anticipatory breach.

9

Euphoric argues that there is a threat of irreparable harm in the absence of preliminary injunction because it faces the (1) deprivation of an interest in real property, i.e., the lease of 4128 Broadway, (2) deprivation of constitutional rights of equal protection and privileges under the law, related to Euphoric's claim that Defendants conspired to commit racial discrimination, and (3) loss of goodwill and harm to business reputation.[11]

### A. Interest in Real Property

Some courts have found that "[t]he deprivation of an interest in real property constitutes irreparable harm." *Third Church of Christ, Scientist, of N.Y.C. v. City of New York*, 617 F. Supp. 2d 201, 215 (S.D.N.Y. 2008), *aff'd*, 626 F.3d 667 (2d Cir. 2010); *Opulent Life Church v. City of Holly Springs Miss.*, 697 F.3d 279, 297 (5th Cir. 2012). Though it does not appear the Eighth Circuit has squarely weighed in on this issue, the Court assumes *arguendo* that a deprivation of an interest in real property could constitute irreparable harm.

Here, however, Euphoric has failed to establish that it likely has an interest in the real property located at 4128 Broadway because it has not shown that there was a valid lease between Euphoric and Defendants. Therefore, because Euphoric has not shown a likely interest in the property, the alleged harm of *deprivation* of an interest in real property is not "certain and great and of such imminence that there is a clear and present need for equitable relief." *Iowa Utils. Bd.*, 109 F.3d at 425. Even if Euphoric had shown an interest in the real property at 4128 Broadway, it appears that this interest is compensable by damages. Euphoric's amended complaint (and second amended complaint) indicates that Euphoric "anticipated total revenues of $70 million over the life of the entire ten-year lease," which is "equivalent to $583,333.33 per month." (Doc. 16 at 33; Doc. 143-1 at 38.) Euphoric has not met its burden to show why this monetary relief is insufficient to remedy the breach of contract.

### B. Constitutional Rights

The deprivation of a constitutional right, even for a limited time, may constitute irreparable harm. *See Toigo v. Dep't of Health & Senior Servs.*, 549 F. Supp. 3d 985, 994 (W.D. Mo. 2021) (noting that the loss of First Amendment freedoms for any period of time automatically constitutes irreparable harm, but under Eighth Circuit precedent other contexts require showing a

---

[11] The Court notes Plaintiff first argues that the loss of goodwill and business reputation constitutes irreparable harm for the first time in its reply brief. (*Compare* Doc. 103, *with* Doc. 159.) Defendants were provided with an opportunity to respond to this argument at the preliminary injunction hearing.

constitutional violation and that the irreparable harm is certain and imminent); *see also Jones v. City of Kan. City*, No. 4:23-cv-00649-RK, 2025 U.S. Dist. LEXIS 121974, at *25 (W.D. Mo. Feb. 11, 2025).

Euphoric argues that it faces irreparable harm from the deprivation of constitutional rights of equal protection and privileges under the law, related to Euphoric's claim that Defendants conspired to commit racial discrimination. (Doc. 103 at 7.) However, Euphoric has not attempted to show a likelihood of success on the merits of its constitutional-rights-related claims under 42 U.S.C. §§ 1981, 1982, 1985, or 1986. Thus, the Court concludes that Euphoric has not met its burden to show that it faces an actual or imminent threat to its constitutional rights at this stage of the litigation.[12] *See Law v. Gast*, 643 F. Supp. 3d 914, 920 (S.D. Iowa 2022) (noting that in *D.M. v. Minnesota State High School League*, 917 F.3d 994 (8th Cir. 2019), the Eighth Circuit concluded that there was a likelihood of success on the merits of a constitutional claim, which caused irreparable harm, but that "[n]o similar likelihood of success on a constitutional claim, and therefore irreparable harm, has been shown in this case").

### C. Loss of Goodwill and Harm to Business Reputation

Finally, the "[l]oss of intangible assets such as reputation and goodwill can constitute irreparable injury." *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 741 (8th Cir. 2002). "'Goodwill' is defined as '[a] business's reputation, patronage, and other intangible assets that are considered when appraising the business . . . ; the ability to earn income in excess of the income that would be expected from the business viewed as a mere collection of assets.'" *Mercy Health Servs., Inc. v. Efstratiadis*, 579 F. Supp. 3d 1096, 1104 (N.D. Iowa 2022) (quoting *Goodwill*, Black's Law Dictionary (11th ed. 2019)).

Here, Euphoric argues that Defendants harmed its goodwill and business reputation because they did not transfer possession of the 4128 Broadway premises to Euphoric in time for the hiring event on October 28, 2024. As a result, Euphoric argues that "[p]eople on social media were publicly humiliating and discrediting Plaintiff Euphoric by claiming that it did not really have permission to open the restaurant and claiming that Euphoric was a fraud." (Doc. 159 at 28.)

