UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| EUPHORIC, LLC, ET AL., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) Case No. 4:25-cv-00023-RK |
| WESTPORT COMMUNITY IMPROVEMENT DISTRICT, ET AL., | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
COUNT XII OF PLAINTIFFS' SECOND AMENDED COMPLAINT**

**I.    Introduction**

Plaintiffs Euphoric, LLC ("Euphoric"), The Sourze, LLC ("The Sourze") and UniKC, LLC ("UniKC") (collectively, "Plaintiffs") attempt to assert claims against the Westport Community Improvement District and its board members (collectively "Westport CID Defendants") alleging that they committed violations of 18 U.S.C. § 1962 *et seq.* the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Relying solely upon conclusory allegations and a theory of liability that has been rejected by the United States Supreme Court, Plaintiffs' Count XII is fatally flawed and must be dismissed.

**II.   Factual Allegations[1]**

The Westport Community Improvement District ("CID") is a non-profit Missouri corporation founded on March 22, 2002. (Doc. 249, ¶ 8). It is the governing body of the Westport community and creates policies and procedures for the operation of businesses in the Westport

---

[1] The Westport CID Defendants dispute the accuracy of Plaintiffs' allegations. Nonetheless, the Westport CID Defendants acknowledge that the Court accepts well-pleaded factual allegations (but not legal conclusions) as true for purposes of this motion, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and provides this background based on the facts pleaded in Plaintiff's Second Amended Complaint. As explained below, even accepting Plaintiffs' *well-pleaded* facts, they fail to state any claim for relief under 18 U.S.C. § 1962 et. seq.

community who are members of the CID. (Doc. 249, ¶ 9). Its board consists of 12 members that govern the CID in accordance with its bylaws and articles of incorporation. (Doc. 249, ¶ 10). All the CID Defendants are White/Caucasian. (Doc. 249, ¶ 40). The CID and its board members have authority to vote on the policies and procedures to be implemented in the Westport. (Doc. 249, ¶ 43).

Harold Brody owns the property located at 4128 Broadway Avenue. (Doc. 249, ¶ 23). On October 21, 2024, Euphoric entered into a lease agreement for the property located at 4128 Broadway Avenue. (Doc. 249, ¶ 151). Euphoric was unable to operate its intended business at 4128 Broadway as it was never provided the keys by Brody. (Doc. 249, ¶¶ 158, 172, 191, 206). Euphoric believes that it was unable to operate its intended business due to race discrimination. (Doc. 249, ¶¶ 215-16).

Westport Development, LLC owns the property located at 427 Westport Road. (Doc. 249, ¶ 53). The Sourze entered a lease agreement for the property located at 427 Westport Road on October 20, 2020, or November 25, 2020, with Pulse Management, LLC. (Doc. 249, ¶¶ 57, 64). On April 14, 2021, The Source and Pulse Management LLC entered the Amended and Restated Triple Net Lease. (Doc. 249, ¶ 68). The Sourze was unable to open its Daiquiri Bar concept in the premises and was unable to utilize the entirety of its leased premises. (Doc. 249, ¶¶ 70-81). The Sourze's inability to make its planned changes and utilize the entire property caused its business to fail. (Doc. 249, ¶¶ 83-84). The Sourze believes that it was unable to make its planned changes to the premises and its business failed due to race discrimination. (Doc. 249, ¶ 86).

Gregory Bartold and Joe Niebur owned the property located at 4140 Pennsylvania. (Doc. 249, ¶¶ 30-1). On April 6, 2021, UniKC entered into a lease agreement with DB Icehouse, LLC, for leasing the property located at 4140 Pennsylvania. (Doc. 249, ¶ 97). After a meeting between

UniKC and the owner of a separate neighboring property, the Denver Biscuit, UniKC was denied access to the property by Bartold and Niebur. (Doc. 249, ¶¶ 104-21). UniKC believes that it was unable to open its business due to race discrimination. (Doc. 249, ¶ 130).

### III. Standard of Review

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown- that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quotations omitted). "Legal conclusions can provide the framework of a complaint;" however, those conclusions "must be supported by factual allegations." *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1014 (8th Cir. 2013) (citing *Iqbal*, 556 U.S. at 679).

### IV. Argument and Authority

To establish a civil RICO claim Plaintiffs must show "(1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity." *UMB Bank, N.A. v. Guerin*, 89 F.4th 1047, 1053 (8th Cir. 2024) (internal quotation and citation omitted). Plaintiffs must also establish "proof of concrete financial loss, and not mere injury to a valuable intangible property interest." *Id.* As Plaintiffs have failed to plead any factual basis that establishes the Westport CID Defendants engaged in a pattern of racketeering activity and failed to plead a factual basis demonstrating concrete financial loss, their claim in Count XII must be dismissed.

