**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

EUPHORIC, LLC, et al.,

          Plaintiffs,

vs.

WESTPORT COMMUNITY
IMPROVEMENT DISTRICT, et al.,

          Defendants.

Case No. 25-CV-00023-RK

**DEFENDANT AC WESTPORT LLC'S SUGGESTIONS IN SUPPORT OF MOTION TO
DISMISS COUNTS IV-XII OF PLAINTIFFS' SECOND AMENDED COMPLAINT
FOR FAILURE TO STATE A CAUSE OF ACTION**

# 4TABLE OF CONTENTS

I.      INTRODUCTION....................................................................................................................1

II.     STANDARD OF REVIEW ....................................................................................................1

III.    ARGUMENTS AND AUTHORITIES ..................................................................................3

   A.   Count IV: Racial Discrimination in Violation of 42 U.S.C. § 1982 ................................3

   B.   Count V: Conspiracy to Commit Illegal Racial Discrimination in Violation of 42. U.S.C. §
        1985. ....................................................................................................................................5

   C.   Count VI: Racial Discrimination in Violation of 42. U.S.C. § 1981. ..............................7

   D.   Count VII: Failure to Prevent Racial Discrimination Conspiracy in Violation of 42 U.S.C. §
        1986. ....................................................................................................................................9

   E.   Count VIII: Tortious Interference with Plaintiffs' Contracts...........................................9

   F.   Count IX: Tortious Interference with Plaintiffs' Business Expectancy ..........................10

   G.   Count X: Civil Conspiracy .............................................................................................11

   H.   Count XI: Conspiracy to violate the Sherman Act, Antitrust, or Trade Law .................12

        i.   Conspiracy to Violate 15 U.S.C. § 1 and Mo. Rev. Stat. § 416.031.1 ....................12

        ii.  Mo. Rev. Stat. § 416.031(2) ....................................................................................13

   I.   Count XII: Violation of 18 U.S.C.A. § 1962 (RICO) ....................................................14

        i.   Plaintiffs have failed to state that AC Westport is part of an Enterprise. .............14

        ii.  Plaintiffs have failed to state that AC Westport engaged in a pattern of racketeering........15

IV.     CONCLUSION.....................................................................................................................16

i

# TABLE OF AUTHORITIES

## Cases

*Allen v. At Home Stores, Inc.*, 2023 WL 2870379 at \*4 (W.D.Mo. Apr. 10, 2023) ....................................7

*Amesquita v. Gilster-Mary Lee Corp.*, 408 S.W. 3d 293, 305 (Mo. Ct. App. 2013)...................................10

*Brandon v. Lotter*, 157 F.3d 537, 539 (8th Cir. 1998). ......................................................................8

*Brown v. Dills,* No. 05–4414–CV–C–NKL, 2007 WL 148851, at \*3 (W.D.Mo. Jan. 12, 2007). ............4

*Bryant v. Polston*, 2000 WL 1670938, at \*5 (S.D. Ind. Nov. 2, 2000) ..................................................3

*Comcast Corp. v. National Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019, 206 L.Ed.2d 356
(2020)...................................................................................................................................................6

*Creative Compounds, LLC v. ThermoLife Int'l, LLC,* 669 S.W. 3d 330, 340 (Mo. Ct. App. 2023)...............9

*Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 359 (8th Cir. 2011).......................................................13

*Dahlgren v. First Nat. Bank of Holdrege*, 533 F.3d 681 (8th Cir. 2008). ..........................................14

*Daniels v. Dillard's*, 373 F.3d 885, 887 (8th Cir. 2004). ...............................................................2

*Davidson v. Vill. of Freistatt*, No. 3:18-CV-05048-BCW, 2019 WL 10890439, at \*6 (W.D. Mo. May 21,
2019)....................................................................................................................................................2

*Davis v. Jefferson Hosp. Ass'n.*, 685 F.3d 675, 684 (8th Cir. 2012) ...............................................4

*Dornheim v. Sholes*, 430 F.3d 919, 924 (8th Cir. 2005) ...............................................................4

*Ellis v. Houston*, 742 F.3d 307 (8th Cir. 2014) ...........................................................................8

*First Magnus Fin. Corp. v. Summit Mortg*, 2006 WL 2418918, at \*4 (W.D. Mo. Aug. 21, 2006). ............13

*Fogie v. THORN Americas, Inc.*, 190 F.3d 889, 895 (8th Cir. 1999).................................................13

*Gregory v. Dillard's, Inc.*, 565 F.3d 464, 469 (8th Cir. 2009)....................................................6, 8

*Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1014 (8th Cir. 2013)..............................................1

*High Sch. Servicos Educacionais, LTDA v. Choi*, 2023 WL 10476025, at \*6–7 (W.D. Mo. Jan. 13, 2023).
.............................................................................................................................................................14

*In re Sac & Fox Tribe of Miss. in Iowa/Meskwaki Casino Litig.*, 340 F.3d 749, 767 (8th Cir. 2003)..........14

*Institutional Food v. Golden State Strawberries,* 587 F. Supp. 1105, 1111, *aff'd* 747 F.2d 448 (8th Cir. 1984).
.............................................................................................................................................................9

*Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, 797 F.3d 538, 542 (8th Cir. 2015)..................................12

*Johnson v. Int'l Bhd. Of Elec. Workers, Local 1*, 805 F. Supp. 2d 742, 748 (E.D. Mo. 2011). ......................7

*Kirt v. Fashion Bug # 3253, Inc.,* 479 F. Supp. 2d 938, 947 (N.D. Iowa), adhered to on reconsideration
sub nom. *Kirt v. Fashion Bug # 3252, Inc.,* 495 F. Supp. 2d 957 (N.D. Iowa 2007) .............................6

*Metts v. Clark Oil & Ref. Corp.,* 618 S.W.2d 698, 703 (Mo.App. E.D.1981)...........................................12

*Moore v. City of Desloge, Mo.*, No. 4:08CV1200–DJS, 2009 WL 367705, at \*5 (E.D.Mo. Feb. 11,
2009) *aff'd*, 647 F.3d 841 (8th Cir.2011). ...........................................................................................4

*Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010)..........................................................................4

*N. Kansas City Hosp. Bd. of Trs. v. St. Luke's Northland Hosp.*, 984 S.W.2d 113, 120 (Mo. Ct. App.
1998).....................................................................................................................................................12

*Nedeltchev v. Sheraton St. Louis City Ctr. Hotel & Suites*, 335 Fed.Appx. 656, 657 (8th Cir. 2009),............7

*Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 428 (8th Cir. 2009).................................................13, 14

*Pitts v. City of Cuba*, 913 F.Supp.2d 688 (2012). ..........................................................................8

Case 4:25-cv-00023-RK    Document 274    Filed 12/09/25    Page 3 of 21

*Preferred Physicians Mut. Mgmt. Grp. v. Preferred Physicians Mut. Risk Retention*, 918 S.W.2d 805, 812 (Mo. Ct. App. 1996)..................................................................................................................9

*Rail Switching Services, Inc. v. Marquis- Missouri Terminal, LLC*, 533 S.W.3d 245, 257 (Mo. Ct. App. 2017)......................................................................................................................................10

*Robbins v. Becker*, 794 F.3d 988 (2015)...............................................................................................12

*Salau v. Denton*, 139 F. Supp. 3d 989, 1001 (W.D.Mo. 2015) .............................................................4

*Sitzer v. Nat'l Ass'n of Realtors*, 420 F. Supp. 3d 903, 911 (W.D. Mo. 2019)....................................11

*Smith v. Ouachita Technical College,* 337 F.3d 1079, 1080 (8th Cir. 2003);.......................................6

*Spectrum Sports,* 506 U.S. at 459, 113 S.Ct. 884 ...............................................................................12

*Standard Oil Co. v. United States*, 221 U.S. 1, 58–64, 31 S.Ct. 502, 515–17, 55 L.Ed. 619 (1911)..........11

*Stephens, Inc. v. Geldermann, Inc., 962 F. 2d 808, 815-16 (8th Cir. 1992)* ......................................14

*United States v. Grinnell Corp.,* 384 U.S. 563, 570–71, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966) .................12

*United States v. Lee*, 374 F.3d 637, 647 (8th Cir. 2004)......................................................................14

## Statutes

15 U.S.C. § 2 (1976)..............................................................................................................................12

18 U.S.C.A. § 1962...............................................................................................................................13

42 U.S.C. § 1981....................................................................................................................................6

42 U.S.C. § 1982....................................................................................................................................2

42 U.S.C. § 1986....................................................................................................................................8

42. U.S.C. § 1985...................................................................................................................................4

Fed. R. Civ. P. 12(b)(6)..........................................................................................................................1

Mo. Rev. Stat. § 416.031 .....................................................................................................................11

Mo. Rev. Stat. § 416.031(2)..................................................................................................................12

Defendant AC Westport, LLC ("AC Westport") by and through undersigned Counsel, submits these Suggestions in Support of its Motion to Dismiss Counts IV, V, VI, VII, VIII, IX, X, XI and XII of Plaintiffs' Second Amended Complaint for Damages (hereinafter "Complaint"), for failure to state claims upon which relief can be granted.

## I.      INTRODUCTION

Plaintiffs Euphoric, LLC ("Euphoric"), The Sourze, LLC ("Sourze") and UniKC, LLC ("UniKC") (collectively, "Plaintiffs") attempt to bring claims against AC Westport, LLC ("AC Westport") alleging that AC Westport committed serious violations of both Missouri and Federal law in operating its now closed business in Kansas City, Missouri. However, even in taking the allegations in the Complaint as true, the only Plaintiff who has asserted any factual assertions against AC Westport is UniKC, and those are conclusory at best. As a result, all of Plaintiffs' claims against AC Westport (Counts IV, V, VI, VII, VIII, IX, X, XI, and XII) must be dismissed as they fail to state a claim for which relief can be granted.

## II.      FACTUAL BACKGROUND

On January 14, 2024, Plaintiffs Euphoric and Sourze brought suit alleging, among other things, that they had been wrongfully prevented from leasing property in the Westport Entertainment District ("Westport") in Kansas City, Missouri. (Doc. 1). On February 7, 2025, Plaintiffs Euphoric and UniKC filed the First Amended Complaint. Included as a Defendant in the Amended Complaint was individual Drew Shader, who was not identified in the Complaint other than as the owner of "The Denver Biscuit."

