FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| EUPHORIC, LLC, ET. AL. ) | |
| ) | |
| ) | Case No. 4:25-cv-00023-RK |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| WESTPORT COMMUNITY ) | |
| IMPROVEMENT DISTRICT, ET. AL. ) | |
| ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' SUGGESTIONS IN SUPPORT OF THE MOTION FOR SANCTIONS FOR WITNESS TAMPERING AND LITIGATION MISCONDUCT**

Comes Now, Plaintiff Euphoric LLC for their Motion For Sanctions For Witness Tampering And Litigation Misconduct against Defendant Hal Brody, 4129 Broadway, LLC, and Brett Allred pursuant to 18 U.S.C. § 1512(b), Rule 26(g), Rule 30(d)(2) Rule 37, and The Missouri Rules of Professional Conduct, which this Court enforces under Local Rule 83.6, states as follows:

**Introduction**

Defendants Brett Allred, Harold Brody, and 4128 Broadway, LLC should be sanctioned for obstruction of justice, tampering with a witness, intentionally destroying evidence, and illegally attempting to alter the evidentiary picture of this case. Sanctions are warranted against Defendant Brody and 4128 Broadway LLC because of witness-tampering and obstruction of identified witnesses Christopher Roustic and Jah Kenya Seals. Sanctions are warranted against Defendant Brett Allred for intentional destruction of evidence, failure to preserve critical evidence directly responsive to Plaintiffs' First Request for Production No. 7, failure to supplement critical evidence directly responsive to Plaintiffs' First Request for Production Nos.14 and 15, and obstruction of identified witnesses Jah Kenya Seals.

1

The combination of racially-motivated manipulation, a covert financial scheme to conceal race discrimination of the lease, and direct witness intimidation by counsel constitutes witness tampering, obstruction of justice, and bad-faith litigation misconduct. These actions strike at the heart of the judicial process and warrant the imposition of sanctions under the Court's inherent authority and the Federal Rules of Civil Procedure.

**Facts**

During the October 6, 2025 evidentiary hearing, during which subpoenaed witness Christian Roustic appeared and listened to testimony that materially contradicted facts within his personal knowledge. (Ex. A, Roustic Affidavit ¶¶11-15). Following the hearing, Mr. Roustic approached Plaintiffs' counsel and stated that the testimony he heard was inaccurate and incomplete, and that he wished to provide the Court with a sworn affidavit to correct the record. *Id*. Plaintiffs filed his affidavit at his request. (Ex. B, Email Thread). On October 8, 2025, the Court stated in an email that it "does not intend to take any action related to the affidavit," and sealed the filing as sealed correspondence to the Court. (Ex. C). Although the Court declined to reopen the evidentiary hearing, the affidavit remains part of the record and contains sworn statements revealing conduct that goes far beyond factual clarification. It exposes witness intimidation, racially-motivated manipulation, and a coordinated effort by Defendants to obstruct the truth.

On January 30, 2026 Plaintiff provided to all Defendants, a recorded witness interview between Christopher Lee, former Counsel Dave Rauzi and Jah Kenya Seals. (Doc. 351)[1] Mr. Seals described conversations with Defendant Harold Brody in which Brody solicited Seals' help to "stop Mr. Lee" and counter Plaintiffs' race-discrimination claims. Mr. Seals recounted that Brody told him he would "ask [Seals] for help" because Plaintiffs were "trying to use the racist card,"

---

[1] Plaintiff will provide the court the recording upon request, and/or the transcript once it's transcription is complete.

and that Brody was "willing to do business" with Seals if Seals would assist him. Seals stated that Brody presented this as a "carrot stick" arrangement, explaining that the way to counter a discrimination lawsuit was to "do the opposite of what it's saying." Seals further stated that Brody wanted him to use his political connections to "block" Mr. Lee and to "clean his image up" by publicly supporting the narrative that the dispute "ain't no racist situation." Seals explained that Brody sought to leverage Seals' background, political ties, and the fact that he had "nothing in his background somebody can use against him," to create a public appearance that Brody was willing to do business with a Black tenant, thereby undermining Plaintiffs' claims. Seals stated that Brody's intent was clear: if Seals would help him deny the racial motive, Brody would allow him into the space.