---

[12] Additionally, Euphoric's delay in moving for preliminary injunctive relief cuts against the urgency of the alleged harm. The impetus for seeking this injunction—Defendants refusing to transfer possession of the 4128 Broadway premises to Euphoric—occurred on October 28, 2024. Euphoric filed this case on January 14, 2025. (Doc. 1.) However, Euphoric did not file its motion for preliminary injunction until over six months later on July 25, 2025. (Doc. 103.)

11

Euphoric argues that this resulted in "severe public humiliation" and "Defendants have and continue to undermine Plaintiff Euphoric's goodwill." (*Id.*) First, Euphoric has not provided evidence of any such social media postings disparaging Euphoric.[13] Even if it had, the Court does not see how this past incident, which is a discrete instance in relation to a hiring event that has since passed, contributes to any continuing threat of harm to Euphoric's goodwill or business reputation which could be prevented by a preliminary injunction.

Second, it is unclear how the hiring event hosted by Ale House West (subsequently changed to House of Broadway) establishes that there was reputational harm to *Euphoric, LLC*. Plaintiff Euphoric has not shown an imminent threat of irreparable harm to its own business reputation; at best, Euphoric has provided some limited evidence that some entity may have been harmed, but it is unclear on the record before the Court which entity was harmed, whether the harm is ongoing, and how a preliminary injunction would provide relief from further harm.

Third, as to the Kansas City Star article, the Court is similarly unpersuaded that any irreparable harm to Euphoric resulted or continues to result from any statements made by Defendant Brody therein. Moreover, as defense counsel argued at the preliminary injunction hearing, Plaintiff Euphoric had never operated as an entity prior to this incident and therefore the Court does not know what Euphoric's reputation was prior to any alleged harms. Ultimately, the "burden [is] on [the movant] to establish the threat of irreparable injury." *Gen. Motors Corp.*, 563 F.3d at 319. On the record before the Court, Euphoric has not established the threat of irreparable harm to goodwill or business reputation, in part because it has not established what Euphoric, LLC's reputation was prior to the hiring event and the KC Star Article, nor provided sufficient evidence to establish that it was harmed as a result of those things. *See Allworth Fin. LP v. Pivato*, No. 2:23-cv-00829-TLN-KJN, 2023 WL 3570084, at *4 (E.D. Cal. May 19, 2023) ("[E]vidence of reputational damage or harm to business goodwill sufficient to merit entry of preliminary relief typically incorporates information provided by . . . market-based sources external to the plaintiff itself." (citing *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 865 (9th Cir. 2017))).

---

[13] Euphoric's Exhibit 14 purports to be "Brett Allred/Westport Bars Social Media Disparaging Comments." (Doc. 205 at 2.) However, this exhibit was not among those preadmitted by the parties, and it was not admitted during the course of the preliminary injunction hearing. Even if it were, the post does not mention Euphoric, LLC, or Christopher Lee by name.

Finally, even if Euphoric had shown a loss of goodwill or harm to business reputation, in certain circumstances courts have concluded that such harms are compensable by money damages. *See Sierra Petrol. Co., Inc. v. Pats 66, Inc.*, No. 07-1112 (DFW/AJB), 2007 WL 1057055, at *3 (D. Minn. Apr. 6, 2007) ("Seirra contends that it will suffer irreparable harm as a result of its loss of customer traffic, harming Sierra's business reputation and competitive position . . . . The Court finds that these are damages that are compensable by money damages and thus not the irreparable harm sufficient to demand injunctive relief."). As previously discussed, Euphoric in its allegations against Defendants sets forth a precise dollar amount of revenue which it believes it would have earned had it been able to open and operate in the 4128 Broadway premises for ten years. In light of these quantifiable damages, the Court finds that even if Euphoric had shown imminent harm to its business reputation, this is not a situation where damages are insufficient to account for the harm arising out of the alleged breach of contract.

Thus, the Court concludes that Euphoric has failed to establish a threat of irreparable harm. "The failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction . . . ." *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

### III. Balance of Harms and Public Interest

Because Euphoric has not demonstrated a likelihood of success on the merits or threat of irreparable harm, the Court need not consider the remaining *Dataphase* factors of balance of harms and public interest. *See Allied Servs., LLC v. Smash My Trash, LLC*, No. 21-cv-00249-SRB, 2021 WL 1671675, at *3-5 (W.D. Mo. April 28, 2021) (considering only the irreparable harm factor to deny preliminary injunctive relief); *Gamble v. Minn. State Indus.*, No. 16-cv-2720-JRT-KMM, 2017 WL 6611570, at *3 (D. Minn. Dec. 1, 2017) (same), *adopted by* No. 16-2720 (JRT/KMM), 2017 WL 6607396 (D. Minn. Dec. 27, 2017).

### Conclusion

Accordingly, after careful consideration and for the reasons explained above, the Court **ORDERS** that Euphoric's motion for temporary restraining order and preliminary injunction against Defendants Harold Brody and 4128 Broadway, LLC, (Doc. 103), is **DENIED**.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: October 22, 2025