### A. Plaintiffs Have Failed to Allege a Pattern of Racketeering Activity and Their Count XII Must Be Dismissed

#### 1. The Westport CID Defendants' Alleged "Extortion" Cannot, as a Matter of Law, Support Plaintiffs' Civil RICO Claim

According to Plaintiffs, since 2013 all Defendants have engaged in a pattern of racketeering and committed at least two acts involving bribery or extortion. (Doc. 249, ¶ 367). Yet, the Second Amended Complaint contains no factual allegation identifying any act of extortion or bribery committed by any Westport CID Defendant. Plaintiffs rely on a theory of extortion under 18 U.S.C. § 1951, the Hobbs Act, that interference with an intangible property right gives rise to a civil RICO claim — it does not. (Doc. 249, ¶ 367) Indeed, the United States Supreme Court has unequivocally rejected the theory that Plaintiffs advance in the Second Amended Complaint.

"The Hobbs Act, 18 U.S.C. § 1951(a), provides that '[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.'" *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 398, 123 S. Ct. 1057, 1062, 154 L. Ed. 2d 991, FN 3 (2003). Extortion under the Hobbs Act is "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." *Id.* (quoting 18 U.S.C. § 1951(b)(2)).

In *Scheidler v. Nat'l. Org. for Women, Inc.*, the Supreme Court was presented with the question of whether antiabortion groups' activity outside of abortion clinics to disrupt services constituted extortion under the Hobbs Act sufficient to support a civil RICO claim. 537 U.S. at 397. It was undisputed that the antiabortion groups' activity interfered with, and in some instances deprived, the providers' ability to exercise their property rights, namely, to operate their clinics. *Id.*

at 405. As the Supreme Court noted, it has routinely construed extortion under the Hobbs Act as requiring a plaintiff to show not only a deprivation of a property interest but an acquisition of the property itself by the defendant. *Id.*

Like the abortion providers in *Scheidler*, here, Plaintiffs rely solely upon allegations that the Westport CID Defendants *interfered with* their property interests, namely, the operation of their respective businesses. *See generally* (Doc. 249). However, Plaintiffs must go further and allege that the Westport CID Defendants actually acquired the subject properties themselves, which they have not. The Second Amended Complaint does not allege that the Westport CID Defendants ever acquired the subject properties. Plaintiffs explicitly concede that the subject properties remained at all times in the control of their owners. (Doc. 249, ¶¶ 23, 53, 30-1). Plaintiffs' argument that the Westport CID Defendants exerted pressure or influence on these property owners (which is denied) is woefully insufficient to carry their burden. They must go further and allege a factual basis demonstrating an actual taking of the property to hold the Westport CID Defendants liable under an extortion theory.

In explicitly rejecting Plaintiffs' theory, the Supreme Court, noted "to conclude that such actions constituted extortion would effectively discard the statutory requirement that property must be obtained from another, replacing it instead with the notion that merely interfering with or depriving someone of property is sufficient to constitute extortion." *Scheidler*, 537 U.S. at 405. As, Plaintiffs have failed plausibly to allege any facts demonstrating the Westport CID Defendants engaged in extortion under the Hobbs Act to give rise to a civil RICO claim, Count XII must be dismissed.

5

Case 4:25-cv-00023-RK    Document 261    Filed 11/14/25    Page 5 of 9

### 2. Plaintiffs Provide No Factual Basis to Support Their Legal Conclusions that The Westport CID Defendants Engaged in "Bribery" to Give Rise to a Civil RICO Claim

Included within the ambit of racketeering activity, is bribery as defined in 18 U.S.C. § 201. 18 U.S.C. §1961(b)(1). 18 U.S.C. § 201 prohibits the gift, offer, or promise of anything of value to public officials with the intent to "(A) influence any official act; (B) influence such public official…to collude in, or allow, any fraud, or make opportunity for the commissions of any fraud, on the United States; or (C) to induce such public official…to do or omit to do any act in violation of the lawful duty of such official or person." 18 U.S.C. § 201(b)(2). The statute also prohibits the gift, offer, or promise of anything of value to any person in exchange for favorable testimony. 18 U.S.C. § 201(b)(3).

Plaintiffs allege that Defendant Allred, under the authority and ratification of the Westport CID, using the Good Neighbor Agreement bribed Todd Gambal to restrict the number of African American patrons in Westport. (Doc. 249, ¶ 96). However, there is no allegation in the Second Amended Complaint that Gambal is a public official within the meaning of 18 U.S.C. § 201(a)(1). Additionally problematic for Plaintiffs' claims is the lack of any allegation that Gambal as a private business owner could undertake any official act; participate in a fraud on the United States; or violate his lawful duty as a public official as defined in § 201. 18 U.S.C. § 201(a)(3). Nor are there allegations that Defendant Allred was attempting to bribe Todd Gambal for favorable testimony in any proceeding in violation of 18 U.S.C. § 201(b)(3). Plaintiffs have made no attempt to provide any plausible factual basis to support their legal conclusion that Defendant Allred (and by extension the Westport CID Defendants) bribed Gambal, the same must be disregarded.