On May 16, 2025, Mr. Shader filed a Motion to Dismiss under Rule 12(b)(6) on all claims brought against him. (Doc. 58). Plaintiffs did not respond to this Motion.

On July 22, 2025, this Court dismissed all claims against Mr. Shader. (Doc. 99). While the Court explained how Plaintiffs had not responded to the Motion, the Court stated in a footnote that

i

"[e]ven if the Court overlooked Plaintiffs' waiver, dismissal is still warranted for the reasons explained in Defendant Shader's suggestions in support of his motion to dismiss." *Id.* at pg. 2.

On October 31, 2025, Plaintiffs Euphoric, LLC and UniKC, LLC, along with newly added Plaintiff The Sourze, LLC, filed the Second Amended Complaint. (Doc. 249). Now, Plaintiffs having no vehicle to bring Mr. Shader back, have turned to adding AC Westport, which is owned in part by Mr. Shader, without requisite factual support. As with Mr. Shader, AC Westport must be dismissed due to failure to state a claim.

## III.     STANDARD OF REVIEW

Dismissal under Federal Rule of Civil Procedure Rule 12(b)(6) is proper where plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The purpose of a Rule 12(b)(6) motion to dismiss is to eliminate claims that are factually or legally insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown- that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 678. "Legal conclusions can provide the framework of a complaint;" however, those conclusions" must be supported by factual allegations." *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1014 (8th Cir. 2013) (citing *Iqbal*, 556 U.S. at 679). Essentially, if a claim is merely conceivable or possible, but not plausible, the complaint must be dismissed. *Iqbal*, 556 U.S. at 678. A plaintiff's obligation to provide grounds for entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[U]nadorned, the-defendant-unlawfully-harmed-me accusation[s] . . . devoid of further factual enhancement" are not sufficient. *Iqbal*, 556 U.S. at 678. The purpose of a Rule 12(b)(6) motion to dismiss is to eliminate claims that are factually or legally insufficient. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.

2

## IV.    ARGUMENTS AND AUTHORITIES

### A.    Count IV: Racial Discrimination in Violation of 42 U.S.C. § 1982

Plaintiffs' Count IV, brought under 42 U.S.C. § 1982, should be dismissed because Plaintiffs failed to plead facts that AC Westport interfered with Plaintiffs' property rights or that the alleged interference was racially motivated. Section 1982 prohibits discrimination against citizens in their pursuit "to inherit, purchase, lease, sell, hold, and convey real and personal property." 42. U.S.C. § 1982. To succeed on a Section 1982 claim, Plaintiffs must show: "(1) membership in a protected class; (2) discriminatory intent on the part of the defendant and (3) interference with the rights or benefits connected with the [rental] of property." *Daniels v. Dillard's*, 373 F.3d 885, 887 (8th Cir. 2004). Claims under Section 1982 are subject to dismissal if there is a lack of factual support for the conclusion that defendants had discriminatory intent. *Davidson v. Vill. of Freistatt,* 2019 WL 10890439, at *6 (W.D. Mo. May 21, 2019).

Plaintiffs fail to show that AC Westport has the requisite discriminatory intent to sustain this claim. In *Varela v. Hill*, No. 4:23-CV-01016-SEP, 2024 WL 1328265 (E.D. Mo. Mar. 28, 2024), the Eastern District of Missouri described what is considered "discriminatory intent" and "interference" under Section 1982. Specifically, the Court found that a defendant acted with discriminatory intent by repeatedly telling plaintiffs to "go back to where they came from" and referring to them as terrorists, illegals, and "wetbacks." *Id.* at *4-5. Here, there is no evidence that AC Westport had discriminatory intent or interfered with Euphoric and 4128 Broadway, or Sourze and 427 Westport. AC Westport is not mentioned directly under any of the allegations in Count IV. Instead, Plaintiffs generally refer to Defendants. Even if Defendants encompass AC Westport, there are no allegations about AC Westport's intent or even its actions with respect to Euphoric and the lease for 4128 Broadway or Sourze and the lease for 427 Westport. Further, UniKC's only claim against AC Westport is that "the owner of the Denver Biscuit" allegedly had a conversation with the landlord for the 4140 Pennsylvania

property at an unknown time after an alleged meeting occurred with UniKC Owner Mr. D'Mario Gray. (Doc. 249, ¶ 117). Even in discussing these claims, UniKC never names AC Westport, instead naming the "owner of the Denver Biscuit." (Doc. 249, ¶¶ 107; 117; 125). In doing so, UniKC alleges that the "owner of the Denver Biscuit" is Caucasian and Mr. Gray, the owner of UniKC, is Black/African American; therefore, the alleged displeasure the "owner of the Denver Biscuit" had was solely due to Mr. Gray's race. (Doc. 249, ¶ 119). This implausible conclusion is not supported in fact and does not show discriminatory intent as required under law.