These statements align with Plaintiffs' video evidence between Steven Hooks and Richard Craddock that Defendants Brody and Allred later conspired with Seals to offer him $300,000 to take over the disputed Westport Ale House lease in 2026, after previously denying him the same lease in October 2024. (Ex. D, Transcript of Allred-Brody Conspiracy, pgs. 2:1-10:25, Ex. E, Craddock Affidavit ¶¶ 4-15). The purpose of this payment was to replace the Black-owned business they had unlawfully displaced with a hand-selected Black tenant who would publicly support their narrative and thereby shield them from liability for race discrimination. (Ex. E, Craddock Affidavit). This scheme demonstrates not only discriminatory motive but also a deliberate effort to manipulate the factual record and obstruct the judicial process.

Plaintiffs' counsel repeatedly engaged in good-faith efforts to resolve discovery disputes without court intervention, as required by Federal Rule of Civil Procedure 37 and Local Rule 37.1. The record reflects a consistent pattern of written meet-and-confer communications documenting Defendants' ongoing failure to preserve and produce responsive evidence. (Ex. F,G, H, I, J, K)

3

The first round of deficiencies was addressed in August 2025, when Plaintiffs' counsel issued Golden Rule letters acknowledging receipt of Defendants Harold Brody's and Brett Allred's purported responses to Requests for Production served July 1, 2025. (Ex. F and G). Those letters, dated August 10 and August 15, 2025, notified defense counsel that the responses were incomplete, non-responsive, and violated Rule 4-3.4(d) of the Rules of Professional Conduct. Plaintiffs' counsel identified missing communications and documents directly relevant to Plaintiffs' claims of racial discrimination, civil conspiracy, damages and RICO violations.

This Court held a Discovery Dispute hearing on October 1, 2025, during which the court instructed Brett Allred to allow a forensic examination of his cell phone conducted because of obvious deleted text messages. (Doc. 212). On January 29, 2026, after receiving a Golden Rule letter about improper preservation of evidence, Defendant Brody's Counsel disclosed additional texts threads responsive to Plaintiff's Request for Production #14 and #15 that identify the KCPD as a benefactor in the Conspiracy and RICO claims. Defendant Brody's Counsel made the assertion that the messages "were overlooked by my client as non-responsive," that he "believe[s] there is a valid argument that they are not responsive," and that he "would have produced them had they been provided to me in September." During that same Discovery Dispute hearing the Court instructed Defendant Brody to turn over records that reflect statements of gross sales and revenues for the Westport Ale House during its leased period. Defendant Brody and 4128 Broadway LLC turned over nine years of fraudulent records and omitted an audit with the correct gross sales and revenue proceeds. On Dec, 19, 2025, Plaintiff's counsel emailed Defense counsel regarding supplementing the response with the audit report as mentioned in the state case 2416-CV29411. That lawsuit alleges that Westport Ale House produced fraudulent reports of gross revenues. A

Discovery Dispute hearing was held on January 22, 2026, and the Court ordered Defendant Brody and 4128 Broadway LLC to turn over the audit within 48 hrs. (Doc. 318).

Plaintiffs' counsel sent an additional Golden Rule letters on January 26, 2026, addressing Allred's deficient responses to RFP No. 16, and addressing Brody's deficient responses to RFP Nos. 3 and 13, respectively. (Ex. H and K) These letters explained that newly obtained video evidence—including the "Mob Ties" screen recording and admissions by Jah Kenya Seals that Defendants Brody and Allred conspired to offer him $300,000 to take over a lease at the 4128 Broadway location—confirmed that responsive communications existed but had not been produced, supplemented, or disclosed. Plaintiffs' counsel demanded immediate supplementation and warned that failure to comply would result in a motion to compel and for sanctions.