Likewise, Plaintiffs' conclusory allegations that unidentified "CID members and CID Board members" used the Good Neighbor Agreement to "bribe" companies to gain consent for a liquor license and to follow their rules are plagued with similar issues. (Doc. 249, ¶¶ 378-79). According

to Plaintiffs, these alleged "bribes" were *made to* private businesses, which both defies logic and does not constitute bribery under 18 U.S.C. § 201 as there is no factual basis to find that these unidentified private businesses are public officials or witnesses within the meaning of the statute. (Doc. 249, ¶¶ 378-79). Similarly, Plaintiffs fail to plausibly allege that any person committing an act attributable to the Westport CID Defendants was a public official soliciting a bribe within the meaning of 18 U.S.C. § 201. Plaintiffs cannot simply rest upon their utterly unfounded allegations that "bribes" were made without any facts to support that contention. Even at the pleading stage Plaintiffs must provide a plausible factual basis to support their claims, which they have not remotely done.

Finally, Plaintiffs offer scattershot legal conclusions that Kansas City Officials (unidentified) were also "bribed" to restrict the number of African American patrons in Westport and to control which businesses receive or maintain a liquor license as part of their operations in Westport. (Doc. 249, ¶¶ 362-65). As with Plaintiffs' other "bribery" allegations, they have again failed to identify who these alleged public officials are and in what way they were "bribed" within the meaning of 18 U.S.C. § 201. With every factual allegation in the Second Amended Complaint construed in their favor, Plaintiffs have not identified a single plausible incident of bribery, let alone a pattern of racketeering activity within the meaning of 18 U.S.C. § 1964. As such, their Count XII must be dismissed.

      **B.    Plaintiffs' Have Failed to Allege Concrete Financial Losses and Their Count XII Must Be Dismissed**

"To have standing to make a RICO claim, a party must have 1) sustained an injury to business or property 2) that was caused by a RICO violation." *Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655, 660 (8th Cir. 2012) (internal quotation and citation omitted). Plaintiffs must establish they suffered a concrete financial loss and not mere injury to a valuable intangible property interest. *Id.*

Euphoric alleges that its concrete financial loss is a "loss of profit as promised in the lease agreement with Defendants Brody and 4128 Broadway." (Doc. 249, ¶ 372). This contention is belied by Euphoric's admission that its projected revenues were based upon representations allegedly made by Brody and 4128 Broadway regarding the approximate revenues the prior tenant had generated at the premises, not a written promise contained in the alleged lease agreement. (Doc. 249, ¶ 139). As Euphoric readily admits throughout the Second Amended Complaint, its business was never operational as it never received the keys from Brody to open and operate its business. (Doc. 249, ¶¶ 158, 172, 191, 206) The Sourze alleges that its business closed but fails to provide any facts demonstrating a concrete financial loss. In the Second Amended Complaint, The Sourze identifies the amount of money it spent in rent and costs to operate its business but never identifies actual concrete financial losses attributable to the alleged RICO violations. (Doc. 249, ¶¶ 73, 360-82). Similarly, UniKC admits that "it never had a chance to open its doors" and fails to identify any concrete financial loss apart from a generalized allegation that it has suffered "damages including expenses." (Doc. 249, ¶ 126, 377). In sum, Plaintiffs' alleged losses are not concrete financial losses, but rather are the intangible property interest losses, which does not give them standing to pursue a RICO claim. *See Regions Bank v. J.R. Oil Co., LLC*, 387 F.3d 721, 730-31 (8th Cir. 2004) (holding that Regions failed to establish a RICO damages, in part, where its alleged damages stemmed from a second security interest or a contractual right to repayment) (collecting cases). Plaintiffs' claims of lost revenues stemming from hypothetical operations of their business are simply too attenuated and not sufficiently concrete. Accordingly, Count XII must be dismissed with prejudice.

V.      Conclusion.

WHEREFORE, Defendant Westport Community Improvement District Defendants in accordance with Fed. R. Civ. P. 12(b)(6) request that this Court dismiss Count XII of Plaintiffs'

Second Amended Complaint; award Defendants their costs; and for such other and further relief the Court may deem just and proper.

Respectfully submitted,

*/s/ Jacqueline M. Duvall*
Stacy M. Bunck, MO Bar # 53229
Jacqueline M. Duvall, Mo Bar # 67078
OGLETREE DEAKINS NASH SMOAK &
STEWART PC
700 W. 47th Street, Suite 500
Kansas City, MO 64112
Phone: 816.471.1303
Facsimile: 816.471.1301
Email: stacy.bunck@ogletree.com
Email: jacqueline.duvall@ogletree.com

**ATTORNEYS FOR DEFENDANTS**
**Westport Community Improvement District, Franklin Kimbrough, Pamela Ptacek, Paul Mesler, Kyle Kelly, Larry Goldman, Max Wasserstrom, Matthew Vos, Jeremey Hurt, and Christie Montague**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of November, 2025, the foregoing was electronically filed with the Court Administrator through the CM/ECF system and service was made via electronic mail to all counsel of record.

*/s/ Jacqueline M. Duvall*
**ATTORNEY FOR DEFENDANTS**
**Westport Community Improvement District, Franklin Kimbrough, Pamela Ptacek, Paul Mesler, Kyle Kelly, Larry Goldman, Max Wasserstrom, Matthew Vos, Jeremey Hurt, and Christie Montague**