For the third element, there is relatively little case law regarding "the applicability of Section 1982 to harassing and intimidating conduct by neighbors." *Id.* (citing *Bryant v. Polston*, 2000 WL 1670938, at *5 (S.D. Ind. Nov. 2, 2000)). However, this Court has found that interference with rights or benefits connected with the property can stem from: extreme acts of violence or egregious harassment, a campaign of intimidation, repeatedly telling a neighbor they are unwelcome, using racial slurs, suggesting an individual live elsewhere, falsely reporting neighbors to authorities, trespassing, and throwing items at an individual's home. *Id.* at *4-5 (summarizing case law concerning interference under Section 1982).

Again, Plaintiffs fail to show how AC Westport's conduct, if any, reflects harassment in the prescribed manner required by Section 1982. Euphoric and Sourze are silent as to AC Westport. UniKC does not articulate how AC Westport interfered with its property, as AC Westport is not the landlord, nor was AC Westport involved in the lease. Having one alleged conversation with Mr. Gray and a landlord about "displeasure with his new neighbor" at an unknown time, which AC Westport denies either happened, does not rise to the repeated, unwelcome, and harassing interference necessary for a claim to fall under Section 1982. Since no Plaintiff can show the requisite discriminatory intent and interference, Plaintiffs' claims against AC Westport under Section 1982 must be dismissed.

### B. Count V: Conspiracy to Commit Illegal Racial Discrimination in Violation of 42. U.S.C. § 1985.

Plaintiffs have not sufficiently pleaded that AC Westport conspired with all other named Defendants to commit racial discrimination. To prove the existence of a civil rights conspiracy under Section 1985, Plaintiffs must prove: (1) AC Westport conspired with other Defendants; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or equal privileges and immunities under the laws. *Salau v. Denton*, 139 F. Supp. 3d 989, 1001 (W.D.Mo. 2015) (citing *Davis v. Jefferson Hosp. Ass'n.*, 685 F.3d 675, 684 (8th Cir. 2012)). The second "purpose" element requires "that some racial, or perhaps otherwise class-based, invidiously discriminatory animus lay behind the conspirators' action." *Id.* (citing *Dornheim v. Sholes*, 430 F.3d 919, 924 (8th Cir. 2005)). Failure to allege a racial or class-based animus can serve as a sufficient basis to dismiss a Section 1985 claim. *Moore v. City of Desloge, Mo.*, No. 4:08CV1200–DJS, 2009 WL 367705, at *5 (E.D.Mo. Feb. 11, 2009) *aff'd,* 647 F.3d 841 (8th Cir.2011).

Further, a conspiracy claim requires allegations of specific facts tending to show a meeting of the minds among the alleged conspirators. *Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010). "[T]he plaintiff must alleged with particularity and specifically demonstrate with material facts that the defendants reached an agreement." *Davis*, 685 F.3d at 684. "Conclusory allegations of conspiracy fail to state a claim." *Brown v. Dills,* No. 05–4414–CV–C–NKL, 2007 WL 148851, at *3 (W.D.Mo. Jan. 12, 2007).

First, Plaintiffs have defined the Westport Community Improvement District ("CID") Defendants as the twelve (12) members of the CID Board of which AC Westport is not a member, and neither is its part owner, dismissed Defendant Drew Shader. (Doc. 249, ¶ 39). Therefore, the claims against the CID Defendants are not applicable to AC Westport. This includes any implementation and enforcement of the "Good Neighbor Agreement" since Plaintiffs attest that it is the CID Defendants' role is to enforce the "Good Neighbor Agreement" that is kept in the CID

business office and not allowed in the personal possession of property and business owners. (Doc. 249, ¶ 51; 324). Further, Plaintiffs allege all Defendants made a strategic plan to (1) contact owners of property in the Westport community and make it nearly impossible for Black/African Americans to obtain and/or keep a lease for property in Westport; (2) to contact business owners in the Westport community and threaten to take steps to get liquor license revoked and/or terminated if they do business with Black/Arican American service providers; and (3) to enforce a "Good Neighbor" agreement that is kept in the CID business office and not allowed in the personal possession of property and business owners. (Doc. 249, ¶¶ 45; 49-51). AC Westport was not mentioned as being involved in any of these allegations. Without those claims, there are no pleaded facts to show AC Westport participated in any fashion to conspire with the other Defendants.

Second, Plaintiffs fail to show any discriminatory animus. Instead, UniKC simply lists that the owner of the Denver Biscuit is presumed to be Caucasian, and Mr. Gray is Black/African American and as a result, AC Westport's only conversation with its landlord about the new neighbor could only have been to discuss displeasure due to race. (Doc. 249, ¶¶ 107; 118). This is pure conclusion without evidence to support. Even taking these facts as true, this does not give rise to a discriminatory animus behind AC Westport's alleged phone call.

Third and finally, Plaintiffs fail to show a meeting of the minds. There are no facts presented that show how AC Westport specifically had a meeting of the minds with the other Defendants to agree to conspire against either Plaintiff. While Plaintiff alleges the CID Defendants conspired to create a plan to prevent Black/African American businesses from opening in Westport, AC Westport was not included in these allegations and is not a CID Defendant. Without particularly alleging a meeting of the minds, Plaintiffs' claims under Section 1985 fail as a matter of law.