Two days later, on January 28, 2026, Plaintiffs' counsel tried to engage in a detailed meet-and-confer process after defense counsel produced a single, incomplete screen recording of the "Mob Ties" Instagram post. The email exchanges revealed that the recording itself showed three deleted versions of the post, and defense counsel admitted that the other versions "were not preserved" and that audio versions no longer existed. (Ex. J) Plaintiffs' counsel immediately issued another Golden Rule letter on January 28, 2026, documenting the spoliation, explaining the relevance of the missing posts to RFP No. 7, and requesting a complete search, production, and privilege log. (Ex. K).

On January 29, 2026, Defendant Brody supplemented his Rule 26 Disclosures to include the omitted text thread and the video that was improperly preserved. (Doc. 353). On January 30, 2026, Counsel for Plaintiff and Defendant Allred talked briefly regarding Plaintiff's email mistaking the January 30, 2026 discovery responses and during that conversation, Counsel Mark Nasteff stated that he had "communications" between "Brody, Allred and Chef Ja" from within

5

the last 30 days but never produced them pursuant to Rule 37's duty to supplement or the Golden Rule letters sent on January 26th and 28th, 2026. Defendants failed to respond to the Golden Rule letters to meet and confer or to provide the supplemental documents.

### I. Defendants Brody and 4128 Broadway, LLC Intimidation of a Subpoenaed Witness And Influence His Testimony In An Official Proceeding

The affidavit of Christian Roustic reveals that, immediately prior to the evidentiary hearing, Defendant Brody's attorney, Don Peterson, made a statement to Mr. Roustic that the witness reasonably interpreted as a threat to his livelihood if he testified truthfully. After Mr. Roustic informed Peterson that his testimony would contradict Brody's version of events, Peterson responded, "I hope your participation in this case does not hurt your business." The timing, tone, and context of this statement make its purpose unmistakable: to intimidate a subpoenaed witness and influence his testimony in an official proceeding.

18 U.S.C. § 1512(b) prohibits knowingly using intimidation, threats, or corrupt persuasion with the intent to influence testimony in an official proceeding. A civil case in federal court is an "official proceeding" under § 1515(a)(1)(A). The Eighth Circuit has repeatedly affirmed that witness intimidation warrants sanctions, including in *Harlan v. Lewis*, 982 F.2d 1255 (8th Cir. 1993) where the court upheld sanctions for conduct that interfered with a witness's ability to testify freely. The Supreme Court has likewise recognized in *Chambers v. NASCO, Inc.,* 501 U.S. 32, 51, 111 S. Ct. 2123, 2136, 115 L. Ed. 2d 27 (1991), that federal courts possess inherent authority to sanction conduct that abuses the judicial process, including attempts to manipulate evidence or influence witnesses.

*In re Agron*, 701 S.W.3d 623, 630 (Mo. 2024), the court establishes that attorneys who engage in dishonest, deceitful conduct that hinders investigations or judicial proceedings violate Rule 4-8.4(d) prohibiting conduct prejudicial to the administration of justice. The court

6

emphasized that such misconduct degrades the legal profession and breeds disrespect for the courts, warranting appropriate discipline to preserve the integrity of the legal profession.

Here, Mr. Roustic served as the Newmark Zimmer associate responsible for negotiating the lease terms between Euphoric, LLC and Defendant Brody for the premises at 4128 Broadway. His affidavit establishes that he personally handled the red line edits, communicated with Brody and Brody's attorney, and confirmed that the only changes made to the lease were to reflect the new entity name, Euphoric, LLC, and to correct dates and clerical matters. He further attests that there were no material conditions requiring Euphoric to obtain insurance before taking possession, nor any requirement that Euphoric submit a written concept before possession. These facts directly contradict the testimony offered by Defendant Brody in the October 6, 2025 evidentiary hearing.