6

C.      **Count VI: Racial Discrimination in Violation of 42. U.S.C. § 1981.**

Similar to the above claims, Plaintiffs' Section 1981 claim is not viable because Plaintiffs fail to show discriminatory intent, a contract with AC Westport, or interference by AC Westport. To prevail on a Section 1981 claim, "a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. National Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019, 206 L.Ed.2d 356 (2020). To establish a *prima facia* case of racial discrimination under Section 1981, Plaintiffs must show (1) Plaintiffs' membership in a protected class, (2) AC Westport's discriminatory intent, (3) engagement in a protected activity, and (4) interference with that activity by AC Westport. *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 469 (8th Cir. 2009).

Importantly, Section 1981 does not provide a general cause of action for race discrimination. *Kirt v. Fashion Bug # 3253, Inc.,* 479 F. Supp. 2d 938, 947 (N.D. Iowa), adhered to on reconsideration sub nom. *Kirt v. Fashion Bug # 3252, Inc.*, 495 F. Supp. 2d 957 (N.D. Iowa 2007). Instead, Plaintiffs must identify a violation of a specific right protected by the statute. *Kirt,* 479 F. Supp. 2d at 947. An injury in fact under Section 1981 requires Plaintiffs to "initially identify an impaired 'contract' relationship, under which the [Plaintiffs] have rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) (quoting 42 U.S.C. § 1981(b)).

Plaintiffs fail to show discriminatory intent on behalf of AC Westport. Here, Plaintiffs must present a short and plain statement demonstrating that AC Westport intended to discriminate against Plaintiffs on the basis of race. *Smith v. Ouachita Technical College,* 337 F.3d 1079, 1080 (8th Cir. 2003); *see also Johnson v. Int'l Bhd. Of Elec. Workers, Local 1*, 805 F. Supp. 2d 742, 748 (E.D. Mo. 2011). Courts in this Circuit have found allegations sufficient to meet the second element of a Section 1981 claim where a plaintiff alleged that he was punished for actions that white employees were not, that he was not recommended for employment like white employees, and that he was punished for working with

7

African-American contractors when employees who worked with white contractors were not punished. *Johnson*, 805 F. Supp. 2d at 748. Similarly, the Eighth Circuit in *Nedeltchev v. Sheraton St. Louis City Ctr. Hotel & Suites*, 335 Fed.Appx. 656, 657 (8th Cir. 2009), found the pleading burden for the second element of a Section 1981 claim had been met by a plaintiff who alleged he had been subjected to racially motivated ridicule, name calling, and accusations of terrorism. *Id.*

Assuming the factual allegations presented are true, Euphoric and Sourze have failed to show that AC Westport was even remotely involved in the 4128 Broadway or 427 Westport leases and subsequent issues, as AC Westport is not a CID Defendant, and further, AC Westport is not mentioned once in reference to such activities. While UniKC references AC Westport in its capacity as owner of "the Denver Biscuit", this too fails to show discriminatory intent. Again, simply making a phone call does not equate to the requisite discriminatory intent necessary to present a valid Section 1981 claim.

The third element requires Plaintiffs to show that they were engaging in protected activity as Section 1981 protects the right to "make and enforce contracts" which includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Here, Plaintiffs all fail to show that they entered into contract with AC Westport. *See generally Allen v. At Home Stores, Inc.*, 2023 WL 2870379 at *4 (W.D.Mo. Apr. 10, 2023) (holding failure to plead facts of a contract between plaintiff and defendant under Section 1981 results in dismissal for failure to state a claim); *Ellis v. Houston*, 742 F.3d 307 (8th Cir. 2014) (personal liability under Section 1981 must be predicated on the actor's personal involvement).

Fourth and finally, Plaintiffs fail to show that AC Westport thwarted or blocked Plaintiffs' execution of an alleged contract. *See Gregory*, 565 F.3d at 471. Again, Euphoric and Sourze make no allegations as to how AC Westport was involved in the alleged lease and subsequent issues with the

8

4128 Broadway or 427 Westport property. Then, UniKC alleges that AC Westport made a phone call to UniKC's existing landlord, which resulted in the termination of the lease; however, there are no facts presented as to why UniKC's lease was terminated. In either event, Plaintiffs do not provide a short and plain statement about how AC Westport interfered with or thwarted a contract. As a result, Plaintiffs' claims for violation of Section 1981 fail, and AC Westport should be dismissed.

### D. Count VII: Failure to Prevent Racial Discrimination Conspiracy in Violation of 42 U.S.C. § 1986.

Section 1986 provides a cause of action against a person who has knowledge of a conspiracy prohibited by Section 1985 and the power to prevent it but fails to do so. 42 U.S.C. § 1986. A claim under Section 1986 is dependent on a valid conspiracy claim under Section 1985. *Brandon v. Lotter*, 157 F.3d 537, 539 (8th Cir. 1998). Therefore, Plaintiffs must first establish a conspiracy to interfere with civil rights under Section 1985 before pursuing a claim under Section 1986. *Pitts v. City of Cuba*, 913 F.Supp.2d 688 (2012). For the reasons previously stated, Plaintiffs have failed to state a claim under Section 1985, therefore, Plaintiffs have also failed to state a claim under Count VII, and it should be dismissed.