When Mr. Roustic appeared pursuant to subpoena for the October 6, 2025 evidentiary hearing, he informed attorney Don Peterson that he intended to testify truthfully. Peterson responded, "I hope your participation in this case does not hurt your business." Mr. Roustic interpreted this statement, based on tone, context, and the surrounding circumstances, as a threat that truthful testimony would jeopardize his job and professional reputation.

The misconduct here also violates the Federal Rules of Civil Procedure. Rule 26(g) prohibits discovery conduct undertaken for an improper purpose. Rule 30(d)(2) authorizes sanctions for conduct that impedes or frustrates testimony. Rule 37 empowers the Court to impose sanctions for discovery abuses and obstruction. The Missouri Rules of Professional Conduct, which this Court enforces under Local Rule 83.6, prohibit lawyers from engaging in dishonesty, fraud, deceit, misrepresentation, or conduct prejudicial to the administration of justice. Threatening a witness with professional harm if he testifies truthfully violates each of these provisions.

## II. Defendant Brody, 4128 Broadway LLC And Allred Attempts To Manipulate The Factual Record, And A Deliberate Attempt To Obstruct The Judicial Process.

Bribery of a witness violates Rule 37(d), 26(g) and 30(d)(2) simultaneously. A defendant need not use physical force or intimidation to be guilty of witness tampering, so long as he attempts to corruptly persuade a witness to testify falsely. 18 U.S.C.A. § 1512(b)(1). *State v. Ware*, 447 S.W.3d 224 (Mo. Ct. App. 2014) demonstrates that witness tampering intent can be proven through patterns of intimidating conduct and reasonable inferences from the totality of circumstances.

Courts have held that any attempt to influence testimony through financial or professional inducements is sanctionable under Rule 37, even if no explicit threat or quid-pro-quo is stated. The test is whether the conduct was intended to affect the witness's testimony or participation in the case. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 46–47 (1991).

*United States v. Suhl*, 885 F.3d 1106 (8th Cir. 2018) establishes that corrupt intent and quid pro quo arrangements can be proven through specific intent to exchange value for desired actions, with the payor completing the corrupt scheme upon offering payment regardless of whether the recipient acts. The court found that financial inducement schemes demonstrate corrupt intent through the specific intent to exchange value for official acts in the criminal bribery context. *Id*. at 1113.

Here, the principles regarding corrupt intent provides analogous support for understanding defendants' $300,000 offer as corrupt manipulation of the litigation process. The witness tampering is further contextualized by Defendants' broader scheme to conceal their discriminatory conduct. Plaintiffs have obtained evidence that Defendants Brody and Allred conspired with Mr. Seals, a prospective tenant who had been denied the lease in October 2024, to offer him $300,000 to take over the Ale House building lease in 2026. The purpose of this payment was to avoid liability for

race discrimination by replacing the Euphoric, LLC which they unlawfully displaced with a hand-selected Black tenant willing to be subject to their control and cooperate with their narrative. This conduct demonstrates consciousness of guilt, an effort to manipulate the factual record, and a deliberate attempt to obstruct the judicial process. It also provides further evidence of discriminatory motive and the lengths to which Defendants were willing to go to avoid liability.

The totality of the circumstances demonstrates the combination of witness tampering, threats by counsel, and a covert financial scheme to overcome the race discrimination claim and the disputed lease constitutes an extraordinary abuse of the judicial process. *State v. Ware*, 447 S.W.3d 224 (Mo. Ct. App. 2014).

The Court has both the authority and the obligation to protect the integrity of its proceedings. Defendants' conduct cannot be excused or minimized. It was intentional, coercive, and undertaken for the purpose of influencing testimony and concealing discriminatory conduct.