### E. Count VIII: Tortious Interference with Plaintiffs' Contracts.

Under Missouri law, to prove a *prima facie* case of tortious interference with a contract, Plaintiffs must show: (1) there is a contract; (2) AC Westport's knowledge of a contract; (3) a breach induced or caused by the AC Westport's intentional interference; (4) absence of justification for the intentional interference; and (5) damages. *Creative Compounds, LLC v. ThermoLife Int'l, LLC,* 669 S.W. 3d 330, 340 (Mo. Ct. App. 2023). To state a claim for tortious interference with a contract, a plaintiff must allege intentional interference by the interfering party or parties. *Preferred Physicians Mut. Mgmt. Grp. v. Preferred Physicians Mut. Risk Retention*, 918 S.W.2d 805, 812 (Mo. Ct. App. 1996). Crucially, this tort is intentional; Missouri does not impose liability for negligent interference with an existing

contract. *See Institutional Food v. Golden State Strawberries,* 587 F. Supp. 1105, 1111, *aff'd* 747 F.2d 448 (8th Cir. 1984).

First, no Plaintiff alleges whether AC Westport knew of the potential contract at 4128 Broadway, 427 Westport, or 4140 Pennsylvania. While UniKC hints that AC Westport knew since there was an alleged meeting with the "neighboring business owner," this fact is never plainly articulated.

Second, and most importantly, no Plaintiff has shown how AC Westport interfered with any contract by actively or affirmatively taking steps to induce a breach of said contract. Again, assuming the pleaded facts are true, UniKC claims that the owner of the Denver Biscuit had one meeting with Mr. Gray and made one phone call with the landlord at 4140 Pennsylvania. (Doc. 249, ¶¶ 105-106; 118). Then, UniKC alleges the very next day, UniKC allegedly received a cease and desist concerning the lease for 4140 Pennsylvania. (Doc. 249, ¶120). Outside of one phone call, the contents unknown, UniKC has not pleaded sufficient facts to show that AC Westport actively and affirmatively took steps to induce a breach of the lease contract at 4140 Pennsylvania, to which AC Westport is not even a party. As a result, Plaintiffs' claim for tortious interference with a contract fails as a matter of law.

## F.   Count IX: Tortious Interference with Plaintiffs' Business Expectancy

To state a claim for tortious interference with a business expectancy, Plaintiffs must plead: (1) a valid business expectancy; (2) AC Westport's knowledge of the relationship; (3) a breach induced or caused by AC Westport's intentional interference; (4) absence of justification; and (5) damages. *Rail Switching Services, Inc. v. Marquis- Missouri Terminal, LLC,* 533 S.W.3d 245, 257 (Mo. Ct. App. 2017).

Here, Plaintiffs allege that Defendants, including AC Westport, intentionally interfered with the Plaintiffs' business expectancy by contacting landlords and persuading them not to enter into any agreements with individuals who they thought would bring the "hip hop" crowd to Westport. (Doc. 249, ¶318). However, again, this is not supported in the Complaint. No Plaintiff alleges whether AC

Westport knew of the potential business expectancy at 4128 Broadway, 427 Westport, or 4140 Pennsylvania. In fact, Plaintiffs fail to plead that AC Westport even knew of Plaintiffs' business expectancy, let alone prove AC Westport intentionally interfered with it. Rather, Plaintiffs only claim that AC Westport had a phone call with the landlord of UniKC, but fail to plead any facts about how this phone call was intentional on AC Westport's part to interfere with UniKC's business, let alone Euphoric or Sourze. Therefore, Plaintiffs' claims against AC Westport must be dismissed for failure to state a claim.

### G. Count X: Civil Conspiracy

To state a claim for civil conspiracy under Missouri law, Plaintiffs must plead facts supporting the following elements: (1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and (5) plaintiff was thereby damaged. *Amesquita v. Gilster-Mary Lee Corp.*, 408 S.W. 3d 293, 305 (Mo. Ct. App. 2013). When a civil conspiracy claim is premised on an underlying tort claim, the failure of the underlying tort claim means the civil conspiracy claim fails, too. *Id.* at 305.

Here, Plaintiffs cannot show there was a meeting of the minds between AC Westport and any other Defendant. While UniKC vaguely alleges: "Defendant AC Westport, LLC's agents, acting with other known and unknown to Plaintiffs, joined in the civil conspiracy by contacting DB Icehouse, LLC to encourage them to terminate the lease entered into by Plaintiff UniKC for illegal reasons and without just cause. Defendant AC Westport, LLC, acted on behalf of and for the benefit of the Denver Biscuit." (Doc. 249, ¶ 340). Although UniKC makes a broad allegation that AC Westport contacted DB Icehouse to encourage it to terminate the lease, which AC Westport denies, there is no allegation that there was a meeting of the minds between AC Westport and DB Icehouse to conspire against UniKC. Further, as above, Euphoric and Sourze have no allegations that AC Westport had a meeting

of the minds to take any action against them. Even taking Plaintiffs' facts as true, the claim for civil conspiracy fails.