### III. Defendant Allred's Failure to Preserve Responsive Evidence and Strategic Nondisclosure

In addition to the witness-tampering and obstruction described above, sanctions are independently warranted because Defendant Brett Allred failed to preserve critical evidence directly responsive to Plaintiffs' First Request for Production No. 7 and for Defendant Allred's strategic nondisclosure.

A. <u>Intentional (Bad Faith) Destruction of Evidence</u>

The obligation to preserve evidence begins when a party knows or should have known that the evidence is relevant to future or current litigation. *See Stevenson v. Union Pac. R.R. Co.,* 354 F.3d 739, 746 (8th Cir.2004); *see also Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 216 (S.D.N.Y.2003). The Eighth Circuit has explained that (1) a party's decision to selectively preserve some evidence while failing to retain other or (2) a party's use of the same type of evidence to their

9

advantage in prior instances, may be used to demonstrate a party's bad faith. *Stevenson,* 354 F.3d at 747–48. If the destruction of evidence occurs after litigation is imminent or has begun, no bad faith need be shown by the moving party. *Lewy v. Remington Arms Co.,* 836 F.2d 1104, 1112 (8th Cir.1988).When litigation is imminent or has already commenced, "a corporation cannot blindly destroy documents and expect to be shielded by a seemingly innocuous document retention policy." *See id.* at 749 (quoting *Lewy,* 836 F.2d at 1112). *E*Trade Sec. LLC v. Deutsche Bank AG*, 230 F.R.D. 582, 588–89 (D. Minn. 2005).

Plaintiffs' First Request for Production No. 7, served on July 25, 2025, required Allred to produce all documents relating to any discrimination claims against him or his companies. The request defined "documents" broadly to include any handwritten, typed, photographed, computerized, audio, video, or other graphic matter, including originals, copies, drafts, and any version bearing marks or alterations, regardless of format. This definition plainly encompasses social-media posts, videos, stories, reels, and screen-recordings—precisely the category of evidence at issue here. The "Mob Ties" post was a direct response to Plaintiffs' discrimination complaint and was referencing Plaintiffs' pleadings. It therefore fell squarely within the scope of RFP No. 7 and should have been preserved and produced in full.

Here, Defendant Allred destroyed evidence during pending litigation in bad faith. *Lewy v. Remington Arms Co.,* 836 F.2d 1104, 1112 (8th Cir.1988). On October 22, 2025 and again on November 11, 2025 Defendant Allred failed in his duty to supplement discovery responses propounded on July 1, 2025. Defendant Allred further intentionally destroyed evidence that squarely responds to requests for production #7 by deleting at least 3 Instagram posts that he authored regarding the claims in the lawsuit including the race discrimination allegations. Defendant Allred's attorney admits that his client did not inform him of the multiple post that made

10

Case 4:25-cv-00023-RK    Document 364    Filed 02/06/26    Page 10 of 16

and deleted but when he became aware he instructed his client to preserve the posts he deleted. Defendant Allred intentionally failed to preserve evidence of those posts when he only screen recorded 31 seconds of one slide of a multi-slide post, and also failed to screen record the other two videos that had so clearly been deleted as well. Defendant Allred failed to supplement his discovery responses and instead produced an incomplete and selectively edited screen-recording that appears designed to sanitize the evidentiary record. The January 28, 2026 email correspondence and Plaintiffs' Golden Rule letter make clear that multiple versions of the "Mob Ties" Instagram post existed—including versions containing audio—and that Allred deleted or failed to preserve them despite having actual notice of the litigation and a clear duty to retain all responsive materials.