### H. Count XI: Conspiracy to violate the Sherman Act, Antitrust, or Trade Law

Plaintiffs' claim against AC Westport under Count XI is believed to be brought under the Missouri Antitrust Law, Mo. Rev. Stat. § 416.031. Since Mo. Rev. Stat. § 416.031.1 parallels the Sherman Act, 15 U.S.C. § 1, AC Westport addresses both claims in tandem.[1]

#### i. Conspiracy to Violate 15 U.S.C. § 1 and Mo. Rev. Stat. § 416.031.1

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. Only agreements that unreasonably restrain competition will violate the Sherman Act. *Standard Oil Co. v. United States*, 221 U.S. 1, 58–64, 31 S.Ct. 502, 515–17, 55 L.Ed. 619 (1911). To establish a claim under Section 1 of the Sherman Act, Plaintiffs must plead evidentiary facts which, if true, will prove: (1) there was a contract, combination, or conspiracy; (2) the agreement unreasonably restrained trade under either a *per se* rule of illegality or a rule-of-reason analysis; and (3) the restraint affected interstate commerce. *Sitzer v. Nat'l Ass'n of Realtors*, 420 F. Supp. 3d 903, 911 (W.D. Mo. 2019). Additionally, to succeed under the Sherman Act, Plaintiffs must demonstrate they have suffered an antitrust injury as a result of the alleged conduct of the defendants. *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, 797 F.3d 538, 542 (8th Cir. 2015). Finally, Plaintiffs must demonstrate that the conspirators had a unity of purpose or a common design and understanding, or a meeting of minds to engage in prohibited conduct. *Robbins v. Becker*, 794 F.3d 988 (2015).

Plaintiffs fail to plead a claim for antitrust violations against AC Westport beyond a speculative level. As previously stated in the reasons set forth above, Plaintiffs have failed to show AC Westport

---

[1] Mo. Rev. Stat. § 416.031.1 parallels the 15 U.S.C. Section 1 of the Sherman Act and provides that "[e]very contract, combination or conspiracy in restraint of trade or commerce in this state is unlawful."

had the intent to conspire to impact either Plaintiffs' contracts or business at issue here. AC Westport is not a CID Defendant. AC Westport did not personally have a contract with any of the Plaintiffs. AC Westport has no authority to enforce the Good Neighbor Agreement, nor does it have any involvement with it, period. Assuming the pleaded facts are true, AC Westport was not involved in the lease negotiations or dispute with 4128 Broadway or 427 Westport. Finally, outside of one alleged conversation with the landlord for 4140 Pennsylvania, UniKC fails to show how this conversation was in conspiracy with any other entity or person.

### ii. Mo. Rev. Stat. § 416.031(2)

Section 416.031(2) is the analogous provision of the Sherman Act, which makes it an offense to monopolize, attempt to monopolize, or conspire to monopolize any part of the trade or commerce among the several States. 15 U.S.C. § 2 (1976). *N. Kansas City Hosp. Bd. of Trs. v. St. Luke's Northland Hosp.,* 984 S.W.2d 113, 120 (Mo. Ct. App. 1998). "The offense of monopoly under § 2 has two elements: (1) the possession of monopoly power in the relevant market, and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen or historic accident." *Metts v. Clark Oil & Ref. Corp.,* 618 S.W.2d 698, 703 (Mo.App. E.D.1981) (citing *United States v. Grinnell Corp.,* 384 U.S. 563, 570–71, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966). A party "may not be liable for attempted monopoly under § 2 of the Sherman Act absent proof of a dangerous probability that they would monopolize a particular market and specific intent to monopolize." *Spectrum Sports,* 506 U.S. at 459, 113 S.Ct. 884.

Here, Plaintiffs fail to state a claim because there are no allegations that the businesses of Westport hold a monopoly, nor that AC Westport even has the power or intent to obtain one. Again, AC Westport is not a CID Defendant, and owning a single business in Westport, which is now closed, does not amount to a monopoly. Thus, Plaintiffs fail to state a claim upon which relief can be granted for Count XI.

## I.        Count XII: Violation of 18 U.S.C.A. § 1962 (RICO)

The Racketeer Influenced and Corrupt Organization Act ("RICO") prohibits "any person employed by or associated with any enterprise engaged in ... interstate ... commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). RICO, however, "'does not cover all instances of wrongdoing. Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity.'" *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 359 (8th Cir. 2011). To establish a civil claim under RICO, Plaintiffs must show defendants engaged in (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity. *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 428 (8th Cir. 2009).[2] Here, Plaintiffs fail to plead facts which show AC Westport was part of any enterprise participating in racketeering activity.

### i.        Plaintiffs have failed to state that AC Westport is part of an Enterprise.

To establish the existence of a RICO enterprise, Plaintiffs must show: (1) a common purpose that animates the individuals associated with it; (2) an ongoing organization with members who function as a continuing unit; and (3) an ascertainable structure distinct from the conduct of a pattern of racketeering. *United States v. Lee*, 374 F.3d 637, 647 (8th Cir. 2004). In *Stephens, Inc. v. Geldermann, Inc.*, the Court held that similar allegations in the complaint were insufficient to plead a RICO enterprise because "[t]he only common factor that linked" the individually named defendants "and defined them as a distinct group was their direct or indirect participation" in the engineered investment