B. Spoliation

When Plaintiffs requested production of the remaining versions, defense counsel admitted that "the other social media posts were not preserved" and that "there was no audio on the other posts," attributing the loss to the "limited window to preserve that short-term social media medium." This is a direct admission of spoliation. Defendant Allred acknowledges that multiple versions of the post existed, that they were deleted, and that they were not preserved. Most significantly, it omits the versions containing the racial slur that Plaintiffs' seven witnesses heard. Rather than accept responsibility for failing to preserve the evidence, defense counsel attempted to avoid the consequences by asserting that the "Mob Ties" post was "not responsive" to RFP No. 7 and was produced only "at [Plaintiffs'] request." That assertion is demonstrably false. The post was a public statement made by Allred in response to Plaintiffs' discrimination allegations and expressly referenced Plaintiffs' filings. It is plainly responsive to RFP No. 7. Defense counsel's

refusal to acknowledge responsiveness—and his attempt to reframe the production as voluntary—reflects an effort to obscure the fact that Allred failed to preserve the original posts.

Allred's conduct squarely violates Rule 37(e), which applies when electronically stored information should have been preserved in anticipation of litigation, the party failed to take reasonable steps to preserve it, and the information cannot be restored or replaced. All three elements are satisfied here.

C. <u>Defendant Allred's Rule 26 Disclosures Cannot Cure A Party's Failure To Produce Responsive Documents</u>

Under Rule 37(a)(4), an evasive or incomplete response "must be treated as a failure to disclose," and the Eighth Circuit has held that Rule 26 disclosures "are not a substitute for responding to properly propounded discovery." *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 702 (8th Cir. 2018). Likewise, late disclosure does not cure prejudice or eliminate Rule 37(c)(1) consequences. *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008).

Requests for Production Nos. 14 and 15 required Defendant Allred to produce all communications between himself and any CID board member, CID employee, or person acting on behalf of the CID, as well as all communications relating to security, off-duty police, fencing, safety measures, or CID enforcement actions. The text messages belatedly produced as Allred Document Nos. 0071 and 0072 fall squarely within both requests. They show Allred communicating directly with CID Executive Director Franklin "Kim" Kimbrough and CID staff member Tony Uredi about CID-approved fencing, CID-approved alarms, CID-controlled off-duty police scheduling, and CID decision-making authority. These communications are plainly responsive to RFP Nos. 14 and 15, and their relevance is underscored by the following allegations in the Second Amended Complaint ¶363-365.

This issue was already addressed at the October 1, 2025 discovery hearing, where Plaintiff explained that CID members—including Allred—were executing a "strategic plan" to exclude Black-owned businesses from Westport (Tr. 5:25–6:7), and that CID enforcement and financial coordination were central to the conspiracy and RICO claims (Tr. 6:23–7:7; 16:1–7). Plaintiff further explained that the CID's "good neighbor agreement" financially benefited CID members and punished non-compliant businesses (Tr. 6:23–7:7), and that CID communications were necessary to show coordinated exclusionary conduct (Tr. 16:1–7). The Court acknowledged that CID communications were directly relevant (Tr. 23:1–7). In this context, the withheld CID messages are not only responsive but essential.

Defendants' affirmative withholding of responsive discovery is a deliberate refusal to comply with propounded discovery followed by an attempt to avoid the consequences of Rule 37. Courts in this Circuit have repeatedly rejected this precise tactic, holding that Rule 26 disclosures cannot cure a party's failure to produce responsive documents, cannot erase prejudice caused by withholding, and cannot substitute for timely, complete responses to properly propounded discovery. See *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 702 (8th Cir. 2018); *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008); *Coral Grp., Inc. v. Shell Oil Co.*, 286 F.R.D. 426, 439 (W.D. Mo. 2012).