---

[2] AC Westport's analysis is under the framework provided within Section 1982(c). The Eighth Circuit has held "RICO gives only individuals who have suffered injury from the use or investment of racketeering income standing to bring a civil suit under §§ 1962(a) and 1964(c)." *Fogie v. THORN Americas, Inc.,* 190 F.3d 889, 895 (8th Cir. 1999). Since Plaintiffs do not allege to have been injured by Defendants' investment of the income from racketeering activity, Plaintiffs have not stated a claim under section 1962(a). Further, Section 1962(b) prohibits "any person through a pattern of racketeering activity" from acquiring or maintaining an interest or control of an enterprise. *First Magnus Fin. Corp. v. Summit Mortg*, 2006 WL 2418918, at *4 (W.D. Mo. Aug. 21, 2006). This section applies only if Plaintiffs contend Defendants employed racketeering activity to acquire an interest in or control Plaintiffs. This is not Plaintiffs' allegation, so a claim under section 1962(b) has not been asserted.

14

scheme to defraud the plaintiff." 962 F.2d 808, 815–16 (8th Cir.1992). While "each member of th[e] group carried on other legitimate activities, these activities were not in furtherance of the common or shared purpose of the enterprise and, thus, were not acts of the enterprise." *Id.* Accordingly, the Court concluded that the plaintiff "failed to prove the existence of an enterprise that extended beyond the minimal association surrounding the pattern of racketeering activity." *Id.* Similarly, Plaintiffs in this matter have not pled facts to support that AC Westport was part of an enterprise. Simply owning property in the Westport area does not amount to being part of an enterprise as defined under Section 1962(c).

ii. **Plaintiffs have failed to state that AC Westport engaged in a pattern of racketeering.**

The racketeering activity prong must be established by pleading two predicate acts committed by each Defendant. *In re Sac & Fox Tribe of Miss. in Iowa/Meskwaki Casino Litig.*, 340 F.3d 749, 767 (8th Cir. 2003). "To constitute racketeering activity under RICO, the predicate acts must be related...." *Dahlgren v. First Nat. Bank of Holdrege*, 533 F.3d 681 (8th Cir. 2008). A pattern is shown through two or more related acts of racketeering activity that amount to or pose a threat of continued criminal activity. *Nitro Distrib., Inc. v. Alticor, Inc.,* 565 F.3d 417 (8th Cir. 2009). In *High Sch. Servicos Educacionais, LTDA. v. Choi,* the Western District dismissed Plaintiff's RICO claim, ruling that it had failed to plausibly allege two predicate acts by any defendant. 2023 WL 10476025, at *6–7 (W.D. Mo. Jan. 13, 2023). The Western District supported its reasoning through *Crest Const. II, Inc. v. Doe,* where RICO allegations were dismissed because they contained nothing more than "various and sundry boilerplate allegations" regarding supposed RICO predicates and the RICO allegations made as a whole were confusing and implausible. 660 F.3d 346 (8th Cir. 2011).

To support the RICO claim, Plaintiffs allege that all Defendants have engaged in a pattern or racketeering by committing at least two acts involving bribery or extortion. (Doc. 249, ¶ 367). Specific to AC Westport, Plaintiffs allege AC Westport: (1) ratified the "Good Neighbor" Agreement (Doc.

249, ¶ 362); (2) used its "relationship with Kansas City officials through threats to other Westport business and property owners that Defendants will have the liquor licenses of those Westport business owners revoked if those business owners do not follow the 'rules' of the Defendants" (Doc 249, ¶ 364); (3) contacted the landlord for the 4140 Pennsylvania property with a cease and desist letter and "threatened to interfere with a prospective Black/African American tenant's application for a liquor license" (Doc. 249, ¶ 373); and (4) coerced and extorted DB Icehouse to breach its lease agreement with UniKC (Doc. 249, ¶ 376). Similar to the case above, these allegations are not supported by the facts in the Complaint; they suggest indefinite times, in nondescript ways, and for unidentified purposes, and do not show a pattern of racketeering activities. As outlined many times, the only allegation against AC Westport presented with any specificity is that the owner of "The Denver Biscuit" met with Mr. Gray and subsequently had a phone call with DB Icehouse. This does not rise to racketeering activity or behavior.

## V.     CONCLUSION

WHEREFORE, Defendant AC Westport, LLC respectfully requests that this Court dismiss Plaintiffs' claims in this action with prejudice, specifically Counts IV, V, VI, VII, VIII, IX, X, XI, XII, and asks this Court to grant all other relief it deems just and proper.

Respectfully submitted,

/s/ Kathryn A. Wright
Kathryn A. Wright, MO#71355
Lauren Mangiameli, MO#74967
Halbrook Wood, PC
3500 West 75th Street, Suite 300
Prairie Village, Kansas 66208
Tel: (913) 529-1188
Fax: (913) 529-1199
Email: kwright@halbrookwoodlaw.com
Email: lmangiameli@halbrookwoodlaw.com
ATTORNEYS FOR DEFENDANT
AC WESTPORT, LLC

16

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 9, 2025, a true and correct copy of the foregoing was filed with the Court's electronic filing system, and thereby served to all counsel of record.

/s/ *Kathryn A. Wright*
ATTORNEY FOR DEFENDANT
AC WESTPORT, LLC