### IV. The Pattern Of Witness Tampering And Obstruction Show Defendants' Consciousness Of Guilt

The pattern of coordinated misconduct—witness intimidation, financial inducements to manipulate testimony, and selective evidence destruction—demonstrates consciousness of guilt that supports an inference of liability on the underlying discrimination claims. This systematic effort to suppress unfavorable evidence and manipulate the factual record indicates defendants' awareness that the truthful evidence would establish their liability for racial discrimination. The

timing and coordination of these efforts, occurring after the evidentiary hearing and notice of appeal when defendants learned the strength of plaintiffs' evidence and the grounds of appeal, demonstrates a deliberate plan to avoid the consequences of their discriminatory conduct. Courts recognize that consciousness of guilt can be inferred from efforts to suppress evidence, intimidate witnesses, or manipulate the litigation process, and such inferences are particularly strong when multiple forms of obstruction occur in coordination as part of a broader scheme to avoid liability. *State v. Hedge*, 793 S.W.2d 478 (Mo. Ct. App. 1990).

Here, the witness interview of Jah Kenya Seals, recorded statement of Mr. Seals business partner Steve Hooks and Richard Craddock's affidavit clearly sets forth yet another conspiracy. The evidence shows that Defendants Brody and Allred conspired to offer Mr. Seals $300,000 to take over the same lease in 2026, despite having denied him the lease in 2024. Mr. Seals states that this offer was designed to install a hand-selected Black tenant who would publicly support Defendants' narrative and shield them from liability for race discrimination, thereby creating the appearance of nondiscrimination while excluding Plaintiff Euphoric. In Mr. Seals recorded statement he repeatedly states that he and other Black people have been excluded from leasing 4128 Broadway property as a form of discrimination. Plaintiff's proffer that his testimony would have been consistent with Mr. Seals 90-minute interview. For all the reasons analyzed above it is clear that a consciousness of guilt is established.

### V. SANCTIONS

The court's inherent authority under *Chambers v. NASCO* provides broad power to impose comprehensive sanctions for the coordinated bad faith conduct that abuses the judicial process, including assessment of attorney's fees, adverse inference instructions, and referral for criminal investigation. The coordinated nature of defendants' misconduct—occurring across multiple

categories of obstruction—demonstrates the type of bad faith conduct that warrants exercise of the court's inherent power to fashion appropriate sanctions tailored to the severity and scope of the abuse, potentially including the entire amount of plaintiffs' attorney's fees given the frequency and severity of the judicial process abuse.

Under Rule 37(e)(2), when a party acts with intent to deprive another party of the information's use in litigation, the Court may presume the lost information was unfavorable, instruct the jury that it may or must so presume, or enter default judgment. The selective production, the deletion of multiple versions, and the refusal to acknowledge responsiveness all demonstrate intent. Allred's failure to preserve evidence is not an isolated oversight—it is part of a broader pattern of obstruction, manipulation, and bad-faith litigation conduct that includes witness tampering, selective production, and attempts to sanitize the evidentiary record.

## CONCLUSION

Sanctions are necessary to remedy the prejudice to Plaintiffs and to protect the integrity of these proceedings. Plaintiffs therefore request an adverse-inference instruction that the breach of contract by Defendant Brody and 4128 Broadway, LLC was racially motivated; an adverse-inference instruction the deleted versions of the "Mob Ties" post contained the racial slur Plaintiffs' witnesses heard; an award of fees and costs associated with this motion; an order compelling full forensic imaging of Brody's and Allred's devices and social-media accounts; and any further sanctions the Court deems appropriate under Rule 37(e), Rule 26(g), and the Court's inherent authority

Respectfully submitted,

Cecilia Brown
Cecilia Nuby & Associates, LLC

Missouri Bar Number: 67646
Kansas Bar Number: 78602
Illinois Bar Number: 6346825
220 E. Illinois St., Ste. 3704
Chicago, IL 60611
Phone: (913)-200-7900
Fax: (913) 273-0996
E-mail: Cecilia@NubyLaw.com
ATTORNEY FOR PLAINTIFF EUPHORIC, LLC

CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of February 2026, the above and was served by electronic filing with the Court Administrator through the CM/ECF system and by e-mail to the e-mail addresses provided by counsel of record for the parties in this case.

Respectfully submitted,

*[signature]*